UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY LINTON, | : |
| | : |
| Plaintiff | : |
| | : |
| v. | :   C.A. No. 04-11362-RWZ |
| | : |
| NEW YORK LIFE INSURANCE AND ANNUITY | : |
| CORPORATION, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

John D. Donovan, Jr. (BBO # 130950)
Robert G. Jones (BBO #630767)
Levina Wong (BBO #654510)
 ROPES & GRAY LLP
 One International Place
 Boston, MA 02110
 (617) 951-7000

*Attorneys for New York Life Insurance
and Annuity Corporation*

Dated:  July 23, 2004

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

THE COMPLAINT'S FACTUAL ALLEGATIONS.....................................................3

ARGUMENT..................................................................................................................7

I.      THE STANDARDS FOR GRANTING A MOTION TO DISMISS .................................7

II.     THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH
        OF CONTRACT........................................................................................................7

III.    THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH
        OF THE COVENANT OF GOOD FAITH AND FAIR DEALING................................12

IV.     THE COMPLAINT DOES NOT STATE A CLAIM FOR
        MISREPRESENTATION.........................................................................................14

V.      THE COMPLAINT DOES NOT STATE A CLAIM UNDER
        MASS. G.L. C. 93A................................................................................................19

VI.     THE COMPLAINT DOES NOT STATE A CLAIM FOR DECLARATORY
        JUDGMENT OR SPECIFIC PERFORMANCE............................................................20

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AccuSoft Corp. v. Palo*,
    237 F.3d 31 (1st Cir. 2001) ................................................................................13, 14

*America National Bank & Trust Co. of Chicago v.*
    *Allmerican Finance Life Insurance & Annuity Co.*,
    304 F. Supp. 2d 1009 (N.D. Ill. 2003) ......................................................................12

*Beddall v. State Street Bank & Trust Co.*,
    137 F.3d 12 (1st Cir. 1998) ....................................................................................3, 7

*Blackstone Realty LLC v. F.D.I.C.*,
    244 F.3d 193 (1st Cir. 2001) ......................................................................................8

*Boston Edison Co. v. FERC*,
    856 F.2d 361 (1st Cir. 1988) ......................................................................................9

*Chongris v. Board of Appeals*,
    811 F.2d 36 (1st Cir. 1987) ........................................................................................7

*Cummings v. HPG International, Inc.*,
    244 F.3d 16 (1st Cir. 2001) ..................................................................................19, 20

*Dartmouth Review v. Dartmouth College*,
    889 F.2d 13 (1st Cir. 1989) ........................................................................................7

*Davis v. Dawson, Inc.*,
    15 F. Supp. 2d 64 (D. Mass. 1998) ......................................................................15, 18

*Elias Brothers Restaurants Inc. v. Acorn Enterprises, Inc.*,
    831 F. Supp. 920 (D. Mass. 1993) ........................................................................14, 17

*First Lincoln Holdings, Inc. v. Equitable Life*
    *Assurance Society of the United States*,
    164 F. Supp. 2d 383 (S.D.N.Y. 2001) ..................................................................11, 12

*Gill v. Metropolitan Property & Casualty Insurance Co.*,
    864 F. Supp. 251 (D. Mass. 1994) ........................................................................15, 16

*Gooley v. Mobil Oil Corp.*,
    851 F.2d 513 (1st Cir. 1988) ......................................................................................7

*Hayduk v. Lanna*,
    775 F.2d 441 (1st Cir. 1985) ....................................................................................19

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984).......................................................................................................7

*Hogan v. Eastern Enterprise/Boston Gas*,
    165 F. Supp. 2d 55 (D. Mass. 2001) ...........................................................................5

*ITT Corp. v. LTX Corp.*,
    926 F.2d 1258 (1st Cir. 1991)......................................................................................9

*LaChapelle v. Berkshire Life Insurance Co.*,
    142 F.3d 507 (1st Cir. 1998)........................................................................................7

*Milford Power Ltd. Partnership v. New England Power Co.*,
    918 F. Supp. 471 (D. Mass. 1996) .............................................................................13

*Morgan v. Finance Planning Advisors, Inc.*,
    701 F. Supp. 923 (D. Mass. 1988) .............................................................................18

*Mundy v. Lumberman's Mutual Casualty Co.*,
    783 F.2d 21 (1st Cir.1986)..........................................................................................16

*In re New Era Packaging, Inc.*,
    186 B.R. 329 (D. Mass. 1995) .....................................................................................9

*Nilsen v. Mutual Marine Office, Inc.*,
    428 F. Supp. 1375 (D. Mass. 1977) ...........................................................................11

*Norwood v. New England Power Co.*,
    23 F. Supp. 2d 109 (D. Mass. 1998) ............................................................................5

*Pepsi Cola Metropolitan Bottling Co. v. Pleasure Island, Inc.*,
    345 F.2d 617 (1st Cir. 1965).......................................................................................18

*Rodowicz v. Massachusetts Mutual Life Insurance Co.*,
    279 F.3d 36 (1st Cir. 2002).........................................................................................18

*Romani v. Shearson Lehman Hutton*,
    929 F.2d 875 (1st Cir. 1991)........................................................................................5

*Turner v. Johnson & Johnson*,
    809 F.2d 90 (1st Cir. 1986)...................................................................................16, 17

*Van Orman v. America Insurance Co.*,
    680 F.2d 301 (3d Cir. 1982)........................................................................................10

*Venture Associates Corp. v. Zenith Data System Corp.*,
987 F.2d 429 (7th Cir. 1993) ..................................................................................3

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993)......................................................................................5

*Windsor Securities, Inc. v. Hartford Life Insurance Co.*,
986 F.2d 655 (3d Cir. 1993)..................................................................................12

*Zuckerman v. McDonald's Corp.*,
35 F. Supp. 2d 135 (D. Mass. 1999)........................................................14, 15, 18, 19

## STATE CASES

*Anthony's Pier Four, Inc. v. HBC Associates*,
411 Mass. 451, 583 N.E.2d 806 (1991) ......................................................12

*Cadle Co. v. Vargas*,
55 Mass. App. Ct. 361, 771 N.E.2d 179 (2002) ........................................13

*Friedman v. Jablonksi*,
371 Mass. 482, 358 N.E.2d 994 (1976) ......................................................19

*John Hancock Life Insurance Co. v. Schwarzer*,
354 Mass. 327, 237 N.E.2d 50 (1968)........................................................15

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*,
438 Mass. 459, 781 N.E.2d 787 (2003) ......................................................16

*Marram v. Kobrick Offshore Fund, Ltd.*,
442 Mass. 43, 809 N.E.2d 1017 (2004) ......................................................16

*Newell-Blais Post # 443, Veterans of Foreign Wars of the U.S., Inc. v.*
*Shelby Mutual Insurance Co.*,
396 Mass. 633, 487 N.E.2d 1371 (1986) ....................................................11

*PMP Associates, Inc. v. Globe Newspaper Co.*,
321 N.E.2d 915 (Mass. 1975) ......................................................................19

*Powell v. Rasmussen*,
355 Mass. 117, 243 N.E.2d 167 (1969) ......................................................14

*Prusky v. Prudential Insurance Co. of America*,
2001 WL. 34355665 (E.D. Pa. 2001) ..........................................................10

*Royal-Globe Insurance Co. v. Schultz*,
    385 Mass. 1013, 434 N.E.2d 213 (1982) .......................................................................8

*Sarnafil v. Peerless Insurance Co.*,
    418 Mass. 295, 636 N.E.2d 247 (1994) .......................................................................16

*Somerset Savings Bank v. Chicago Title Insurance Co.*,
    420 Mass. 422, 649 N.E.2d 1123 (1995) .................................................................8, 11

*Spenlinhauer v. Kane*,
    *No. Civ. A. 9601-ST-044887*, 1998 WL. 474170
    (Mass. App. Ct. Aug. 4, 1998) .....................................................................................19

*Thomas v. Hartford Accident & Indemnity Co.*,
    398 Mass. 782, 500 N.E.2d 810 (1986) .......................................................................8

*Uno Restaurant, Inc. v. Boston Kenmore Realty Corp.*,
    441 Mass. 376, 805 N.E.2d 957 (2004) .......................................................................13

## STATUTES

Fed. R. Civ. P. 9(b) ............................................................................................................19

Fed. R. Civ. P. 12(b)(6).........................................................................................................7

Mass. G.L. c.93A ................................................................................................................19

## *Preliminary Statement*

This is a mutual fund "market timing" case turned upside down.

The plaintiff Barry Linton claims a "right" to execute a "market-timing" strategy of rapid-fire trading in mutual funds that are the investment vehicles underlying a New York Life variable insurance product. He insists that New York Life is obliged to honor last-minute telephonic instructions to purchase, redeem or exchange mutual fund shares, and complains that the company's refusal to execute his "market-timing" orders has reduced his investment returns.

But the market-timing "right" to instantaneous execution of mutual fund orders that Mr. Linton invokes does not exist. It cannot be found in the insurance Policy that forms his contract with New York Life. The "right" cannot be divined from any language in the Prospectus issued to describe the Policy's underlying investment alternatives. And such a "right" is not cognizable – to the contrary it has been explicitly rejected – at common law.

The express language of the insurance contract between Mr. Linton and New York Life contemplates that instructions for mutual fund transactions will be made *only* in a written "notice" that is "sign[ed]" by the policyholder. No "right" to communicate investment decisions in some other mode calculated to exploit mutual fund pricing inefficiencies exists in the Policy. The Prospectus issued with the Policy – which does *not* form a part of the parties' contract, but instead *describes* the mutual fund investments and New York Life's role in their issuance – likewise does not create a "right" to communicate investment decisions by means that guarantee immediate execution of market-timing orders. The Prospectus requires that transfer instructions "be in writing . . . or by telephone in accordance with established procedures." At all times, those "established procedures" provided that "telephone *privileges* may be discontinued at any time." (emphasis added). Thus, the ability to make transfers via telephone is merely a privilege,

not a right. And since May 1, 2003 – long before the mutual fund "market timing" scandals gained currency – the procedures were modified to reserve New York Life's exclusive discretion to limit transfer instructions that "may disadvantage or potentially hurt the rights or interests of other policyholders," including market-timing.   By their terms, both the Policy and the Prospectus abrogated any inconsistent oral representations.

Simply put, the "right" to market-time that the plaintiff asserts depends upon the ability to communicate orders by means that the express terms of the contract do not oblige New York Life to honor. As a result, New York Life's insistence on strict *compliance* with the terms of the agreement cannot constitute a *breach* of that agreement, much less any covenant implied in it. And where deviation from strict compliance would implicate New York Life's fiduciary obligation to every other policyholder, the plaintiff's claim to special treatment to execute his own market-timing strategy cannot be justified.

For those fundamental reasons, and as set forth below, the plaintiff does not have a "right" to market-time the mutual fund shares that underlie his New York Life Policy. The complaint should be dismissed.

## THE COMPLAINT'S FACTUAL ALLEGATIONS

*Background Facts*

New York Life Insurance and Annuity Corporation ("New York Life") is a life insurance company organized under the laws of the State of Delaware.  Among the insurance products it offers are a variety of "variable" life insurance policies, which allow policyholders to "invest" some portion of the policy's cash value.  The investment options available to policyholders under a variable life insurance policy are limited, and include a variety of mutual funds sponsored either by New York Life (or its affiliates) or by other mutual fund companies.  Depending on the performance of the investments selected by the policyholder, the cash value of the policy may increase or decline.

The plaintiff Barry Linton is a mutual fund market-timer.  His personal investment strategy "required immediate execution of telephonic trade instructions to take advantage of market developments." Complaint (cited as "*Compl.*") at 1.  Mr. Linton purchased a Flexible Premium Variable Universal Life Insurance Policy from New York Life in June 1999 (the "Policy"). *Compl.* at 1.

*The Terms of the Policy*

The Policy allows Mr. Linton to assign assets to a "Separate Account" and then allocate those assets among a series of mutual funds.  By the terms of the Policy, the mutual funds are referred to as "Investment Divisions" within the Separate Account.  *See* Exhibit A[1] to Declaration of Levina Wong ("Wong Decl.") at ¶¶ 5.1-5.14.[2]  The Policy authorizes the holder to

---

[1]  All citations to "Exhibit __" refer to the respective exhibits to the Wong Decl.

[2]  This Court has authority to consider the Policy as part of a Rule 12(b)(6) motion to dismiss. *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (adopting the Seventh Circuit's decision in *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 341 (7th Cir. 1993) which states, "Documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they

revise those allocations from time to time by transferring assets among the Investment Divisions. *See* Exhibit A ¶ 5.11.

By its terms, however, the Policy also limits the manner in which a policyholder like Mr. Linton could make those transfers:

> **5.12  How Do You Make A Transfer Between Investment Divisions And To The Fixed Account?**  If you want to make a transfer, you must tell us in a notice you sign which gives us the facts that we need. . . .

*See* Exhibit A ¶ 5.12 (emphasis in original).  Hence, the Policy requires that transfers be submitted in advance to New York Life in a written "notice" that was "sign[ed]" by Mr. Linton.

The Policy also contains a straightforward integration clause.  Under the heading "What Constitutes The Entire Contract?" the Policy explains in plain terms that the "entire contract" between New York Life and Mr. Linton consists only of "this policy, any attached riders or endorsements, and the attached copy of the application."  *See* Exhibit A ¶ 9.1.[3]

Mr. Linton alleges that he purchased the Policy after reviewing the Policy itself and a May 1, 1999 Prospectus (the "1999 Prospectus") that described the features of the investments available under the Policy.  *Compl.* ¶ 7.  The 1999 Prospectus provided that "transfer requests must be in writing ... or by telephone in accordance with established procedures."  *See* Exhibit B at 34.  Thus, in addition to transferring assets among Investment Divisions by providing a written, signed notice to New York Life, the 1999 Prospectus also made possible the option of making transfers over the telephone.  In connection with the privilege of making transfers by telephone, Mr. Linton was required to complete a Telephone Authorization Form.  Exhibit B at

---

are referred to in the plaintiff's complaint and are central to her claim.").  The Policy is central to Mr. Linton's complaint and, as attached to this Motion, is part of the pleadings.

[3]  By signing the Policy, Mr. Linton also acknowledged, *inter alia*, that "[n]o agent . . . has any right to accept risks, make or change contracts, or give up any of [New York Life's] rights or requirements."  *See* Exhibit A at Application, as appended to the Policy at 6.

43.  That form, which Mr. Linton signed on the same day he executed the Policy, stated that "Telephone privileges may be discontinued at any time." *See* Exhibit C at 2.[4]

On April 17, 2003, New York Life issued its annual prospectus, dated May 1, 2003 (the "2003 Prospectus"). *See* Exhibit D.[5] The 2003 Prospectus reserved the right to limit transfers "to or from some or all of the Investment Divisions," in a provision entitled "Limits on Transfers." Exhibit D at 36.

As part of its reservation to limit transfers between Investment Divisions, the 2003 Prospectus provided that New York Life also reserved the right to "require that all subsequent transfer requests ... be made through the U.S. mail or an overnight courier," consistent with the requirements of the Policy. Exhibit D at 36. In accordance with the 2003 Prospectus language on transfer limitations, in July 2003, New York Life suspended Mr. Linton's ability to make telephonic transfers of assets among Investment Divisions. *Compl.* ¶ 11. New York Life exercised its right to discontinue that privilege, just as Mr. Linton agreed it could do when he signed the Telephone Authorization Form.

---

[4]  The 1999 Prospectus itself does not form part of the contract between the parties. As a matter of law, it is delivered to describe the securities that represent the investment alternatives under the Policy. Indeed, the 1999 Prospectus states, "The [P]olicy is a legal contract between you and [New York Life]. The entire contract consists of the policy, the application and any riders to the policy." Exhibit B at 6, ¶ 2.

[5]  The Court may consider documents filed publicly with the Securities and Exchange Commission on this motion to dismiss without converting the motion to one for summary judgment. *See Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (considering public documents without converting the motion to dismiss into one for summary judgment). *See, e.g., Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991) (considering prospectus and other offering documents submitted by defendants in motion to dismiss without converting to summary judgment motion); *Hogan v. Eastern Enter./Boston Gas*, 165 F. Supp. 2d 55, 58 (D. Mass. 2001) (considering ERISA plan in motion to dismiss, citing *Watterson*, 987 F.2d at 3-4); *Norwood v. New Engl. Power Co.*, 23 F. Supp. 2d 109, 112 (D. Mass. 1998) (considering "official public records" as part of motion to dismiss).

***The Complaint's Legal Theories***

Mr. Linton alleges that before he purchased the Policy, and in addition to reading the 1999 Prospectus, he discussed the Policy with a New York Life agent. According to Mr. Linton, he told the agent that his investment strategy required "timely execution of his trades." *Compl.* ¶ 6. The Complaint alleges that the agent assured Mr. Linton that his investment strategy could be employed under the Policy in the future, *Compl.* ¶ 8, and that Mr. Linton would be able to make unlimited transfers of the investments within the Policy's portfolio over the telephone. *Compl.* at 1.

Mr. Linton sued New York Life in the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts on May 24, 2004, complaining that he had been damaged by New York Life's suspension of his ability to transfer among Investment Divisions over the telephone. New York Life removed the action to this Court on June 15, 2004. The Complaint includes seven counts: Breach of Contract (Count I), Misrepresentation (Count II), Specific Performance (Count III), Declaratory Judgment (Count IV), Breach of the Covenant of Good Faith and Fair Dealing (Count V), Unjust Enrichment (Count VI), and Violation of Massachusetts General Law chapter 93A (Count VII).

## ARGUMENT

### I.    THE STANDARDS FOR GRANTING A MOTION TO DISMISS

Under Fed. R. Civ. P. 12(b)(6), dismissal is appropriate where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "A district court's central task in evaluating a motion to dismiss is to determine whether the complaint alleges facts sufficient to state a cause of action." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). While this Court "must accept as true the factual allegations of the complaint," *id.* at 16 (citing *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989)), it "need not accept a complaint's 'bald assertions' or 'unsupportable conclusions.'" *Id.* at 17 (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)). *Accord LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998) ("bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like ... can be safely ignored" (internal quotations omitted)); *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514-15 (1st Cir. 1988) (affirming a grant of a motion to dismiss for failure to state a claim where "that there was no breach of the Contract was crystal clear from the papers in the case").

### II.    THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH OF CONTRACT

The plaintiff's primary claim is that New York Life breached the contract between the parties when it suspended his ability to transfer assets among Investment Divisions by telephone. But that contract – the Policy, along with "any attached riders or endorsements, and the attached copy of the application" – did not confer on Mr. Linton a contractual right to direct transfers over the telephone. Hence, New York Life actions limiting Mr. Linton's ability do not amount to a breach of contract.

As noted above, the Policy clearly describes the manner in which Mr. Linton could transfer assets among Investment Divisions:

**5.12  How Do You Make A Transfer Between Investment Divisions And To The Fixed Account?** If you want to make a transfer, you must tell us in a notice you sign which gives us the facts that we need. . . .

*See* Exhibit A ¶ 5.12 (emphasis in original).  "In interpreting the provisions of a policy, we construe and enforce unambiguous terms according to their plain meaning." *Somerset Savings Bank v. Chicago Title Ins. Co.*, 420 Mass. 422, 427, 649 N.E.2d 1123, 1127 (1995) (citing *Thomas v. Hartford Accident & Indem. Co.*, 398 Mass. 782, 784, 500 N.E.2d 810 (1986); *Royal-Globe Ins. Co. v. Schultz,* 385 Mass. 1013, 434 N.E.2d 213 (1982)).  "When the provisions of a policy are plainly and definitively expressed, the policy must be enforced in accordance with the terms." *Id.* Here, the Policy clearly requires that transfers of assets among Investment Divisions be accompanied by a notice of the transfer signed by the policyholder.  Just as clearly, the Policy language does not confer any right to transfer by a means – such as by telephone – which does not require signed notice of the transfers.  Indeed, the Policy makes no mention whatever of transfers conducted by telephone.  Because this language makes it plain that the ability to effect transfers over the telephone was not among the bundle of rights conferred on Mr. Linton under the Policy, New York Life's suspension of Mr. Linton's ability to order transfers by telephone did not breach its obligations under the Policy.  Mr. Linton's breach of contract claim, therefore, must fail.

To avoid this result, Mr. Linton suggests that his alleged "right" to transfer assets by telephone derives from sources *outside* of the Policy.  In part, Mr. Linton relies on the 1999 Prospectus,[6] which, he says, "assured" him that he would be able to conduct transfers over the

_____

[6]  Mr. Linton's misplaced reliance on the 1999 Prospectus ignores the reference in the 1999 Prospectus to the Telephone Authorization Form, which Mr. Linton signed. *See* Exhibit C.  If, as Mr. Linton claims,

telephone with "immediate execution" in the future. *Compl.* at 1 and ¶ 8. But the provisions of the 1999 Prospectus did not form part of the contract between Mr. Linton and New York Life and, in all events, did not provide the "assurance" he claims.

The Policy's integration clause – under the heading "What Constitutes The Entire Contract?" – states in simple terms that the "entire contract" between New York Life and Mr. Linton consists of "this policy, any attached riders or endorsements, and the attached copy of the application." *See* Exhibit A ¶ 9.1. Notably absent from the integration clause is any mention of the 1999 Prospectus. And because the parties agreed between themselves that their agreement would consist only of those materials set forth in that integration clause, Mr. Linton may not look to the 1999 Prospectus for additional alleged rights.[7] *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261 (1st Cir. 1991) (under Massachusetts law extrinsic evidence "may not be admitted to contradict the clear terms of an agreement"); *Boston Edison Co. v. FERC*, 856 F.2d 361, 367 (1st Cir. 1988) ("extrinsic evidence is inadmissible, under the parol evidence rule, when it is introduced to add to, detract from, or vary the terms of a written contract") (internal quotations omitted); *In re New Era Packaging, Inc.*, 186 B.R. 329, 334 (D. Mass. 1995) (refusing to consider extrinsic evidence to contradict or modify the terms of the written contract where said

---

the 1999 Prospectus is to be incorporated into the Policy, so too must the Telephone Authorization Form be incorporated. *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 198 n.4 (1st Cir. 2001) ( "multiple documents may be read together . . . if it is shown that the papers were so connected in the minds of the parties that they adopted *all* of them as indicating their purpose") (citations and internal quotations omitted) (emphasis added)). As such, by executing the Telephone Authorization Form, Mr. Linton expressly agreed that "[t]elephone privileges maybe discontinued at any time." Exhibit C at 2.

[7] Likewise, neither do the provisions of the 2003 Prospectus form part of the contract between Mr. Linton and New York Life. *See* Exhibit D at 8 ("The entire contract consists of the policy, the application and any riders to the policy."). The 2003 Prospectus, however, does explain that New York Life reserves its right to revoke the privilege of the use of telephonic transfers if the policyholder's behavior "may disadvantage or potentially hurt the rights or interests of other policyholders." Exhibit D at 36. Mr. Linton's Complaint, therefore, incorrectly states that New York Life's suspension of his ability to effect transfers via telephone was "in contravention of the terms of [New York Life's] prospectus." *Compl.* ¶ 11.

contract had an integration clause and where the contract "[did] not suffer from any ambiguity which would justify disregarding its integration clause").

Indeed, the 1999 Prospectus itself cautioned Mr. Linton that its contents did not form part of his contract with New York Life. The 1999 Prospectus stated, "The *[P]olicy* is a legal contract between you and [New York Life]. The entire contract consists of the policy, the application and any riders to the policy." Exhibit B at 6, ¶ 2 (emphasis added). In a similar case, the Eastern District of Pennsylvania held that "[b]ecause the [Prospectus] states that another document (rather than the prospectus) constitutes the Contract, the prospectus cannot be construed to be part of the Contract." *Prusky v. Prudential Ins. Co. of Am.*, 2001 WL 34355665 *1, *25 (E.D. Pa. 2001) (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 306 (3d Cir. 1982) for the proposition that "where literature [stated] that it merely described another, controlling document, literature not integrated into contract").

In all events, even if the Prospectus *had* established contractual rights, it does not supply the "assurance" Mr. Linton claims. The 1999 Prospectus required policyholders who intended to make telephone transfers through the Voice Response Unit ("VRU") to complete a Telephone Authorization Form (*see* Exhibit B at 43), and the form, which Mr. Linton signed on the same day he executed the Policy, states that "Telephone privileges may be discontinued at any time." *See* Exhibit C at 2. By its terms, then, telephone authorization was permitted only "in accordance with established procedures," Exhibit B at 43, and those procedures authorized discontinuance of telephone privileges "at any time."

Finally, Mr. Linton's allegations also appear to suggest that the mere fact that New York Life permitted telephonic transfers at the time he executed the Policy (along with the description of telephonic transfers in the 1999 Prospectus) sufficed to show that he had a contractual "right"

to make such transfers under the Policy.  In the absence of ambiguous contractual language in the Policy on the question of whether transfers could be made without a signed notice from the policyholder, however, "custom and practice evidence cannot be used to vary the provisions of the policy." *Somerset Savings Bank*, 420 Mass. at 427, 649 N.E.2d at 1127 (citing *Newell-Blais Post # 443, Veterans of Foreign Wars of the U.S., Inc. v. Shelby Mut. Ins. Co.,* 396 Mass. 633, 638, 487 N.E.2d 1371 (1986) (language clear and unambiguous; recourse to extrinsic evidence not required); *Nilsen v. Mut. Marine Office, Inc.,* 428 F. Supp. 1375, 1378-1380 (D. Mass. 1977)).  To read the Policy to confer a right to conduct transfers among Investment Divisions *without* a written transfer request signed by the policyholder – such as, for example, a transfer made over the telephone – would indeed "vary the provisions" of the Policy.  It would squarely conflict with the Policy's plain terms.  The unambiguous language of the contract must prevail. In consequence, Mr. Linton fails to provide any support for his claim that New York Life breached that contract when it suspended his ability to make transfers over the telephone.

The facts alleged by Mr. Linton bear considerable resemblance to those in *First Lincoln Holdings, Inc. v. Equitable Life Assurance Society of the United States*, 164 F. Supp. 2d 383 (S.D.N.Y. 2001), in which the District Court granted defendant's comparable motion to dismiss. In *First Lincoln*, the contract between an investor in a variable life insurance policy and the administrator of the policy unambiguously reserved to the administrator "the right to limit access to [various electronic trading mechanisms, such as the telephone, fax and internet]." *Id.* at 387. Citing concerns over the harm that frequent transfers may cause to other policyholders and shareholders in the mutual funds in which the plaintiff was making frequent transfers, the defendant administrator withdrew plaintiff's rights to make electronic transfers or transfers by telephone. *Id.* at 388.  When the plaintiff sought to reinstate its "right" to telephonic and

electronic transfer privileges, based on allegations that the defendant had "misrepresented to the plaintiff the types of transactions in which the plaintiff would be permitted to engage," the court held that the unambiguous written document controlled. *Id.* at 393.[8] In dismissing the plaintiff's breach of contract claim, the court found "there is no promise in the annuity contract or Prospectus that [plaintiff] would have a 'right' to make trades via telephone, fax or internet." *Id.* Likewise, here, the Policy contains no promise of any right to make transfers by telephone. It only provides a right to make transfers accompanied by a signed notice. And the 1999 Prospectus states that the entire contract consists of the Policy, the application, and any riders to the Policy; i.e., that the 1999 Prospectus does not form part of the contract and does not confer any contractual rights. In the same way as in *First Lincoln*, then, New York Life's actions do not breach the terms of the Policy.[9]

## III. THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Massachusetts law implies into every contract a covenant of good faith and fair dealing, requiring that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *See Anthony's Pier Four, Inc. v.*

---

[8] Indeed, Mr. Linton's Policy vested New York Life with more discretion to restrict access to telephonic transfers than the discretion retained by the administrator of the variable annuity product in *First Lincoln*. While the annuity contract in *First Lincoln* did confer on policyholders a right to make telephonic transfers (and also granted the defendant the right to limit plaintiff's use of telephonic transfers in order to conform with "rules [prohibiting market timing trading]" at the time of transfer"), 164 F. Supp. 2d at 387, the New York Life Policy at issue here did not even provide Mr. Linton with right to transfer assets by telephone in the first place. *See* Exhibit A ¶ 5.12.

[9] *Cf. Windsor Secs., Inc. v. Hartford Life Ins. Co.,* 986 F.2d 655, 658, 667-668 (3d Cir. 1993) (finding breach of contract where policy did not limit policy owner's common law right to act through an agent and where defendant tried to so limit policy owner's right); *Am. Nat'l Bank & Trust Co. of Chicago v. Allmerican Fin. Life Ins. & Annuity Co.,* 304 F. Supp. 2d 1009, 1011, 1015 (N.D. Ill. 2003) (finding breach of contract where contract did grant "right" to telephone transfers, but holding however, that integration clause barred incorporation of the terms of the Prospectus where defendant attempted to introduce terms of the Prospectus as grounds for restricting "right" to telephonic transfers).

*HBC Assocs.*, 411 Mass. 451, 471, 583 N.E.2d 806, 820 (1991) (citations omitted). However, the implied covenant may not be invoked "to create rights and duties not otherwise provided for in the existing contractual relationship." *Uno Rest., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004) (citing *Cadle Co. v. Vargas*, 55 Mass. App. Ct. 361, 366, 771 N.E.2d 179 (2002)). The defendant's duties under the covenant, therefore, are limited by "the obligations – the contractual 'fruits' – actually contained in the agreement." *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001). Where the contract transfers no "right," there is no good faith obligation with regard to that conjured "right." *See id.* (citing *FDIC v. LeBlanc*, 85 F.3d 815, 822 (1st Cir. 1996)).

Courts consistently have refused attempts to expand contractual obligations of parties beyond those set forth in the contract under the guise of the implied covenant of good faith and fair dealing. In *Milford Power Ltd. Partnership v. New England Power Co.*, 918 F. Supp. 471, 483 (D. Mass. 1996), for example, the District Court rejected attempts by a seller of power to imply into a contract the condition that the purchase of power occur "at an economically viable cost," because the contract in question imposed no such condition on purchases. Similarly, in *Uno Restaurants*, the court found that the holder of a right of first refusal could not rely on the implied covenant where the holder had received the required notice and the contract imposed no duty on the owner to allocate a third-party offer in any particular manner. 441 Mass. at 385-86, 805 N.E.2d at 964-65.

As in *Milford Power* and *Uno Restaurants*, Mr. Linton's insistence on his contractual "right" to make transfer requests telephonically is squarely at odds with the contract itself; as shown above, the Policy simply does not contemplate transfers unaccompanied by a notice signed by the policyholder and makes no mention at all of transfers by telephone. Mr. Linton

would have this Court extend New York Life's obligations beyond those limned by the Policy to establish an ability to make transfers by telephone that the Policy does not create. In the absence of any express contractual right to request transfers by telephone, Mr. Linton has no reasonable expectation[10] – and, no right – to this "fruit" and, therefore, no basis on which to argue that New York Life's suspension of that ability breaches the covenant of good faith and fair dealing. For that reason, under Massachusetts law, the Policy implies no obligations concerning the ability to transfer assets among Investment Divisions by telephone. *See AccuSoft*, 237 F.3d at 45. The imposition of such an obligation in these circumstances would run counter to the original bargain reached by the parties at the time the Policy was signed. Hence, Mr. Linton's good faith and fair dealing claim is unavailing and should be dismissed.

## IV.   THE COMPLAINT DOES NOT STATE A CLAIM FOR MISREPRESENTATION

Under Massachusetts law, claims for both intentional and negligent misrepresentation require that the defendant (or its agent) made a false representation of material fact with the intent that the plaintiff rely on that representation, and that the plaintiff reasonably relied on the statement to his detriment. *Zuckerman v. McDonald's Corp.*, 35 F. Supp. 2d 135, 144 (D. Mass. 1999) (granting summary judgment to defendants where plaintiffs failed to show that defendant's representations were false); *Elias Bros. Rests. Inc. v. Acorn Enters., Inc.*, 831 F. Supp. 920, 926 (D. Mass. 1993) (requiring plaintiff's reliance on representation to be reasonable); *Powell v. Rasmussen*, 355 Mass. 117, 118-119, 243 N.E.2d 167, 168-69 (1969). Intentional misrepresentation requires that a defendant have actual "knowledge of [the statement's] falsity," *Zuckerman*, 35 F. Supp. 2d at 144, while negligent misrepresentation requires that plaintiff to

---

[10]   Indeed, Mr. Linton's alleged expectation is particularly unreasonable in light of the Telephone Authorization Form, in which Mr. Linton expressly agreed that New York Life could revoke telephone privileges "at any time." Exhibit C at 2.

establish "that the misrepresentation . . . could have been discovered by the defendant if the defendant had exercised diligence." *Id.* ("The distinction between intentional and negligent misrepresentation is, therefore, the nature of the defendant's knowledge or intent at the time the allegedly false representation was made.")  Here, Mr. Linton apparently alleges that New York Life made false representations either (a) through statements in the 1999 Prospectus describing the ability of policyholders to transfer assets among Investment Divisions over the telephone, and/or (b) through its agent, who allegedly assured him that he could employ his investment strategy (including the need for immediate execution of transfers over the telephone) throughout the life of the Policy. *Compl.* ¶ 20. Regardless of the source of the alleged statements, none of them are actionable and the claim must be dismissed.

Claims for negligent and intentional misrepresentation both require that a plaintiff reasonably relied on the statement at issue. Mr. Linton cannot have reasonably relied on an agent's statement that telephonic transfers would be available "throughout the life of" his life insurance policy, because such a statement – even assuming it was made in the vague form alleged in the Complaint – conflicts with the terms of the Policy.[11] *Davis*, 15 F. Supp. 2d at 137 ("[A] plaintiff with considerable business intelligence should not be able to claim reliance on a representation made during negotiations which directly conflicts with the terms of the integrated contract.")

In the insurance context, especially, it is well settled that, under Massachusetts law, "the acceptance of a contract establishes all its terms." *Gill v. Metro. Prop. & Cas. Ins. Co.*, 864 F. Supp. 251, 253 (D. Mass. 1994) (*quoting John Hancock Life Ins. Co. v. Schwarzer*, 354 Mass. 327, 329, 237 N.E.2d 50, 52 (1968)). An insured is presumed to have assented to the terms of

---

[11]     Mr. Linton's reliance also conflicts with his express agreement that New York Life could revoke telephone privileges at any time. *See* Exhibit C at 2.

the policy that he signed and executed even if he has retained the policy without reading it. *Gill*, 864 F.2d at 253; *Mundy v. Lumberman's Mut. Cas. Co.*, 783 F.2d 21, 22-23 (1st Cir.1986). Since Linton is presumed to have read and understood the plain terms of the Policy, he cannot claim ignorance of the contractual provision requiring him to provide a signed notice in advance of transfers. He cannot have reasonably relied on alleged representations by an agent when the Policy itself contradicted those representations in clear and unambiguous terms. *Sarnafil v. Peerless Ins. Co.*, 418 Mass. 295, 306-07, 636 N.E.2d 247 (1994) (holding that plaintiff could not reasonably rely on agent's representations that loss prevention coverage was included, when such coverage as "distinctly absent" from the policy itself). *See also Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 468, 781 N.E.2d 787, 795-96 (2003) (finding no reasonable reliance where merely reading the document would reveal terms contradicting the alleged representation and no evidence that defendant tried to conceal the "obvious" language of the contract); *cf. Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 60-61, 809 N.E.2d 1017, 1031-32 (2004) (reversing a grant of a motion to dismiss a misrepresentation claim in the absence of a factual record that representations were contradicted "elsewhere"). Unlike the facts of *Marram*, the representations Mr. Linton alleges as the basis of his claim were directly contradicted by the express language in the Policy. Mr. Linton, an investor intending to pursue an investment strategy he himself developed, was aware that the Policy contained no assurance that he would have the right to transfer assets over the telephone; indeed, the Policy only conferred a right to make transfers after a signed notice was provided. Because the alleged "assurance" conflicted the Policy's terms, Mr. Linton could not have reasonably relied on the alleged assurance. *Turner v. Johnson & Johnson*, 809 F.2d 90, 96-97 (1st Cir. 1986) (where a contractual provision contradicts the allegedly fraudulent statement, court's evaluation for

reasonable reliance gives more weight to the contract, particularly where the parties are experienced businesspeople).

It also would have been unreasonable for Mr. Linton to have believed that New York Life's 1999 Prospectus conferred contractual rights or that it would continue unchanged throughout the life of the Policy. The 1999 Prospectus states that the Policy is the contract. Exhibit B at 6, ¶ 2. New York Life is required to file annual prospectuses with the SEC. The 1999 Prospectus even made note of this fact, noting in connection with its discussion of surrender charges that "[t]he actual surrender charge which applies in any year, is described in the most current prospectus which is on file with the SEC." Exhibit A at 2.2. As with the surrender charge, Mr. Linton reasonably should have expected that matters contained in the 1999 Prospectus were subject to change so long as they did not conflict with the express terms of the Policy. His supposed reliance on the 1999 Prospectus's description of telephonic exchanges, and his alleged reliance on the assurance that his ability to make those telephonic exchanges would remain unaltered "throughout the life of" the Policy, was unreasonable, since it was plain that non-Policy provisions of the Prospectus were subject at least to annual change in an updated prospectus.

Massachusetts law is clear that precise terms of an integrated agreement are a bar to any claim by the plaintiff of reasonable reliance on oral representations that are contrary and made prior to the execution of the contract. *Elias Bros. Rests.*, 831 F. Supp. at 926 (finding no reasonable reliance on an oral representation made prior to the execution of the contract, thereby finding that party failed to state a claim upon which relief could be granted). *See also Turner*, 809 F.2d at 97 (rejecting claim based on a "prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue"). Thus, Mr. Linton is barred

from claiming that his reliance on an alleged representation that the Policy bestowed on him any "right" to effect transfers by telephone where the Policy clearly addresses the manner in which transfers are to be effected, i.e., in writing.

Mr. Linton's misrepresentation allegations fail for other reasons, as well. If a statement is true when made, it cannot form the basis of a misrepresentation claim merely because a plaintiff alleges that the defendant took steps at a later date which allegedly were inconsistent with the prior statement. *Rodowicz v. Mass. Mut. Life Ins. Co.*, 279 F.3d 36, 45 (1st Cir. 2002) ("A simple change of mind by a defendant does not render an earlier statement false."); *Zuckerman*, 35 F. Supp. 2d at 145-46. "[W]ithout evidence of the contrary intent [at the time the statement is made], the statement is not considered false at the time it is made." *Rodowicz*, 279 F.3d at 45. Mr. Linton complains that New York Life suspended his ability to transfer assets over the telephone, and thereby his ability to implement his investment strategy, in 2003; but he acknowledges, as he must, that he had implemented that strategy without disruption from 1999 until 2003. *Compl.* at ¶¶ 9-10. Even assuming Mr. Linton had adequately alleged that New York Life represented that telephonic transfers could be made "throughout the life of" the Policy, "conditions to exist in the future, or of matters promissory in nature" are not actionable under Massachusetts law, *Morgan v. Fin. Planning Advisors, Inc.*, 701 F. Supp. 923, 927 (D. Mass. 1988) (citing *Pepsi Cola Met. Bottling Co. v. Pleasure Island, Inc.*, 345 F.2d 617, 622 (1st Cir. 1965)), except in cases where "the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage." (internal quotations omitted). *Davis v. Dawson, Inc.*, 15 F. Supp. 2d 64, 137 (D. Mass. 1998) ("In other words, the false statement of a present intent to do the future act *must misrepresent the actual intent of the speaker*." (emphasis added)). Mr. Linton has failed to allege that a representation concerning a future "right" to trade

by telephone was made by a speaker whose intent at the time of the representation was *not* to provide Mr. Linton with that "right." Because the Complaint fails to state a claim for either negligent or intentional misrepresentation, Mr. Linton's misrepresentation claim must be dismissed.[12]

## V. THE COMPLAINT DOES NOT STATE A CLAIM UNDER MASS. G.L. C. 93A

Plaintiff's claim under Mass. G.L. c.93A ("chapter 93A") is nothing more than a replication of its breach of contract and misrepresentation claims, recast as "unfair" and "deceptive" conduct. Because all of Mr. Linton underlying claims at common law fail, his chapter 93A claim must necessarily fail. *See Zuckerman*, 35 F. Supp. 2d at 147 (quoting *Spenlinhauer v. Kane*, No. Civ. A. 9601-ST-044887, 1998 WL 474170, at *4 (Mass. App. Ct. Aug. 4, 1998), "[I]f the plaintiff is unable to produce evidence that demonstrates the essential elements of a claim for fraud (or deceit) at common law, as a matter of law the plaintiff would have no reasonable expectation of proving a violation of c. 93A.")

To prove a violation of chapter 93A, plaintiff must show that the defendant's conduct was "within at least the penumbra of some common-law, statutory or other established concept of unfairness" or else was "immoral, unethical, oppressive, or unscrupulous." *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975)). Mr. Linton's claim fails under either standard.

---

[12] Mr. Linton's allegations also fail to allege the circumstances of the alleged fraudulent misrepresentation with the particularity required by Fed. R. Civ. P. 9(b). *See* Fed. R. Civ. P. 9(b). *See also Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud, ... averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." (citations omitted)). In order to comply with Rule 9(b), Mr. Linton was required to state the content of the alleged misrepresentation, where and when it took place, and the person who allegedly made it. *Friedman v. Jablonksi*, 371 Mass. 482, 488-89, 358 N.E.2d 994, 998-99 (1976). Though Mr. Linton claims that the representations were based in part on the statements of New York Life's authorized agent, he has not identified that agent, nor has he alleged the precise content of the statements made by the agent, nor the time and place of the statements. *See Compl.* ¶ 6.

Just as none of the evidence in the record supports Mr. Linton's claims of contractual bad faith and misrepresentation, no evidence even suggests a violation of chapter 93A. *See, e.g.*, *Cummings*, 244 F.3d at 25 ("There can be no claim of unfairness based on a misrepresentation where [plaintiff] has failed to show [defendant] made *any* deceitful or even negligently false statements.") (emphasis in original). To the contrary, as shown above, Mr. Linton fails to state a claim where New York Life has acted with anything but good faith within the bounds of the Policy.

## VI.    THE COMPLAINT DOES NOT STATE A CLAIM FOR DECLARATORY JUDGMENT OR SPECIFIC PERFORMANCE

As stated above, the plaintiff has entirely failed to state a claim for which relief can be granted. It follows that there is no basis for his claims for declaratory judgment or specific performance; these claims must likewise be dismissed.

### CONCLUSION

For the foregoing reasons, New York Life respectfully requests that the Court dismiss the Complaint with prejudice.

Respectfully submitted,

NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION

By its attorneys,

John D. Donovan, Jr. (BBO # 130950)
Robert G. Jones (BBO #630767)
Levina Wong (BBO #654510)
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

Dated:  July 23, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2004, I served a copy of Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Complaint, by hand, upon Richard J. Grahn, Looney & Grossman, LLP, 101 Arch Street, Boston, MA 02110, attorney for Plaintiff Barry Linton.

Levina Wong