UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
_____

| | |
|---|---|
| BARRY LINTON, | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : |
| | : |
| NEW YORK LIFE INSURANCE AND ANNUITY | : |
| CORPORATION, | :   C.A. No. 04-11362-RWZ |
| | : |
| Defendant. | : |
| | : |

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Richard J. Grahn (BBO#206620)
P. Andy Henderson, Jr. (BBO#655891)
Looney & Grossman, LLP
101 Arch Street
Boston, MA  02110
(617) 951-2800

*Attorneys for Barry Linton*

Dated:  September 3, 2004

# *TABLE OF CONTENTS*

*PAGE(S)*

TABLE OF CONTENTS................................i

TABLE OF AUTHORITIES............................ii

INTRODUCTION.....................................1

ARGUMENT.........................................2

    I.    THE COMPLAINT STATES A CLAIM FOR BREACH OF
        CONTRACT .................................4

    II.   THE COMPLAINT STATES A CLAIM FOR
        MISREPRESNTATION.........................15

    III.THE COMPLAINT STATES A CLAIM FOR BREACH
        OF THE COVENANT OF GOOD FAITH AND FAIR
        DEALING .................................16

    IV.   THE COMPLAINT STATES A CLAIM FOR
        VIOLATION OF CHAPTER 93A ................17

    V.    THE COMPLAINT STATES A CLAIM FOR
        DECLARATORY JUDGMENT AND SPECIFIC
        PERFORMANCE .............................18

    CONCLUSION..................................19

*i*

## *TABLE OF AUTHORITIES*

### *UNITED STATES SUPREME COURT CASE*

*CASES*                                                                    *PAGE*

*Conley v. Gibson,*
*355 U.S. 41 (1957)* ................................................................*3*

*Hishon v. King & Spaulding*,
*467 U.S. 69 (1984)* ................................................................*3*

*United States v. Winstar Corp.,*
*518 U.S. 839 (1996)*................................................................*9*

### *FEDERAL CASES*

*Alison H. v. Byard,*
*163 F. 3d 2 (1st Cir. 1998)* ................................................*8*

*Am. Home Assur. Co. v. Fore River Dock & Dredge, Inc.,*
*321 F. Supp 2d 209 (D.Mass., 2004* ....................................*8*

*Am. Nat'l Bank & Trust Co. v. Allmerica Fin. Life. Ins.*& Annuity Co.,
*304 F. Supp. 2d 1009 (D III., 2003)*................................*9, 14, 18*

*Am. Nat'l Bank & Trust Co., v. AXA Client Solutions, LLC,*
*2001 U.S. Dist. LEXIS 8893 (D.III.,2001)*................................*14*

*Beddal v. State St., Bank & Trust Co.,*
*137 F.3d 12 (1st Cir. 1998)* ................................................*8*

*Bolen v. Paragon Plastics, Inc.,*
*747 F. Supp. 103 (D. Mass. 1990)* ........................................*11*

*Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc,*
*764 F. 2d 928 (1st Cir. 1985)* ................................................*19*

*Coll v. PB Diagnostic Systems, Inc.,*
*50 F.3d 1115 (1st Cir. 1995)* ................................................*7*

*Cooperman v. Individual Inc.,*
*171 F.3d 43 (1st Cir. 1999)* ........................................................................*3*

*Correa Martinez v. Arrillaga Belendez,*
*903 F. 2d. 49 (1st Cir. 1990)* ...............................................................*2, 4*

*Den Norske Bank AS. v. First Nat'l Bank,*
*75 F. 3d 49 (1st Cir.1996)* ........................................................................*8*

*First Lincoln Holdings Inc. v. Equitable Life Assur. Soc'y of the U.S.,*
*164 F. Supp 2d 383 (S.D.N.Y., 2001)*....................................................*9,12*

*Gooley v. Mobil Oil Corp.,*
*851 F. 2d 513 (1st Cir. 1988)* ....................................................................*3*

*Lanier Professional Servs v. Ricci,*
*192 F. 3d 1 (1st Cir. 1999)* ........................................................................*8*

*McAdams v. Mass Mut. Life Ins. Co.,*
*2000 U.S. Dist. LEXIS 22068 (D. Mass., 2000)*.......................................*17*

*Prusky v. Phoenix Life Ins. Co.,*
*2003 U.S. Dist. LEXIS 4054 (D. PA., 2003)* .............................*11,12,13,16*

*Raytheon Co. v. Continental Cas. Co.,*
*123 F. Supp. 2d 22 (D.Mass.,2000)* ........................................................*20*

*Tagliente v. Himmer,*
*949 F. 2d 1 (1st Cir. 1991)* .......................................................................*19*

*Watterson v. Page,*
*987 F. 2d 1(1st Cir, 1993)* .........................................................................*8*

## STATE CASES

*Anthony's Pier Four v. HBC Assoc.,*
*411 Mass 451, 583 N.E. 2d 806 (1991)* ..............................................*17, 18*

*Bercume v. Bercume,*
*428 Mass. 635, 704 N.E. 2d 177 (1999)* ....................................................*8*

*Boylston Dev. Group, Inc. v. 22 Boylston Street Corp.,*
*412 Mass. 531, 591 N.E. 2d 157 (1992)* ...................................16

**Druker v. Roland Wm. Jutras Associates, Inc.**
*370 Mass. 383, 348 N.E. 2d 763 (1976)* ...................................18

*Fox v. F & J Gattozzi Corp.,*
*41 Mass. App. Ct. 581, 672 N.E. 2d 547 (1996)*........................14

**Glickman v. Brown,**
*21 Mass. App. Ct. 229, 486 N.E. 2d 737 (1985)* ......................18

*Hamlen v. Rednalloh Co.,*
*291 Mass. 119, 197 N.E. 149 (1935)* ..........................................9

*Kobayashi v. Orion Ventures, Inc.,*
*42 Mass App. Ct 492, 678 N.E.2d 180 (1997)*............................8

*LiDonni, Inc. v. Hart,*
*355 Mass 580, 246 N.E.2d 446 (1969)* ....................................11

*Loranger Const. Corp. v. E.F. Hauserman Co.,*
*376 Mass. 757, 384 N.E.2d 176 (1978)* ....................................16

*Marram v. Kobrick Offshore Fund, Inc.,*
*442 Mass 43, 809 N.E.2d 1017 (2004)* .................................8,19

*Maynard v. Fabyan,*
*267 Mass. 312, 166 N.E. 629 (1929)* .......................................11

*Merrimack Valley Nat'l Bank v. Baird,*
*372 Mass. 721, 363 N.E.2d 688 (1977)* ......................................8

*Popponesset Beach Ass,n v. Marchillo,*
*39 Mass. App. Ct. 586, 658 N.E.2d 983 (1996)* ......................11

*Salaman v. Terra,*
*394 Mass 857, 447,N.E.2d 1029 (1985)*....................................11

*Therrien v. Leblanc,*
*282 Mass 328, 331, 185 N.E. 15 (1933)* ..................................11

**Tufankjian v. Rockland Trust Co.,**
*57 Mass. App. Ct. 173, 782 N.E.2d 1 (2003)*............................18

*Thattil v. Dominican Sisters of Charity of*
*Presentation of Blessed Virgin, Inc.,*
*415 Mass. 381, 613 N.E.2d 908 (1993)* ...................................................20

*Watson v. Nashawtue Country Club*,
*2001 Mass. Super. LEXIS 588, 14 Mass. L.Rep. 218 (2001)* ...................18

## STATUTES and TREATISES

*Fed. R. Civ. P.8(a)* ..........................................................................................3

*Fed. R. Civ. P.12(b)(6)* ...................................................................................3

*Mass G. L. c. 231A*..........................................................................................20

*Mass G. L. c. 93A*............................................................................................18

*Restatement (Second) of Contracts, § 19 (1981)* .......................................11

*Restatement (Second) of Contracts § 202 (1981)* ......................................11

*Restatement (Second) of Contracts § 205 (1981)* ......................................17

*Restatement (Second) of Torts § 552(1)(1977)* ..........................................14

*Wright & Miller Federal Practice and Procedures*
*Civil 3d§ 1356*..................................................................................................3

*ii*

## INTRODUCTION

This is an action to enforce contractual obligations under the terms of a written contract. The facts as alleged in the complaint assert that the parties expressed their respective objectives and memorialized their understanding in a written agreement. Over the next four years the parties established a course of conduct consistent with the responsibilities as set forth in their agreement and as understood by the plaintiff based upon explanations of the contract language provided by the defendant. Thereafter, however, the defendant unilaterally modified the terms of the relationship so as to preclude the plaintiff from making investments in the manner prescribed by the agreement and utilized by him during that four year period. The plaintiff asserts that the defendant failed to fulfill its obligations to him as expressed in the written agreement and as evidenced by the parties' course of performance. This complaint seeks specific performance of the agreement as well as damages caused by that breach.

## PROCEDURAL BACKGROUND

Barry Linton ("Mr. Linton") filed this action in the Business Law Section of the Superior Court Department on May 24, 2004 (the "Complaint", cited as *Compl.*). The Complaint alleges that New York Life Insurance and Annuity Corporation ("New York Life") breached the terms of the Flexible Premium Variable Universal Life Insurance Policy purchased from New York Life, dated June 1999, ("Policy") when it unilaterally imposed amendments to the agreement limiting the number of transfers he could make within his accounts and by modifying the manner in which Mr. Linton could transfer funds in the accounts maintained under the Policy. *Compl. ¶ 11, 16-17.*

1

More specifically, in 2003, New York Life adopted a revised prospectus pursuant to the terms of which New York Life prohibited Mr. Linton from utilizing telephonic trading procedures required by him to implement an investment strategy previously disclosed to New York Life and employed by the parties over a four year period. *Compl. ¶ 12.*

The plaintiff also alleges that to the extent New York Life now contends it was within its contractual rights to modify these terms, then it and its agent, misrepresented the material terms of the agreement by means of inconsistent oral representations, and misrepresentations contained in Policy and the 1999 Prospectus ("1999 Prospectus") by which Mr. Linton was informed that limitless telephonic trading, imperative to implementation of the plaintiff's successful investment strategy, was and would continue to be authorized under the terms of the Policy. *Compl ¶¶ 7-8, 20.* The Complaint alleges seven counts; Breach of Contract (Count I), Misrepresentation, (Count II), Specific Performance (Count III), Declaratory Judgment (Count IV), Breach of the Covenant of Good Faith and Fair Dealing (Count V), Unjust Enrichment and Restitution[1] (Count VI), and Violation of Massachusetts General Law chapter 93A (Count VII).

On June 15, 2004, the defendant removed the action to this court on the basis of diversity of jurisdiction.

---

[1] As a preliminary matter, New York Life does not address plaintiff's Unjust Enrichment and Restitution claim - (Count VI) of his Complaint. Viewing all allegations in the Complaint as true and in the light most favorable to the plaintiff, it has been asserted that the plaintiff paid substantial fees to New York Life in acquiring the Policy based upon the defendant's misrepresentation and those fees should be disgorged. *Compl. ¶¶ 7, 34-35.* Accordingly, the defendant's motion to dismiss should be denied in that plaintiff, has shown a legal theory as to which he is entitled to recovery. Correa Martinez v. Arrillaga Belendez, 903 F.2d 49, 51 (1st Cir. 1990).

## ARGUMENT

### AS THE PLAINTIFF'S COMPLAINT ALLEGES FACTS UPON WHICH RELIEF MAY BE GRANTED,THE DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED.

### STANDARD OF REVIEW

In evaluating a motion to dismiss under Fed. R. Civ. P.12(b)(6), the court must accept all well-pleaded facts as true, drawing all reasonable inferences in plaintiff's favor. *See Cooperman v. Individual Inc.*, 171 F.3d 43, 46 (1st Cir. 1999). The court may grant a motion to dismiss only if, "when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   Furthermore, Rule 12(b)(6) motions must be examined in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to assert "a short and plain statement of the claim showing that [it] is entitled to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).   "Only when the pleading fails to meet this liberal standard is it subject to dismissal under Rule 12(b)(6)."   5A Wright & Miller, § 1356.  Under Rule 12(b)(6), dismissal is only appropriate where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

### STATEMENT OF FACTS.

The plaintiff, Barry Linton, is a resident of the Commonwealth of Massachusetts.  He is the owner of the Policy issued by New York Life. *Compl. ¶ 7.*  In 1999, Mr. Linton was referred to an agent of New York Life in connection with his investigation of alternative investments for

use in continuing an investment strategy he had developed over a twenty-year period. *Compl. ¶¶ 1, 5.* Pursuant to this strategy, computerized models of economic performance were analyzed and "buy" or "sell" signals were generated based on specific performance criteria. *Compl. ¶ 5.* Successful implementation of this investment strategy required timely trades to take advantage of future market activity predicted by the models. *Compl. ¶¶ 6, 10.*

In the process of considering the defendant's product, Mr. Linton thoroughly reviewed his investment strategy with a New York Life agent and informed the agent of his three primary concerns: (a) the requirement that he be entitled to unlimited transfers within his accounts; (b) that his trading instructions be acted upon in a timely fashion upon telephonic notice; and (c) that the authorized telephonic trading provisions would not be changed during the life of the Policy. *Compl.¶¶ Introduction, 6, 20.* Mr. Linton was assured by New York Life's agent that New York Life's Policy satisfied his concerns and as further assurance, directed Mr. Linton to the terms of the Policy itself, as well as to the 1999 Prospectus registered with the Securities and Exchange Commission, pursuant to which the Policy was offered for sale to the public. *Compl. ¶¶7-8*

The Policy provides that policyholders like Mr. Linton were entitled to unlimited transfers of the assets assigned to "Investment Divisions" and held in the various mutual funds made available to policyholders by New York Life. *See* Exhibit A[2] to the Declaration of Levina Wong ("Wong Decl."). The Policy provides:

> "There is no limit to the number of transfers that can be made. We reserve the right to apply a charge not to exceed $30, for each transfer after the first twelve in a given year."

Exhibit A ¶ 5.14.

---

[2] All references to "Exhibit _____" are to the respective exhibits to the Wong Decl. accompanying the Defendant's Motion to Dismiss.

The Policy also authorizes the policyholder to adjust asset allocations among the mutual funds by transferring assets among the Investment Divisions.  Exhibit A ¶ 5.11.

Mr. Linton was directed by New York's agent to the Policy's provision that addresses the manner of transfer:

> **5.12 How Do You Make Transfers Between Investment Divisions and to the Fixed Account?**  If you want to make a transfer, you must tell us in a notice you sign which gives us the facts that we need . . .

See Exhibit A ¶ 5.12 (emphasis in original).

Further elaborating on this process, New York Life's agent referred Mr. Linton to the 1999 Prospectus, which identified the specific procedures New York Life required in order to effectuate trades under ¶ 5.12:

> Transfer requests must be in writing on a form approved by NYLIAC or by telephone in accordance with established procedures.

Exhibit B at p. 43.

The "established procedures" were identified to Mr. Linton as those also found within the 1999 Prospectus:

**Procedures for Telephone Transfers**

You may effect telephone transfers in two ways.  You may directly contact a service representative at (800) 598-2019.  You may also request access to an electronic service known as a Voice Response Unit (VRU).  The VRU will permit the unassisted transfer of monies among the Investment Divisions and/or the Fixed Account and change of allocation of future payments.  If you intend to conduct telephone transfers through the VRU, you must complete a Telephone Authorization Form.  We reserve the right to temporarily discontinue the availability of the VRU.

We will undertake reasonable procedures to confirm that instructions communicated by telephone are genuine.  Before a service representative accepts any requests, callers will be asked for their social security number and address.  All calls will also be recorded.  A Personal Identification Number (PIN) will be assigned to all policyowners who request VRU access.  The PIN is selected by and known only to the policyowner.  Proper entry of the PIN is required before any transactions will be allowed through the VRU.

Furthermore, we will confirm all transactions performed over the VRU and all transactions effected with a service representative, in writing. NYLIAC is not liable for any loss, cost or expense for action on telephone instructions, which are believed to be genuine in accordance with these procedures. Telephone transfer requests must be received no later than 4:00 p.m. Eastern Time to assure same-day processing. Requests received after 4:00 p.m. will be processed at the end of the next Business Day.

Exhibit B, at p. 43.

Mr. Linton was also referred to ¶ 9.1 of the Policy which confirmed that "no change to this contract will be made without your consent" (Exhibit A ¶ 9.1) and to similar provisions in the 1999 Prospectus. Exhibit B at p. 39.

Having been advised by New York Life's agent as to the precise meaning of the terms used in the Policy establishing the right to make unlimited telephonic transfers, and verifying that neither the Policy, nor the Prospectus, provided New York Life with the right to amend these material terms, Mr. Linton purchased the Policy and paid New York Life substantial fees. *Compl. ¶¶ 7,8,20.*

For approximately four years thereafter, Mr. Linton and New York Life enjoyed a mutually rewarding contractual relationship during which Mr. Linton's portfolio appreciated substantially in value through implementation of his investment strategy, and New York Life charged and received substantial additional fees. *Compl. ¶¶ 8, 10.* During this period, Mr. Linton and New York Life engaged in a course of performance with respect to telephonic trading identical to that identified within the Policy and Prospectus and confirmed by New York Life's agent. *Compl. ¶¶7,8,10.*

In 2003, however, New York Life advised Mr. Linton of the issuance of its annual prospectus, dated May 1, 2003 (the "2003 Prospectus"). See Exhibit D. The 2003 Prospectus purportedly reserved to New York Life the right, prospectively, to limit transfers "to or from some or all of the Investment Divisions." Exhibit D at 36. Included within these allegedly

reserved rights was that of requiring "that all subsequent transfer requests . . . be made through U.S. mail or an overnight courier." Exhibit D at 36. No such rights were reserved to New York Life by any provision of the Policy or the 1999 Prospectus.

Asserting its rights under the 2003 Prospectus, but not referencing any right to limit the number of transfers or to modify the telephonic trading procedures under the Policy or the 1999 Prospectus, in July 2003, New York Life prohibited Mr. Linton's from transfering of assets within the Investment Divisions by telephonic instruction. *Compl.* ¶ 11. Thereafter, the plaintiff commenced this action.

### A.    THE COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT.

In order to succeed on a claim for breach of contract, the plaintiff must prove the existence of a valid binding agreement, the defendant's breach thereof, and damages resulting from the breach. *Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995).

In the present action, Mr. Linton's Complaint alleges that there is a written contract between the parties. *Compl. ¶ 7.* In addition, Mr. Linton has also pleaded facts establishing that New York Life intended to allow Mr. Linton to transfer funds telephonically through the language of the Policy, as well as by the parties' four year course of performance prior to revocation of Mr. Linton's authorization to trade telephonically. *Comp. ¶ 10.* The Complaint alleges that the contract was supported by valuable consideration and that Mr. Linton performed his duties under the contract by paying all the significant fees charged. *Compl. ¶ 16.* The Complaint further alleges, that New York Life breached its agreement when it applied the 2003 Prospectus' transfer limitations to Mr. Linton and that Mr. Linton has been damaged[3]. *Compl.*

---

[3]In addition to paying the fees to New York Life to acquire the Policy, the plaintiff is obligated under the Policy to pay substantial "Surrender Charges" were he to terminate the Policy. Exhibit A ¶ 7.3. The plaintiff would also be required to pay taxes on the appreciated value of the portfolio, which otherwise would be deferred.

*¶¶ 11-13, 17-18.*   Drawing all reasonable inferences in favor of Mr. Linton, it is clear that the

plaintiff has pleaded facts that give rise to a cause of action against New York Life for breach of

contract.

Referring to the Policy, the 1999 Prospectus, the 2003 Prospectus and a Telephone

Authorization Form[4], New York Life argues that it has an unfettered right to limit both the

number of transfers within the Investment Divisions, as well as to modify the procedures by

which those transfers are made, and that the language of the Policy excludes any contrary

representation.  *See Memorandum of Law in Support of Defendant's Motion to Dismiss*

*Plaintiff's Complaint* (cited as "*Defendant's Memorandum*") at  p. 8.

As set forth above, however, the plaintiff's claims are based upon the specific language

of the Policy[5].  Section 5.12 authorizes trades upon any "notice you sign which gives us the facts

---

[4] It is understood that when a court considers documents that are not attached to the complaint a court may convert a Rule 12(b)(6) motion into a motion for summary judgment. Exceptions are made "for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). *Accord Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).  In this case, the defendant has attached a document to its motion to dismiss that was not relied on by Mr. Linton in his Complaint.  Specifically, the defendant has attached the Telephone Authorization Form, Exhibit C.  In the event the Court intends to consider this document as one not sufficiently referred to in the complaint and to convert the motion to one for summary judgment, the plaintiff seeks leave to supplement this submission to establish that there exist genuine issues as to disputed material facts regarding this document.

[5] Accordingly, the defendant's argument that the Policy's "integration clause" precludes the plaintiff from introducing extrinsic evidence to vary the terms of the Policy is unavailing.  *See Defendants Memorandum* at pp. 9-10.  As described above, the plaintiff relies on the terms of the Policy as those terms were explained to him by New York Life's agent and as they were confirmed by the review of the provisions of the 1999 Prospectus and the parties' four year course of dealing.  Consequently, the Policy's integration clause does not cause the plaintiff's breach of contract claim to fail.  *See Marram v. Kobrick Offshore Fund., Ltd.,* 442 Mass. 43, 60-61, 809 N.E. 2d 1017, 1031-32 (2004) (reversing allowance of a motion to dismiss claims based on pre-investment and post-investment statements notwithstanding the contract's integration clause.)  In the event the Court concludes that the Policy's provisions are ambiguous, then the defendant's motion to dismiss nevertheless should be denied.  *Am. Home Assur. Co. v. Fore River Dock & Dredge, Inc.*, 321 F. Supp. 2d 209, 216 (D. Mass., 2004)(if a contractual term is ambiguous, then consideration of parol evidence is appropriate.); *Merrimack Valley Nat'l Bank v. Baird,* 372 Mass. 721, 724*,* 363 N.E.2d 688, 691 (1977) ("the author of an ambiguous term is generally held to any reasonable interpretation attributed that term which is relied on by the other party."); *Kobayashi v. Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 496, (1997)(extrinsic evidence bearing upon the background and purpose of the parties, as well as their understanding of the meaning of particular language used in the contract, may be considered both in the construction of ambiguous contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter.).  When contractual language is ambiguous**,** its meaning is a question of fact. *See Den Norske Bank AS v. First National Bank*, 75 F.3d 49, 52 (1st Cir. 1996).

that we need . . . ".  As explained to Mr. Linton by New York Life's agent, and as confirmed by

the 1999 Prospectus, and as verified by the parties' four year experience, the form of that

"notice" was a telephonic instruction, and the signing required was that of a verified personal

identification number.  The Policy does not require a "written" notice as New York Life now

contends.  *Defendant's Memorandum at p. 18*.  In fact, the term "written" notice is not found in

¶ 5.12, although requirements for "written" notification appear in other sections.  *See e.g* .

Exhibit A *¶¶* 3.1, 9.17, evidencing the intent not to require "written" notice for account transfers

under ¶5.12. *See Hamlen v. Rednalloh Co.,* 291 Mass. 119, 123, 197 N.E. 149 (1935)

("expression by the parties in a written instrument of certain things indicated their intention to

exclude other unmentioned things . . . ").

     To avoid the plaintiff's assertion that New York Life breached the contract by adopting

the 2003 Prospectus' transfer restrictions and by revoking Mr. Linton's telephone trading

authorization, the defendant refers to selected extrinsic evidence[6].  New York Life asserts that a

Telephonic Authorization Form signed by Mr. Linton (Exhibit C p. 2) states that "Telephone

privileges may be discontinued at any time."  *Defendant's Memorandum* at p. 10.  The

defendant's reliance on this language is misplaced, however, because the defendant's

---

[6] It appears from review of the *Defendant's Memorandum* that New York Life has changed its policies in an attempt to address "market timing" issues.  As explained by one district court, "market timing" is "a method of securities trading which involves major transfers into and out of various investment portfolios sometimes within hours."  *First Lincoln Holdings, Inc. v. The Equitable Life Assurance Society*, 164 F. Supp. 2d 383, 385 (S.D.N.Y. 2001) *aff'd* 43 Fed Appx 462 (2d Cir. 2002).  Notwithstanding the defendant's numerous references to Mr. Linton's status as a "market timer," New York Life does not, and can not, contend that Mr. Linton's conduct was illegal, inappropriate, or in violation of the Policy or of any securities law or regulation.  None of the recently publicized allegations of after-hour trading or trading privileges extended to preferred customers are present in this case.  There is nothing pejorative in the use of the term as it applies to adjusting the mutual funds portfolio in anticipation of market activity, a right each policyholder possessed.  *See Am. Nat'l Bank & Trust Co. v. Allmerica. Fin. Life Ins.& Annuity Co.*, 304 F. Supp. 2d 1009, 1017-1018 (N.D. Ill. 2003) (entering summary judgment upon a claim that the insurer wrongfully imposed additional post-purchase transfer restrictions and rejecting defendant's contention that market timing is violative of public policy).  Moreover, subsequent changes, even if proffered to address legitimate concerns, may not abolish established contractual obligations.  *See e.g. United States v. Winstar Corp.,* 518 U.S. 839 (1996)(government breached its contract with savings and loan association where it failed to indemnify for damages incurred as a result of legislation that was enacted subsequent to the parties' contract).

interpretation of the meaning of that language is inconsistent with the Policy and the 1999 Prospectus, each of which carefully outline the authorized telephonic procedures.

To the extent that parol evidence is considered, that evidence only confirms the interpretation offered by Mr. Linton based upon the explanations supplied by New York Life to Mr. Linton at the time of acquisition of the Policy. The 1999 Prospectus provides that telephone authorization was permitted "in accordance with **established** procedures." Exhibit B at 3, (emphasis supplied). Use of the past tense reflects the accuracy of the plaintiff's assertion that representations were made by New York Life confirming that procedures would not be changed[7].

In addition, further definition as to the limited nature of the right of New York Life to discontinue telephone privileges is found in the 1999 Prospectus where New York Life reserved "the right to **temporarily** discontinue the availability of the **VRU**." Exhibit B p. 43 (emphasis supplied). Pursuant to the established procedures for telephone transfers, Mr. Linton could employ two methods to transfer money within his accounts. He could either call a representative, or he could use the VRU. If Mr. Linton chose the VRU he understood that the VRU could be "temporarily" discontinued. Even were the VRU temporarily discontinued, Mr. Linton was entitled to make telephone transfers by calling a representative under the procedures set forth in the Policy and 1999 Prospectus. Neither the Policy nor the 1999 Prospectus, contemplate discontinuing all methods of telephonic transfers permanently.

---

[7] The defendant also contends that Mr. Linton should have been aware that the provisions authorizing unrestricted telephonic transfers could change because the 1999 Prospectus advises policyholders of anticipated annual revisions to the prospectus by which changes in procedures or rights could be modified. *Defendant's Memorandum* at pp. 17-18. The defendant acknowledges, however, that such amendments could not alter the terms of the policy. *Defendant's Memorandum* at p. 17. In fact, the Policy specifically identifies those limited rights reserved to New York Life. Exhibit A ¶ 5.6. Review of those identified reservations reveals no basis to contend that New York Life's reserved the right to prohibit telephonic trading. Indeed, New York Life acknowledged that "no change to this contract will be made without your consent." Exhibit A ¶ 9.1. New York Life neither solicited, nor obtained Mr. Linton's authorization to alter the Policy or the 1999 Prospectus.

Moreover, the defendant cannot avoid discussion of the consequences of the four year course of dealing between the parties.  This four year experience is relevant in interpreting the Policy and clearly confirms the interpretation placed upon the language by Mr. Linton. *See generally, Prusky v. Phoenix Life Ins. Co.*, 2003 U.S. Dist. LEXIS 4054 (E.D. Pa. 2003); *Restatement (Second) of Contracts § 202 (1981).*  When no express agreement exists, a contract implied in fact may be inferred from the conduct and relations of the parties. *See Popponesset Beach Association v. Marchillo,* 39 Mass. App. Ct. 586, 592, 658 N.E.2d 983, 987 (1996); *LiDonni, Inc. v. Hart,* 355 Mass 580, 583, 246 N.E.2d 446, 449 (1969); *Restatement (Second) of Contracts, § 19 (1981)*. To recover on the grounds of implied contract, a plaintiff must show that he conferred a measurable benefit upon the defendant and that the defendant accepted the services with the expectation of compensating the plaintiff. *See Bolen v. Paragon Plastics Inc*., 747 F. Supp. 103, 106 & n.1 (D. Mass. 1990); *Salamon v. Terra,* 394 Mass. 857, 859-60, 477 N.E.2d 1029, 1031 (1985) (implied-in-law)*; LiDonni,* 355 Mass. at 583 (implied in fact). When the defendant was, or should have been, aware of the plaintiff's expectations in this regard, the defendant's failure to object can create a contract. *E.g.*, *Therrien v. Leblanc, 282* Mass. 328, 331, 185 N.E. 15, 16 (1933); *Maynard v. Fabyan,* 267 Mass. 312, 315, 166 N.E. 629, 630 (1929).

In this case, Mr. Linton's Complaint alleges that New York Life charged Mr. Linton significant fees in order for him to implement his investment strategy.  *Compl. ¶ 8.*  In addition, Mr. Linton's Complaint alleges that for four years the parties successfully operated under the terms of the Policy explained to him by New York Life's agent.  *Compl. ¶ 10.*  Therefore, viewing all facts and reasonable inferences in a light most favorable to Mr. Linton, and reading the language of the Prospectus coupled with the parties' course of performance for four years, it is clear that the parties intended to allow transfers within investment accounts by telephone for

the life of the Policy.  As a result, denial of Mr. Linton's right to engage in unlimited telephonic

trades under New York Life's procedures established at the time of acquisition of the Policy

constitutes a breach of the terms of the Policy, which Mr. Linton has properly alleged.

In support of its motion to dismiss, New York Life places singular emphasis on *First

Lincoln Holdings, Inc. v. Equitable Life Assur. Soc'y of the U.S.*, 164 F. Supp. 2d 383 (S.D.N.Y.

2001).  New York Life's reliance on this case is inappropriate, however, in that the underlying

facts are materially different from those present in this action.  In *First Lincoln*, the court

dismissed plaintiff's complaint based on the expressed and unambiguous terms of the parties'

contract.  *First Lincoln*, 164 F. Supp. 2d at 393.  Under the contract, and as confirmed by the

correspondence between the parties, and the terms of the prospectus in effect at the time the

parties entered into the contract, any conduct related to "market-timing" was specifically

prohibited.  *Id.* at 387.

In the present action, neither the Policy, nor the Prospectus, refer to "market timing", nor

do they give discretion to New York Life to eliminate telephone transfers or limit the number of

transfers among Investment Divisions.  By defendant's own admission, at best the Policy is silent

on this issue.  *See Defendant's Memorandum at p. 8.*  However, as set forth above, Mr. Linton

was advised and believed that under the Policy and the 1999 Prospectus he was and would

continue to be permitted to engage in unrestricted transfers of funds either in writing on a form

approved by New York Life or by telephone in accordance with the procedures then established,

and that any changes would require his approval.

The facts of the present action are far closer to those in *Prusky v. Phoenix Life Ins. Co.*,

2003 U.S. Dist. LEXIS 4054 (E.D. Pa. 2003).  In *Prusky,* the plaintiff was interested in

purchasing a variable universal life account from the defendant.  Eight months prior to acquiring

the policy, the plaintiff contacted the insurer's agent to inquire about transferring funds among certain subaccounts. *Id.* at *6. Specifically, plaintiff was interested in: 1) whether Phoenix would allow unlimited transfers of funds between available subaccounts; (2) whether Phoenix would accept phone and faxed subaccount transfer requests; (3) whether Phoenix would allow an authorized investment advisor to phone or fax subaccount transfer requests on behalf of an insured; and (4) whether Phoenix would accept transfers after 4:00 p.m. E.S.T. *Id.* at 3-4. An agent of the defendant wrote to Mr. Prusky and stated that defendant would allow unlimited subaccount transfers. *Id.* at *4. Based on these representations, the plaintiff purchased a policy with the defendant and started making transfers among subaccounts. *Id.* at *5. Plaintiff continued to make transfers among subaccounts for three years at which time the defendant refused to honor his transfer requests. *Id.* at *6. Plaintiff filed suit alleging, among other things, breach of contract, fraud or negligent misrepresentations, unfair and deceptive trade practices and requesting injunctive and declaratory relief. *Id. at *2.*

In denying the defendant's motion to dismiss, the Court held that because plaintiff alleged he had relied on representations made by the defendant in its memorandum when purchasing the policy, he established a breach of contract claim. *Id. at *13.* In addition, the court found that the parties' course of performance under the policy supported the plaintiff's breach of contract claim. *Id. at *14.*

Mr. Linton likewise has alleged that he has justifiably relied on statements in the Policy, the 1999 Prospectus, as well as statements made by New York Life's agent explaining the meaning of the terms used. *Compl. ¶ 7.* Mr. Linton has further alleged that the parties' course of performance under the Policy confirmed the interpretation he relied upon in agreeing to purchase the Policy. *Compl. ¶ 10.* Under the reasoning applied in *Prusky*, the parties' course

of performance for the past four years provides the necessary factual predicate to establish a breach of contract claim.

In fact, in *Am. Nat'l Bank & Trust Co., v. Allmerica Fin. Life Ins. & Annuity Co.,* 304 F. Supp. 2d 1009 (N.D. Ill. 2003), the Court not only denied the defendant's motion to dismiss, but entered summary judgment in favor of the plaintiff on its breach of contract claim where it was contended that the terms of an insurance policy were breached by the insurer's imposition of post-acquisition transfer restrictions not contained in the policy. Similarly, in *Am. Nat'l Bank & Trust Co. v. AXA Client Solutions, LLC*, 2001 U.S. Dist. LEXIS 8893 (N.D. Ill., 2001), the court denied a motion to dismiss a remarkably similar complaint finding that where detailed trading strategies, requiring rapid account transfers, were said to be authorized under the annuity contract, a breach of contract claim could be asserted when post-acquisition transfer restrictions were imposed even if the insurer reserved the right in the policy to make changes in procedures. For the same reasons relied upon by the courts in *Prusky,* and both *Am. Nat'l Bank & Trust Co.*cases in denying similar motions to dismiss, New York Life's motion to dismiss likewise should be denied.

### B.        THE COMPLAINT STATES A CLAIM FOR MISREPRESENTATION.

In order to survive a motion to dismiss a claim of negligent misrepresentation, the plaintiff must allege that the defendant in the course of his business, supplied false information for the guidance of others in their business transactions, causing and resulting in pecuniary loss to others by their justifiable reliance on the information, with failure to exercise reasonable care or competence in obtaining or communicating the information. *Fox v. F & J Gattozzi Corp.,* 41 Mass. App. Ct. 581, 587, 672 N.E. 2d 547, 551 (1996), quoting *Restatement (Second) of Torts §*

552(1) (1977). In the present action, Mr. Linton has adequately alleged all elements of a negligent misrepresentation claim required to survive a motion to dismiss.

Specifically, the Complaint alleges that through its agent New York Life represented that under the terms of the Policy Mr. Linton was and would continue to be authorized to make an unlimited number of telephonic transfers[8]. *Compl. ¶ 7.* Moreover, the Complaint alleges that the 1999 Prospectus made similar representations concerning telephonic transfers. *Id.* The Complaint further alleges that Mr. Linton reasonably relied on these representations in entering into a contractual relationship with New York Life, and he has been damaged. *See Compl.¶¶ 7-8.* Because Mr. Linton has adequately alleged a set of facts upon which he could recover based on a claim for negligent misrepresentation the defendant's motion to dismiss should be denied.

New York Life asserts that Mr. Linton's claim for misrepresentation should be dismissed because his reliance on New York Life's alleged representations was unreasonable. *See Defendant's Memorandum at p. 15-19.* This argument is based on the premise that the representations concerning the entitlement to unrestricted telephonic trading authority are in direct conflict with the terms of the Policy. This is not the case. As noted above, based upon review of the Policy, confirmed by the representations of the agent, review of the 1999 Prospectus, and four years of experience, it was reasonable for Mr. Linton to conclude that the Policy authorized unrestricted telephonic trades within his account and would not be changed. The observations of the Court in *Prusky* in this regard are equally applicable. When addressing justifiable reliance, the court stated;

---

[8] It is important to point out that no discovery has taken place at this time and the extent to which New York Life's agent knew or should have known that his statements concerning telephone transfers were false is not yet known. Should it be revealed through discovery that New York Life knew or should have known that its statements were false then Mr. Linton would amend his Complaint to include a Count for Fraudulent Misrepresentation.

> "when we draw reasonable inferences in favor of Prusky, especially in light of the parties' disparate course of performance under the Policy for over three years, it seems plausible that he justifiably relied upon the Memorandum statements in support of his practice of frequent subaccount transfers."

*Prusky v. Phoenix Life Ins. Co.*, 2003 U.S. Dist. LEXIS 4054 at *27 (E.D. Pa., 2003).

For similar reasons and drawing all reasonable inferences in favor of Mr. Linton, the defendant's motion to dismiss should be denied.

In the alternative, Mr. Linton has pleaded facts that would establish claims for both promissory and equitable estoppel. Promissory estoppel permits recovery due to reliance on a promise of future intent, while in contrast equitable estoppel permits recovery due to reliance on a past or present misrepresentation. *See Boylston Dev. Group, Inc. v. 22 Boylston Street Corp.* 412 Mass. 531, 543, 591 N.E. 2d 157, 165 (1992). *See also Loranger Constr. Corp. v. E.F. Hauserman Co.*, *376 Mass. 757,761, 384 N.E.2d 176 (1978)* ("when a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract,' and it is enforceable pursuant to 'traditional contract theory'"). In order to state a claim for estoppel Mr. Linton must show the following elements exist: (1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; (3) and detriment to such person as a consequence of the act or omission. *Boylston Dev. Group, Inc. 412 Mass at 542.*

In the present case, Mr. Linton has pleaded facts that would establish claims for promissory and equitable estoppel. In his Complaint, Mr. Linton states that he met with a New York Life agent when researching possible investment opportunities and expressed to the agent that his investment strategy required timely execution of trades. *Compl.¶ 6.* Relying on the

agent's representations, as well as statements contained in the Policy and the 1999 Prospectus

that throughout the length of the Policy Mr. Linton could employ his investment strategy under

the terms of Policy, Mr. Linton entered into a contract with New York Life for which he was

charged significant fees. *Compl. ¶¶ 6-8.* The Complaint further alleges that New York Life

allowed Mr. Linton to employ his investment strategy until July 2003 and then arbitrarily

imposed restrictions on how Mr. Linton could transfer funds. *Compl.¶ 11.* Because of the

arbitrary changes implemented by New York Life, Mr. Linton is unable to employ his

investment strategy and has been deprived of the benefit of his bargain with New York Life.  Mr.

Linton has pleaded a set of facts that would entitle him to relief under the theories of equitable

estoppel, due to his reliance on New York Life's past or present misrepresentations, and

promissory estoppel, due to his reliance on New York Life's promise of future intent.  Therefore,

defendant's motion to dismiss should be denied.


### C.        THE COMPLAINT STATES A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

Under Massachusetts law**, "**every contract implies good faith and fair dealing between

the parties to it."  *McAdams v. Mass. Mut. Life Ins. Co.*, 2000 U.S. Dist. LEXIS 22068 (D.

Mass., 2000) citing *Anthony's Pier Four v. HBC Assoc.*, 411 Mass. 451, 583 N.E. 2d 806 (1991);

*See Restatement (Second) of Contracts § 205* ("every contract imposes upon each party a duty of

good faith and fair dealing in its performance and its enforcement"); *Am. Nat'l Bank & Trust Co.*

*v. Allmerica Fin. Life Ins. & Annuity Co.*, 304 F. Supp. at 1016 (the duty of good faith and fair

dealing requires a party vested with contractual discretion to exercise it reasonably, not

"arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the

parties.")   Pursuant to the covenant, "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Anthony's Pier Four, Inc.,* 411 Mass. at 471, quoting *Druker v. Roland Wm. Jutras* Associates, Inc. 370 Mass. 383, 348 N.E. 2d 763 (1976); *Tufankjian v. Rockland Trust Co.*, 57 Mass. App. Ct. 173, 782 N.E.2d 1 (2003).

In this case, New York Life has altered a material term of the parties' understanding thereby breaching the covenant of good faith and fair dealing between the parties.  Because Mr. Linton has adequately alleged that there was a contract with New York Life and that New York Life injured Mr. Linton by arbitrarily destroying his right to receive the fruits of the contract, New York Life breached the good faith and fair dealing between the parties and the Motion to Dismiss should be denied.


### D.    THE COMPLAINT STATES A CLAIM FOR VIOLATION OF CHAPTER 93A.

In Massachusetts, negligent misrepresentations are actionable under G.L.c. 93A, § 2. *See Watson v. Nashawtuc Country Club, 2001 Mass. Super. LEXIS 588,* 14 Mass. L. Rep. 218 (2001) citing *Glickman v. Brown,* 21 Mass. App. Ct. 229, 235, 486 N.E.2d 737 (1985).  Moreover, General Laws c. 93A . . . makes unlawful any 'unfair . . . acts or practices in the conduct of any trade or commerce.' . . . Conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." (citations omitted.) *Anthony's Pier Four, Inc.,* 411 Mass. at 474.

In his Complaint, Mr. Linton has alleged facts stating that through its written materials and the oral representations of its authorized agent, New York Life induced Mr. Linton to enter

into the Policy by misrepresenting that he was and would continue to be authorized to make

unlimited telephonic transfers within his investments accounts.  New York Life's subsequent

attempt to alter the material terms of the contract in contravention of the understanding of the

parties is a violation of Chapter 93A.  *See Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991)(an

act is "deceptive" under Chapter 93A if  "it could reasonably be found to have caused the person

to act differently from the way [she] would have acted."); *See also Bond Leather Co., Inc. v.* Q.*T.*

*Shoe Mfg. Co., Inc.*, 764 F.2d 928 (1st Cir. 1985)(misrepresentations made to induce the

execution of a contract are "unfair and deceptive" acts under Chapter 93A.)  In light of the

specific concerns identified by Mr. Linton to New York Life's agent prior to acquiring the

Policy, had New York Life expressly reserved the right to limit telephonic transactions in the

manner they now attempt to do, he would not have purchased the Policy or paid to New York

Life the significant fees required under the Policy and would not now be subject to the Surrender

Charges and tax liability that termination would entail.  As such, Mr. Linton has adequately

pleaded a claim for violation of Mass. G.L. c.93A.  *See Marram v. Kobrick Offshore Fund Ltd.,*

442 Mass. at 60-61  (reversing dismissal of negligent misrepresentation claim based upon

reliance on oral pre-investment representations in light of the inadequate record and the inability

to conclude that, as a matter of law, no factual scenario exists under which the plaintiff might

establish a claim of negligent misrepresentation).

      **E.**      **THE COMPLAINT STATES A CLAIM FOR DECLARATORY
JUDGMENT AND SPECIFIC PERFORMANCE.**

Viewing the Complaint in the light most favorable to the plaintiff and assuming that its

allegations are true, Mr. Linton has alleged facts sufficient to establish that he is entitled to a

declaratory judgment in that there is an actual and present controversy existing between the

parties concerning the interpretation of the Policy. *See Raytheon Co. v. Continental Cas. Co.,* 123 F. Supp. 2d 22, 30 (D. Mass., 2000); *Thattil v. Dominican Sisters of Charity of Presentation of Blessed Virgin, Inc.,* 415 Mass. 381, 613 N.E.2d 908, 910 n.6 (1993); *Mass G. L. c. 231A.*  As such, Mr. Linton has alleged facts sufficient to survive a motion to dismiss under Rule 12(b)(6) as to his Declaratory Judgment and Specific Performance claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendant New York Life's Motion to Dismiss the Complaint should be denied in its entirety.

BARRY LINTON,

By his attorneys,

   \Richard J. Grahn\
Richard J. Grahn (BBO #206620)
P. Andy Henderson, Jr. (BBO#655891)
Looney & Grossman, LLP
101 Arch Street
Boston, MA  02110
September 3, 2004          (617) 951-2800

### Certificate of Service

   I, Richard J. Grahn, an attorney with the law firm of Looney & Grossman LLP, hereby certify that on September 3, 2004, I served a copy of the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss** via hand delivery on the following:

John D. Donovan, Jr., Esq.
Robert G. Jones, Esq.
Levina Wong, Esq.
Ropes & Gray
One International Place
Boston, MA  02110-2624

   \Richard J. Grahn_____
     Richard J. Grahn, Esq.