UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

BARRY LINTON,                                          :
                                                       :
    Plaintiff                                          :
                                                       :
v.                                                     :   C.A. No. 04-11362-RWZ
                                                       :
NEW YORK LIFE INSURANCE AND ANNUITY    :
CORPORATION,                                           :
                                                       :
    Defendant.                                         :
_____

# DEFENDANT'S REPLY IN FURTHER SUPPORT OF
# DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

John D. Donovan, Jr. (BBO # 130950)
Robert G. Jones (BBO #630767)
Levina Wong (BBO #654510)
 ROPES & GRAY LLP
 One International Place
 Boston, MA 02110
 (617) 951-7000

*Attorneys for New York Life Insurance
 and Annuity Corporation*

Dated: September 17, 2004

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

The plaintiff alleges that New York Life breached the unambiguous terms of a "written contract" by refusing to execute telephonic instructions to buy and sell mutual funds underlying a variable annuity Policy. But the "right" to make telephonic instructions that the plaintiff asserts does not exist in that "written contract"; it simply does not appear in the Policy's language. The words the plaintiff relies on – requiring trading instructions to be delivered to New York Life in "a *notice you sign* which gives us the facts we need" – on their face do not contemplate telephonic orders. To the contrary, the phrase unambiguously suggests a *written* communication of directives. The plaintiff flatly misreads the words "notice you *sign*" when he inserts "oral instructions" into the meaning of the word "sign."

The plaintiff's fallback exposes the frailty of his claim – expressed in the very first sentence of his opposition brief – simply to "enforce ... the terms of a written contract." He asserts that the words "notice you sign" *mean* "telephonic instructions" because the 1999 Prospectus that accompanied his Policy described how policyholders could enter orders by phone under "established procedures." The plaintiff simply imports into the Policy the telephonic instruction alternative explained in the Prospectus and claims it constitutes an additional term of the contract. But the Policy itself precludes the effort. By its terms, the Policy *excludes* the Prospectus language the plaintiff claims is part of the "written" agreement.

The plaintiff's final resort abandons the claim to simple enforcement of an unambiguous "written contract." He asserts that his "understanding" of the words "notice you sign" was *informed* by the Prospectus reference to telephonic instruction methods and a representative's oral assurances that unlimited orders by phone were permitted. But that contradicts both the Policy, the Prospectus language, and the telephonic instruction form the plaintiff himself signed

– not to mention the parol evidence rule.  The Policy's integration clause eliminates reliance on any other written or oral statement.  The Prospectus by its terms invokes "established procedures."  And the "procedures" themselves – expressed in a form the plaintiff explicitly acknowledged – warned that telephonic privileges could be discontinued at any time.

In short, the plaintiff's entire claim to "enforce . . . the terms of a written contract" is a transparent exercise to *vary* the explicit terms of the Policy by reference to extrinsic materials.  Elementary principles preclude the effort.  The plaintiff's other claims – like "misrepresentation" or "unjust enrichment" – are mere subterfuges to ignore express contractual language.  As set forth below, the plaintiff's claimed "right" to make unlimited telephonic instructions to trade mutual funds did not exist under the Policy.  That "right" was only invented by the plaintiff and cannot be enforced here.  The complaint should be dismissed for failure to state a cognizable claim.

I.  **The Policy's Unambiguous Language Requiring Trading Instructions to Be in a "Notice You Sign" By Its Terms Does Not Authorize Unrestricted Telephonic Orders**

The plaintiff acknowledges that the Policy specifically requires mutual fund trading instructions to be delivered in "a notice you sign which gives us the facts we need."  (Pl.'s Opp'n Mot. Dismiss at 8-9.)  He invokes this language of Section 5.12 of the Policy, and blithely contends that the words "a notice you sign" unambiguously mean telephonic instructions – i.e., "a notice you *don't* sign."  He asserts that the absence of the word "written" before "notice" modifies the delivery mode specification and enlarges it to embrace telephonic means.

The English language is not so versatile.  The adjective "written" does not need to be added to the verb "sign" for it to mean a signature "in writing."  And even if the word "written" *were* essential to the meaning of "sign," its *absence* cannot convert the meaning of "sign" into an "oral" command.  The phrase "notice you *sign*" simply does not translate literally into

"instruction you *say*." The plaintiff's claim that the words of the Policy unambiguously contemplate oral instructions delivered over the telephone is simply untenable if the English language is to govern the Court's analysis of the relevant text – as it must.

As set forth in New York Life's opening brief, the Policy is not ambiguous. The contract requires transfers between investment divisions to be ordered in a "notice you sign." Any other acceptance of a transaction is discretionary. By its terms, the "written contract" does not confer on the plaintiff an unfettered *right* to order transfers among investment divisions by some other means of delivery, including by telephone.

II.     **The Policy's Explicit Requirement that Instructions Be Delivered In a "Notice You Sign" Cannot Be Varied by the Prospectus, By Oral Statements Or By the Parties' "Course of Performance"**

Since the words "notice you *sign*" obviously do not mean "notice by *telephone*," the plaintiff claims that the phrase embraces telephone instructions because the 1999 Prospectus that accompanied the Policy mentions telephonic orders and New York Life accepted such instructions from him. In short, the plaintiff contends that although the word "sign" doesn't actually *mean* "sign" – or require an actual written "signature" – some other document morphs the word "sign" into something else. Self-evidently, that claim is not an effort to "*enforce* the terms of a written contract." (Pl.'s Opp'n Mot. Dismiss at 1.) It is an effort to *amend* the "written contract." The parol evidence rule precludes the plaintiff's transparent effort to vary the contract's language.

By its terms the "written contract" that the plaintiff claims to enforce *excludes* the Prospectus and any other extrinsic source from its terms. Under the heading "What Constitutes The Entire Contract?" the Policy states in simple terms that the "entire contract" consists only of "this policy, any attached riders or endorsements, and the attached copy of the application."

-4-

Exhibit A ¶ 9.1.[1]  Indeed, the 1999 Prospectus itself describes the "entire contract" as the Policy – but *not* the Prospectus.  Exhibit B at 6.  Oral statements are likewise excluded from the Policy by its terms.  Exhibit A at Application p.6.  It follows that anything in the Prospectus – or in any agent's representations -- referring to telephonic instructions are gratuitous;  they cannot change the words "notice you sign" into something else.  *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261 (1st Cir. 1991) (under Massachusetts law, extrinsic evidence may not be admitted to contradict the clear terms of an agreement"); *Boston Edison Co. v. FERC*, 856 F.2d 361, 367 (1st Cir. 1988) ("[E]xtrinsic evidence is inadmissible, under the parol evidence rule, when it is introduced to add to, detract from, or vary the terms of a written contract.") (internal quotations omitted).

Likewise, the parties' ostensible "course of performance" cannot vary the Policy's explicit requirement that investment instructions be in a "notice you sign."  Like other extrinsic evidence, details concerning the parties' "course of performance" cannot vary unambiguous contract terms.  *Boston Helicopter Charter, Inc. v. Augusta Aviation Corp.*, 767 F.Supp. 363, 370 (D. Mass. 1991) (refusing to consider extrinsic evidence of the parties' course of performance where such extrinsic evidence contradicted the clear terms of the contract).

III. **Even if They Do Not Modify the Policy, The Prospectus and The Parties' Course of Dealings Do Not Inform the Meaning of the Policy or Create an Implied Contract Different From the Policy**

Abandoning the argument that the explicit terms of the Policy *themselves* authorize telephonic orders, the plaintiff resorts to the assertion that the meaning of the Policy's language is *informed* by the Prospectus and the parties' performance.  Although he continues to claim that he "relies on the terms of the Policy," his reliance is on those terms "as they were confirmed by ... the Prospectus and the parties . . . course of dealing." (Pl.'s Opp'n Mot. Dismiss at 8, n.5.)  In

---

[1]  All citations to "Exhibit __" refer to the respective exhibits to the Declaration of Levina Wong.

other words, even though the words "notice you sign" mean "notice you *sign*," the plaintiff *thought* they meant something else because of what he understood from other materials. Again, that assertion is inconsistent with elementary principles.

Simply put, one cannot resort to extrinsic materials to *create* ambiguity. Language that is *not* ambiguous does not become subject to "interpretation" by reference to other sources. Rather, words are ambiguous and amenable to construction only if, on their face, they are susceptible to more than one alternative meaning. *Ctr. for Blood Research, Inc. v. Coregis Ins. Co.*, 305 F.3d 38, 41 (1st Cir. 2002) (citing *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462, 466, 645 N.E.2d 1165 (1995)). The words "notice you sign" simply don't qualify.

The cases the plaintiff invokes[2] are simply off the mark. In each case, the court observed that consideration of parol evidence was permissible *because* the contractual language at issue was ambiguous. In short, the predicate to "interpretation" – the existence of some ambiguity – justified resort to other materials. But here, no such predicate exists. There is nothing about the words "notice you sign" that requires interpretation. And ironically, the plaintiff does not contend otherwise.

The plaintiff's only other gambit is to assert that, even if the Prospectus and the parties' course of performance do not inject some alternative meaning into the words "notice you sign," they create an "implied contract" that authorized telephonic instructions. (Pl.'s Opp'n Mot. Dismiss at 11-12.) Of course, that claim does not appear in the Complaint. But even if it were plead, the contention is meritless. As the plaintiff himself acknowledges, an implied-in-fact contract may be inferred from parties' conduct "when no express agreement exists." (Pl.'s

---

[2]  *Home Assur. Co. v. Fore River Dock & Dredge, Inc.,* 321 F. Supp. 2d 209 (D. Mass. 2004); *Merrimack Valley Nat'l Bank v. Baird,* 372 Mass. 721, 724, 363 N.E.2d 688, 691 (1977); and *Kobayashi v. Orion Ventures, Inc.,* 42 Mass. App. Ct. 492, 296 (1977).

Opp'n Mot. Dismiss at 11.)  It is obviously untenable for the plaintiff to rely on some ostensible contract "implied" from performance while simultaneously contending that he is only seeking to "enforce contractual obligations under the terms of a *written* contract."  (Pl.'s Opp'n Mot. Dismiss at 1.)  "Having one's cake and eating it, too, is not in fashion in this circuit." *United States v. Tierney,* 760 F.2d 382, 388 (1st Cir. 1985).

IV. **Neither the Prospectus Nor the Parties' Dealings Establish an Unfettered Right to Make Telephonic Instructions In Any Event**

As a matter of law, the Prospectus and the parties' course of dealings neither modify the explicit terms of the Policy requiring investment instructions to be delivered in a "notice you sign" nor do they pour some alternative meaning into that phrase.  But even if those extrinsic materials were considered, they simply do not establish the unqualified right to make telephonic instructions that the plaintiff asserts.  To the contrary, by their terms, the authority to deliver telephonic instructions that they permit is discretionary and qualified;  they expressly reserve to New York Life the right to discontinue telephonic instructions at any time.  In short, the documents that the plaintiff invokes to *create* the unlimited right he asserts flatly *eliminate* that claimed right.

In resorting to these materials, the plaintiff conveniently calls the Court's attention only to selected portions of the 1999 Prospectus.  In his Complaint, he neglects even to mention the so-called Telephone Authorization Form, notwithstanding the fact that the very discussion in the 1999 Prospectus concerning telephonic transfer privileges on which Mr. Linton so heavily relies specifically requires policyholders to execute the Telephone Authorization Form.  *See* Exhibit B at 43 ("If you intend to conduct telephone transfers through the VRU, you must complete a Telephone Authorization Form.").

Mr. Linton's pleading ignores this critical aspect of the 1999 Prospectus discussion even despite the undisputed fact that he executed a copy of the form at the same time that he executed the Policy. *See* Exhibit C (showing Linton's signature on the same date that he signed the Policy). To complete the illusion, in his Opposition, Mr. Linton even blithely asserts that "[n]either the Policy nor the 1999 Prospectus[] contemplate discontinuing all methods of telephonic transfers permanently." (Pl.'s Opp'n Mot. Dismiss at 10.) The executed Telephone Authorization Form, however, which Mr. Linton signed, does "contemplate" just that. *See* Exhibit C at 2 ("Telephone privileges may be discontinued at any time.").[3]

The Telephone Authorization Form, of course, constitutes Mr. Linton's acknowledgement that New York Life may discontinue his telephone privileges at any time – whether or not this Court were to find that those "privileges" could be imported into the Policy itself. Despite his agreement to the contrary, however, plaintiff now claims – incredibly – that the Policy gave him the right to conduct transfers among Investment Divisions by telephone for the life of the Policy without any limitation. But the Telephone Authorization Form told Mr. Linton at the time he entered into the Policy with New York Life that his "[t]elephone privileges may be discontinued at any time." Exhibit C at 2. Whatever strategic choices prompted him to

---

[3] Mr. Linton's signature on this form (*see* Exhibit C) amounts to his agreement that New York Life may discontinue his telephone privileges "at any time" and casts significant doubt as to whether there even is a good faith basis for the claims he has asserted in this action. Tellingly, plaintiff neglected to reference or cite this document in his Complaint. Nonetheless, the Telephone Authorization Form forms a crucial part of the 1999 Prospectus, which document is the focus of his claims. For this reason, the Court may consider it without converting this motion to a motion for summary judgment for this reason. *See also Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (allowing for the consideration of documents "the authenticity of which are not disputed by the parties"). Plaintiff's suggestion that the Court either should not consider the Form or should convert the motion to one pursuant to Fed. R. Civ. P. 56 is baseless.

omit any reference to this form from his pleading, plaintiff cannot run away from it now.  And it compels dismissal of his claims.[4]

V. **Plaintiff's Reliance On The Decision In *Prusky v. Phoenix Life Ins. Co.* Is Misplaced**

In its opening papers, New York Life pointed to *First Lincoln Holdings, Inc. v. Equitable Life Assurance Society of the United States*, 164 F.Supp.2d 383 (S.D.N.Y. 2001), a case in which a "market timer" also alleged that a life insurer breached the terms of a variable policy by limiting the policyholder's ability to make telephonic transfers.  (*See* Def's Mem. Supp. Mot. Dismiss at 11-12.)  In *First Lincoln,* the court found that express language in the Policy reserving to the defendant the right to restrict various means of electronic trading (including by telephone) controlled the outcome.  The court dismissed the plaintiff's contract count, concluded that inconsistent oral statements and promises were not enforceable, and rejected claims of fraud and misrepresentation.  The plaintiff in this case does not distinguish *First Lincoln* except to say that the contractual language here is different.  But that distinction is hardly dispositive.  Although it uses different words, the Policy here does not expressly authorize telephonic instructions; inconsistent oral statements or representations cannot be relied upon to vary the contract; and the assertion of misrepresentation is untenable.  Indeed, even if the Court here were to accept plaintiff's invitation to consider the 1999 Prospectus (in which case, of course, the Court also would be required to consider the language appearing the Telephone Authorization Form), the

---

[4] In the same way, plaintiff's misrepresentation claim also depends upon whether his alleged reliance on New York Life's "statements" "concerning entitlement to unrestricted telephonic trading authority," based largely on his review of the 1999 Prospectus, was reasonable.  (*See* Pl.'s Opp'n Mot. Dismiss at 15.)  But it cannot have been reasonable for Mr. Linton to rely on a partial review of the 1999 Prospectus and to ignore the express language of the Telephone Authorization Form – which he undeniably signed at the same time he signed the Policy – putting him on notice that telephone transfer privileges "may be discontinued at any time."  Exhibit C.  (*See* Def's Mem. Supp. Mot. Dismiss at 15-18.)  The language on that form is directly contrary to the bargain he now claims New York Life was making.  And, of course, in any event, nowhere does the Complaint point to a specific statement by New York Life conferring a contractual right, not only to transfer by telephone, but to do so without any restriction to the end of time.

Court would conclude, at best, that the contract between New York Life and Mr. Linton included an ability to transfer by telephone which "may be discontinued at any time." *See* Exhibit C. Viewed this way, the contract in this case is functionally indistinguishable from the policy at issue in *First Lincoln*. Both policies include the right to restrict precisely the activity they are alleged to have restricted. And both policies present precisely the same legal issue.

To divert the Court's attention away from *First Lincoln,* the plaintiff relies on the Eastern District of Pennsylvania's decision in *Prusky v. Phoenix Life Ins. Co.*, 2003 U.S. Dist. LEXIS 4054 *1 (E.D. Pa. 2003). (*See* Pl.'s Opp'n Mot. Dismiss at 12-14.) That reliance is misplaced. In *Prusky*, the plaintiff contested an insurance company's ability to restrict the *number* of transfers he made under the policy in question; the case did not involve in any way a limitation on the *means* of directing transfers.[5] The *Prusky* court applied Pennsylvania law and considered the parties' post-execution course of performance under the policy in order to establish the policy's meaning, "*despite* the [contract's] express terms" to the contrary. *Id.*, 2003 U.S. Dist. LEXIS 4054 at *14-15 & n.6 (emphasis added). Under Massachusetts law, however, "absent ambiguous contractual language in the policy, custom and practice evidence cannot be used to vary the provisions of the policy." *Somerset Sav. Bank v. Chicago Title Ins. Co.*, 649 N.E.2d 1123, 1127 (Mass. 1995). *See also Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d

---

[5] The plaintiff confuses matters when he fails to distinguish between *modes* of delivery instruction that the contract requires, and the *number* of instructions a policyholder may make. He asserts that the Complaint alleges that New York Life breached the terms of the [policy] when it unilaterally imposed amendments to the agreement limiting the number of transfers he could make within his accounts and by modifying the manner in which Mr. Linton could transfer funds ..." (Pl.'s Opp'n Mot. Dismiss at 1.) That mischaracterizes the allegations of the complaint and the true state of facts. The Complaint does not allege that New York Life limited the number of transfers Linton could make. Rather, it alleges that New York Life "changed its policy concerning authorized telephonic transfers, requiring instead, that instructions for portfolio adjustments be made only by mail or overnight delivery." Compl. ¶ 12. There is no specific limit on the number of transfers Linton can request through the regular mail or overnight delivery.

173, 180 (1st Cir. 1995) ("courts sometimes rely on such 'course of performance' evidence to interpret *ambiguous* contract terms") (emphasis supplied).  In this critical respect, then, the *Prusky* holding turns on principles of contract interpretation which are directly contrary to Massachusetts law and, as a result, it has no relevance here.[6]

## VI. Plaintiff's Alternative Theories of Relief Are Unavailing

The plaintiff's alternate, non-contractual theories of recovery are each meritless.

His claim of "misrepresentation" is untenable in view of the language of the Policy.  The contract explicitly provides that "no agent . . . has any right to accept risks, make or change contracts, or give up any of [New York Life's] rights or requirements."  Exhibit A at Application p.6.  Accordingly, nothing the agent said could justify the plaintiff's reliance.  Indeed, as expressed in the plaintiff's brief, the misrepresentation theory is now on a collision course with itself.  Although the essence of misrepresentation is a *false* assertion of fact that induces reliance, he now says that his reliance was not unreasonable because the agent's assertions were *consistent* with the terms of the Policy.  Pltff's Opp. at 15.  Self-evidently, New York Life cannot be liable for statements that match the Policy's language.

Likewise, the plaintiff's claims of breach of the implied covenant of fair dealing and for violation of Mass. G.L. ch. 93A make no sense.  If the contract by its terms did not authorize the unfettered right to make telephonic orders in the investment divisions, but rather excluded that

---

[6] Plaintiff also mistakenly relies on the decisions in *Am. Nat'l Bank & Trust Co. v. Allmerica Fin Life Ins. & Annuity Co.*, 304 F.Supp. 2d 1009 (N.D. Ill. 2003) and *Am. Nat'l Bank & Trust Co. v. AXA Client Solutions, LLC*, 2001 U.S. Dist. LEXIS 8893 *1 (N.D. Ill. 2001), *dismissed for lack of jurisdiction*, 2004 U.S. Dist. LEXIS 12641 *1.  (Pl.'s Opp'n Mot. Dismiss at 14.)  These two decisions, when read correctly, support New York Life's position.  In denying the defendant's motion, the *Allmerica* court refused to look beyond the four corners of the policy.  *Id.* at 1017.  (*See, e.g.*, Def.'s Mem. Supp. Mot. Dismiss at 12 n.9.)  Similarly, plaintiff may not rely on the court's decision in *AXA Client Solutions,* 2001 U.S. Dist. LEXIS 8893 *1 where the parties' agreement was found not to be integrated because the parties had a prior, original contract.  *Id.* at *18.  Here, there is no such prior agreement.

-12-

"right," such an inconsistent term cannot be "implied," and its not an "unfair act" to insist upon compliance with the explicit term. Similarly, the plaintiff's claim of "unjust enrichment" founders on the contractual provision. To state a common law claim, a defendant's "enrichment" must be "unjust." *See Bushkin Assocs., Inc. v. Raytheon Co.*, 906 F.2d 11, 15 (1st Cir. 1990) (stating that the basis of unjust enrichment doctrine is to redress "unjust enrichment of one party and unjust detriment to the other party"). *See also Salamon v. Terra*, 394 Mass. 857, 859 477 N.E.2d 1029, 1031 (1985). But it is not "unjust" to require performance consistent with the parties' written agreement. Surely it is not "unjust" for the plaintiff to profit from his investments in the policy's underlying mutual funds – even though he does not earn different returns by rapidly exchanging between funds. And it emphatically is not "unjust" for the plaintiff to continue to receive *all* the benefits of the insurance policy – including its cash value, continued investment performance and death benefit – which the premium actually pays for.

Simply put, these additional non-contractual statutory and common law theories are merely advocates' afterthoughts.

-13-

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in the Defendant's original papers, New York Life respectfully requests that the Court dismiss the Complaint with prejudice.

Respectfully submitted,

NEW YORK LIFE INSURANCE AND
ANNUITY CORPORATION

By its attorneys,

/s/ John D. Donovan, Jr.
John D. Donovan, Jr. (BBO No. 130950)
Robert G. Jones (BBO No. 630767)
Levina Wong (BBO No. 654510)
Ropes & Gray LLP
One International Place
Boston, MA 02110
(617) 951-7000

Dated: September 17, 2004