EXHIBIT 10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY LINTON,<br><br>    Plaintiff<br><br>v.<br><br>NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION,<br><br>    Defendant. | :<br>:<br>:<br>:<br>:  C.A. No. 04-11362-RWZ<br>:<br>:<br>:<br>: |

**NEW YORK LIFE INSURANCE AND
ANNUITY CORPORATION'S
RESPONSES TO PLAINTIFF'S
FIRST REQUESTS FOR ADMISSIONS**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant New York Life Insurance and Annuity Corporation ("New York Life") responds to Plaintiff's First Requests for Admissions (the "Request") served December 12, 2005.

**GENERAL OBJECTIONS**

1. New York Life provides this response without waiver of or prejudice to its right, at any later time, to raise objections to: (a) the relevance, materiality, or admissibility of (i) the Request or any part thereof, (ii) statements made in this response to the Request or any part thereof, or (iii) any document produced pursuant to this response; or (b) any further demand for discovery involving or relating to the matters raised in the Request.

2. New York Life objects to the Request to the extent that it demands the admission or disclosure of any information covered by the attorney-client privilege or the work-product doctrine, or any other applicable privilege. Any inadvertent disclosure of information protected

9887954

**Response to Request No. 2**:

    Denied.

**Request No. 3**:
In 1999 Paul Redfearn was authorized to sign contracts for the sale of New York Life variable annuity policies on behalf of the Defendant.

**Response to Request No. 3**:

    Denied.

**Request No. 4**:
Prior to selling Plaintiff the Policy, Paul Redfearn informed Plaintiff that only the Policy and the 1999 Prospectus would govern the obligations of the parties under the Policy.

**Response to Request No. 4**:

    New York Life states it has made reasonable inquiry and that the information known or readily obtainable is insufficient to enable New York Life to admit or deny Request No. 4.

**Request No. 5**:
In 1999, Paul Redfearn was authorized to make representations to purchasers of New York Life insurance products consistent with the terms of the products' then applicable prospectus.

**Response to Request No. 5**:

    New York Life objects to Request No. 5 to the extent that the term "then applicable prospectus" is vague and ambiguous in this context. To the extent that Request No. 5 requests the admission of whether, in 1999, Paul Redfearn was authorized to make representations to purchasers of New York Life insurance products consistent with the representations of the 1999 Prospectus, it is admitted.

**Request No. 6**:
Prior to purchase of the Policy, Paul Redfearn offered to the Plaintiff other variable annuity life insurance products, which the Plaintiff declined to purchase because their products limited the number of transfers between mutual fund investments.

**Request No. 9:**
Prior to purchase of the Policy by the Plaintiff, Paul Redfearn was aware that the Plaintiff would not have purchased the Policy had the Plaintiff been advised that the Defendant retained the right to limit the transfers within the Investment Divisions.

**Response to Request No. 9:**

New York Life states it has made reasonable inquiry and that the information known or readily obtainable is insufficient to enable New York Life to admit or deny Request No. 9. Further responding, New York Life states that New York Life cannot speak on Mr. Redfearn's behalf as to his awareness of Mr. Linton's intentions.

**Request No. 10:**
On or about June 11, 1999, the Defendant and Plaintiff executed a variable annuity life insurance policy.

**Response to Request No. 10:**

Denied.

**Request No. 11:**
As of June 22, 1999, Plaintiff was able to make transfers between Investments Divisions by telephone.

**Response to Request No. 11:**

Admitted.

**Request No. 12:**
Plaintiff paid all premiums, fees and costs associated with the Policy to the Defendant.

**Response to Request No. 12:**

New York Life objects to Request No. 12 to the extent that the term "paid ... to the Defendant" is vague and ambiguous in this context. To the extent a response is required, Request No. 12 is denied.

**Request No. 13:**
Defendant received all premiums, fees and costs associated with the Policy that were charged to Plaintiff.

**Response to Request No. 13**:

New York Life objects to Request No. 13 to the extent that the term "Defendant received" is vague and ambiguous in this context. To the extent a response is required, Request No. 13 is denied.

**Request No. 14**:
Under the Policy, Plaintiff was authorized to make unlimited transfers between Investment Divisions.

**Response to Request No. 14**:

New York Life objects to Request No. 14 to the extent that the phrases "authorized" and "unlimited transfers" are vague and ambiguous in this context. To the extent that Request No. 14 requests the admission of whether, under the Policy, Mr. Linton had the right to make an unlimited number of transfers between Investment Divisions, it is admitted. Mr. Linton had such right provided that he signed a notice that gave Defendant the facts it needed to effect the transfer requested.

**Request No. 15**:
There is no provision in the Policy that provides the Defendant with the ability to modify the material terms of the Policy, without first obtaining Plaintiff's prior consent.

**Response to Request No. 15**:

Admitted.

**Request No. 16**:
The Defendant never received Plaintiff's prior consent before limiting Plaintiff's ability to transfer between Investments Division by telephone.

**Response to Request No. 16**:

Admitted. Further responding, New York Life states that New York Life had the right to limit Plaintiff's ability to transfer between Investment Divisions by telephone without Plaintiff's prior consent because Plaintiff had no contractual right under the Policy to make transfers by telephone.

9887954

-6-

**Request No. 17:**
Under the Policy, Plaintiff had the ability to make transfers between Investments Divisions by the telephone.

**Response to Request No. 17:**

Denied.

**Request No. 18:**
Under the Policy, Plaintiff had the ability to make transfers between Investments Divisions by using the internet.

**Response to Request No. 18:**

Denied.

**Request No. 19:**
Until July 9, 2003, Plaintiff made all of his transfers between Investments Divisions by telephone or the internet.

**Response to Request No. 19:**

Admitted, except as to Plaintiff's initial premium allocation.

**Request No. 20:**
Under the Policy, the Defendant never received requests from Plaintiff to make transfers between investments divisions by mail.

**Response to Request No. 20:**

Denied.

**Request No. 21:**
There is no document executed by the parties that give the Defendant the right to terminate Plaintiff's ability to make transfers between Investment Divisions by the telephone or the internet.

**Response to Request No. 21:**

New York Life objects to Request No. 21 to the extent that the phrases "no document executed by the parties" and "give Defendant the right to terminate" are vague and ambiguous in this context. In addition, New York Life objects to Request No. 21 to the extent it calls for New York Life to draw or reveal legal conclusions. Further responding, New York Life denies that it