Mr. Linton performed his duties under the contract by paying all the significant fees charged by New York Life and New York Life breached its agreement when it applied the 2003 Prospectus' transfer limitations to Mr. Linton preventing him from communicating his transfer instructions by telephone. *Exhibit A, Linton Aff. at 19; Exhibit 14.* As a result of New York Life's breach, Mr. Linton has been damaged. *Exhibit A, Linton Aff at 21, 22.* Because there are no genuine issues of material fact in dispute as to Plaintiff's breach of contract claim, Plaintiff's motion for summary judgment should be granted. *Michelson v. Digital Financial Services, supra; Coll v. PB Diagnostic Systems, Inc., supra; Prusky v. Aetna Life Ins. & Annuity Co.,* 2004 U.S. Dist. LEXIS 21597 (D. Pa. 2004).

The undisputed material facts of this present action are strikingly similar to those presented in *Prusky v. Aetna Life Ins. & Annuity Co., 2004 U.S. Dist. LEXIS 21597 (2004)*. In *Prusky*, the court found that the plaintiffs were entitled to summary judgment as to the insurance companies' liability for breach of contract. *Id. at \*17.* The clear language of the contract, including the parties' course of performance over four and one-half years, allowed the trustees to convey trading instructions by electronic means and as often as the trustees wished. *Id.* Nevertheless, the insurer unilaterally changed these procedures and instituted a requirement that trading instructions be delivered by mail. *Id.* The court observed that under the policy there was no limit on the number of transfers a policyholder could make and no limitation on the means by which transfer requests could be communicated. *Id. at \*6* Beginning in March 1999, plaintiffs began sending the insurer transfer instructions for their subbaccounts by fax. *Id. at \*7.* The insurer accepted and acted upon these faxed communications for approximately four and one-half years. *Id.* After four years, the insurance companies refused to honor the trustees' faxed

requests for sub-account transfers. *Id.* The court held this conduct to constitute a breach of contract. *Id. at* \*15.

Like *Prusky*, Mr. Linton purchased the Policy from the Defendant insurance company. *Exhibit 2, Redfearn Dep. p. 57-58.* Under the Policy, Mr. Linton was able to invest in certain Investment Divisions and was charged substantial fees. *Exhibit A, Linton Aff at 12, 19; Exhibit 10, Plaintiff's First Request for Admissions, Response number 14.* Under the policy, there is no limitation on the number of transfers a policyholder can make and no limitation on the means by which transfer instructions may be communicated. *Exhibit 5, at 5.14.* New York Life accepted and acted upon these telephone instructions for approximately four and one-half years without any objection. *Exhibit A, Linton Aff. at 18; Exhibit 3 at Response 4.* After four years, the New York Life refused to honor the Mr. Linton's requests for sub-account transfers by telephone. *Exhibit A, Linton Aff at 21; Exhibit 14.*

Like *Prusky*, Mr. Linton's motion for summary judgment should be granted as to his breach contract claim. Mr. Linton's breach of contract claim is based upon the specific language of the Policy. Section 5.12 authorizes trades upon any "notice you sign which gives us the facts that we need . . . ". *Exhibit 5, at 5.12.* As required by the Policy, Mr. Linton provided New York Life with the information it required in order to effectuate trades, and by April 20, 1999, both New York Life and Mr. Linton were in agreement that Mr. Linton was able to make telephone trades under the Policy. *See Exhibit 9.* This conclusion is supported by the Policy, the representations made by Mr. Redfearn, confirmed by the 1999 Prospectus, and ratified by the parties' four year course of performance.

Furthermore, it is undisputed that there is no provision in the Policy that provides New York Life with the ability to modify the material terms of the Policy, without first obtaining the

Plaintiff's prior consent. *Exhibit 10, Plaintiff's First Request for Admissions, Response number 15; Exhibit 7, Hess Dep., p. 37-38.* Specifically, section 9.1 of the Policy states that "no change to this contract will be made without your consent" *Exhibit 5, at 9.1; Exhibit 6, at p. 39.*

Because Mr. Linton had a binding agreement with regards to immediate execution of investment instructions communicated by telephone; and New York Life breached the terms of this aspect of the agreement; and Mr. Linton suffered damages as a result of New York Life's breach, Mr. Linton is entitled to summary judgment as a matter of law on his breach of contract claim.

### ii.   IMPLIED CONTRACT

In the alternative, the Plaintiff has asserted an implied contract claim with regard to immediate execution of investment instructions communicated by telephone or the internet. Most telling in this case is the actions of the parties after Mr. Linton purchased the Policy in June 1999. Shortly after purchasing the Policy and for a period of four years thereafter, Mr. Linton communicated all of his transfer requests, either by telephone or by the internet. *Exhibit 10, Plaintiff's First Request for Admissions, Response number 19; Exhibit A, Linton Aff., at 17, 18.* This four year course of dealing is relevant in interpreting the Policy and clearly confirms the interpretation placed upon the language by Mr. Linton and New York Life. "The parties to an agreement know best what they mean, and their actions under it is often the strongest evidence of their meaning.... even when a contract is unambiguous[2], course of conduct is always relevant in

---

[2] In the event that the Court determines that the policy language is ambiguous, then any ambiguity should be resolved against New York Life. *Halstead Indus. v. Home Ins. Co.,* 1998 Mass. Super. LEXIS 735, 7-8 (Mass. Super. Ct. 1998.) It is settled law that the interpretation of the insurance policies is a question of law. *Save-Mor Supermarkets, Inc. v. Skelly Detective Service, Inc.,* 359 Mass. 221, 226, 268 N.E.2d 666 (1971). Courts are guided by well-settled principles when interpreting insurance policies. First, the court is to construe the insurance policy according to the fair and reasonable meanings of its words. *Cody v. Connecticut General Life Ins. Co.,* 387 Mass. 142, 146, 439 N.E.2d 234 (1982). In addition, courts construe exclusionary provisions strictly against the insurer so as not to defeat any intended coverage. *Vappi & Co, Inc. v. Aetna Casualty & Surety Co.,* 348 Mass. 427, 431-32, 204 N.E.2d 273 (1965). Finally, doubts created by the existence of an ambiguity are resolved against the insurer.

interpreting a writing. *See Am. Home Assur. Co. v. Merck & Co.*, 2005 U.S. Dist. LEXIS 7951 (D.N.Y. 2005); *Restatement (Second) of Contracts § 202 (1981)*. When no express agreement exists, a contract implied in fact may be inferred from the conduct and relations of the parties. *See Popponesset Beach Association v. Marchillo*, 39 Mass. App. Ct. 586, 592, 658 N.E.2d 983, 987 (1996); *LiDonni, Inc. v. Hart*, 355 Mass 580, 583, 246 N.E.2d 446, 449 (1969); *Restatement (Second) of Contracts, § 19 (1981)*.

To recover on the grounds of implied contract, a plaintiff must show that he conferred a measurable benefit upon the defendant and that the defendant accepted the services with the expectation of compensating the plaintiff. *See Bolen v. Paragon Plastics Inc.*, 747 F. Supp. 103, 106, n.1 (D. Mass. 1990); *Salamon v. Terra*, 394 Mass. 857, 859-60, 477 N.E.2d 1029, 1031 (1985) (implied-in-law); *LiDonni*, 355 Mass. at 583 (implied in fact). When the defendant was, or should have been, aware of the plaintiff's expectations[3] in this regard, the defendant's failure to object creates a contract. *E.g., Therrien v. Leblanc*, 282 Mass. 328, 331, 185 N.E. 15, 16 (1933); *Maynard v. Fabyan*, 267 Mass. 312, 315, 166 N.E. 629, 630 (1929).

In this case, New York Life charged Mr. Linton significant fees in order for him to acquire the Policy, which authorized him to implement his investment strategy. *See Exhibit A, Linton Aff. at ¶ 19*. In addition, it is not disputed that from June 1999 through July 9, 2003, the

---

*Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 30 Mass.App.Ct. 318, 324, 568 N.E.2d 631 (1991)

[3] Under the undisputed facts in this case, the Doctrine of Reasonable Expectations has application. See *Halstead Indus. v. Home Ins. Co.*, 1998 Mass. Super. LEXIS 735, 9-10 (Mass. Super. Ct. 1998). Under this doctrine insurers ought not to be allowed to limit policyholder's right in a manner that is inconsistent with the reasonable expectations of a policyholder having an ordinary degree of familiarity with the type of coverage involved. Courts have found that "it is appropriate . . . to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co. v. U.S. Fidelity and Guar. Co.*, 407 Mass. 689, 698, 555 N.E.2d 576 (1990).
   In the present action, Mr. Linton reasonably expected that he was authorized to communicate his transfer instructions to New York Life under the Policy in any manner, including that of telephonic delivery which had been discussed with New York Life's agent, approved by New York Life prior to issuance of the Policy and adopted by the parties for four years. Under these facts, it is reasonable for Mr. Linton to expect that he was authorized under the Policy to make unlimited telephonic transfers between Investment Divisions.

parties successfully operated under the terms of the Policy and as the parties intended by allowing Mr. Linton to immediately execute his investment instructions by telephone or the internet. *Exhibit 10, Plaintiff's First Request for Admissions, Response number 19; Exhibit A, Linton Aff. at ¶ 17, 18.* Moreover, New York Life was aware of Mr. Linton's intentions to make trading instructions at the end of the day by telephone because he had explained his investment strategy in detail to Mr. Redfearn prior to purchasing the Policy. *Exhibit 2, Redfearn Dep., pps. 48, 52, 111-112.* Redfearn advised the plaintiff, that among the possible policies he had reviewed, the New York Life Policy satisfied all the Plaintiff's requirements. *Henderson Aff., Exhibit 2, Redfearn Dep. p.116.* It is also undisputed that in this four-year period, New York Life never objected to the manner in which Mr. Linton effectuated trades under the Policy. *See Exhibit A, Linton Aff. at ¶ 18.* Based on the four-year conduct of the parties, a valid and binding agreement between New York Life and Mr. Linton existed as to immediate execution of investment instructions communicated by telephone or the internet. Therefore, New York Life's denial of Mr. Linton's right to engage in telephonic trades in July 2003 constituted a breach and plaintiff's motion for summary judgment should be granted. See *Prusky v. Aetna Life Ins. & Annuity Co., 2004 U.S. Dist. LEXIS 21597 (D. Pa. 2004).*

The facts of this case are also similar to the facts in *Am. Nat'l Bank & Trust Co., v. Allmerica Fin. Life Ins. & Annuity Co.,* 304 F. Supp. 2d 1009 (N.D. Ill. 2003). In that case, the Court denied defendant's motion to dismiss and entered summary judgment in favor of the plaintiff on its breach of contract claim where as here it was contended that the terms of an insurance policy were breached by the insurer's imposition of post-acquisition transfer restrictions not contained in the policy. Likewise, in *Am. Nat'l Bank & Trust Co. v. AXA Client Solutions, LLC,* 2001 U.S. Dist. LEXIS 8893 (N.D. Ill., 2001), the court denied a motion to

dismiss a remarkably similar complaint finding that where detailed trading strategies, requiring rapid account transfers, were said to be authorized under the annuity contract a breach of contract claim could be asserted when post-acquisition transfer restrictions were imposed even if the insurer (unlike in the present case) reserved the right in the policy to make changes in procedures[4]. For the same reasons relied upon by the courts in both *Am. Nat'l Bank & Trust Co.* cases, Plaintiff's motion for summary judgment should be granted.

### B. THERE ARE NO GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE REGARDING PLAINTIFF'S CLAIM FOR MISREPRESENTATION.

In order to succeed on a claim for misrepresentation, the plaintiff must allege 'a false statement of material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment. *Rodowicz v. Mass. Mut. Life Ins. Co.*, 279 F.3d 36, 42 (1st Cir. 2002).

In the present action, it is undisputed that Mr. Redfearn is an independent agent of New York Life. *See Exhibit 10, Plaintiff's First Set of Interrogatories to Defendant, Response number 4* Moreover, prior to selling Mr. Linton the Policy, Mr. Redfearn knew Mr. Linton's investment strategy required quick telephonic trades at the end of the business day and that Mr. Linton was not interested in purchasing a policy that could limit the number of trades that he made. *Exhibit 2, Redfearn Dep., pgs. 52, 111-112.* It is also undisputed that Mr. Redfearn represented to Mr. Linton that the New York Life VUL Policy was the right match to implement

---

[4] It is anticipated that New York Life may assert that it reserved the right to make administrative changes in connection with the Policy, and that modification to the procedures for effecting trading instructions was such an administrative change. Without consideration of whether a change in telephone procedures might possibly represent an administrative change in some other context, the facts of the present case clearly demonstrate that the continuing ability to make telephone transfers was a material term understood by both Mr. Redfearn and Mr. Linton and as an absolute requirement for considering purchase of the New York Life Policy. *See Exhibit A, Linton Aff. at 8, 9; Exhibit 2, Redfearn Dep., pp. 50-51, 83, 86, 111-112; Exhibit 1, Linton Dep., pp. 53, 62-6; Exhibit 4, Leptke Dep. at p. 34.*

Mr. Linton's investment strategy. *Id. at pps. 116.* Mr. Redfearn, on numerous occasions, informed Mr. Linton that the 1999 Prospectus was the prospectus that applied to his Policy, and that New York Life did not intend to modify the features which authorized Mr. Linton to make an unlimited number of telephonic transfers. *Id. at p. 131-132; Exhibit 1, Linton Dep., p.69, 70, 107; Exhibit 4, Lepke Dep., p.44-45; Exhibit 16.* In fact, when a 2000 prospectus appeared in the Linton mail Mr. Redfearn instructed him to throw it away as it did not apply to his Policy. *Exhibit 4, Lepke Dep., p.45-46.*

Mr. Redfearn, however, admitted during discovery that the statements he made to Mr. Linton regarding the 1999 Prospectus did not accurately reflect New York Life's intentions, and that New York Life could modify the material terms of the Policy by delivery of an amended Prospectus. *Exhibit 2, Redfearn Dep., p. 131-133.* Nevertheless, reasonably relying on the original representation made by Mr. Redfearn, Mr. Linton purchased the Policy from New York Life in 1999. *Id. at p. 57-58; Exhibit A, Linton Aff. at 15.* It is undisputed that Mr. Linton would not have purchased the Policy had he known that New York Life could limit the manner in which he communicated his trades, without his consent. *Exhibit A, Linton Aff. at 24.* As a result of Mr. Redfearn's misrepresentation, Mr. Linton has been damaged. *Exhibit A, Linton Aff. at 23..* Because Mr. Redfearn made a false statement of material fact made to induce Mr. Linton to act and Mr. Linton relied on the false statement to his detriment and was injured, summary judgment in favor of Mr. Linton's as to his misrepresentation claim is appropriate. *Rodowicz v. Mass. Mut. Life Ins. Co.*, 279 F.3d 36, 42 (1st Cir. 2002).

### C. THERE ARE NO GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE CONCERNING PLAINTIFF'S BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM.

Because there was a binding contract with regard to immediate execution of investment instructions communicated by telephone and New York Life breached that contract, depriving Mr. Linton of his contractual benefit, New York Life also has breached the covenant of good faith and fair dealing. Under Massachusetts law, "every contract implies good faith and fair dealing between the parties to it." *McAdams v. Mass. Mut. Life Ins. Co.*, 2000 U.S. Dist. LEXIS 22068 (D. Mass., 2000) citing *Anthony's Pier Four v. HBC Assoc.*, 411 Mass. 451, 583 N.E. 2d 806 (1991); *See Restatement (Second) of Contracts § 205* ("every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement"); *Am. Nat'l Bank & Trust Co. v. Allmerica Fin. Life Ins. & Annuity Co.*, 304 F. Supp. at 1016 (the duty of good faith and fair dealing requires a party vested with contractual discretion to exercise it reasonably, not "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.") Pursuant to the covenant, "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc.,* 411 Mass. at 471, quoting *Druker v. Roland Wm. Jutras Associates, Inc.* 370 Mass. 383, 348 N.E. 2d 763 (1976); *Tufankjian v. Rockland Trust Co.*, 57 Mass. App. Ct. 173, 782 N.E. 2d 1 (2003).

In this case, New York Life, without the consent of Mr. Linton or the authority under the Policy, altered a material term of the parties' understanding thereby breaching the covenant of good faith and fair dealing between the parties. *See Exhibit A, Linton Aff., at 16-18, 20-24; Exhibit 10, response number 15, Exhibit 7, Hess Dep. at pgs. 37-38.* Because there was a binding and valid agreement with New York Life with regard to immediate execution of

investment instructions communicated by telephone, and New York Life injured Mr. Linton by arbitrarily depriving him of his right to receive the fruits of the contract, New York Life breached the good faith and fair dealing between the parties. As such, Plaintiff's motion for summary judgment should be granted.

## CONCLUSION

For the foregoing reasons, the Plaintiff, Barry Linton's Motion for Partial Summary Judgment should be granted.

BARRY LINTON,

By his attorneys,

\P. Andy Henderson, Jr.\
Richard J. Grahn (BBO #206620)
P. Andy Henderson, Jr. (BBO#655891)
Looney & Grossman, LLP
101 Arch Street
Boston, MA 02110
February 13, 2006                                    (617) 951-2800

## Certificate of Service

I, P. Andy Henderson, Jr., an attorney with the law firm of Looney & Grossman LLP, hereby certify that on February 13, 2006, I served a copy of the foregoing **Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment** via hand delivery on the following:

> John D. Donovan, Jr., Esq.
> Robert G. Jones, Esq.
> Levina Wong, Esq.
> Ropes & Gray
> One International Place
> Boston, MA  02110-2624

\P. Andy Henderson, Jr.\
P. Andy Henderson, Jr., Esq.