UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

BARRY LINTON,                                          :
                                                       :
        Plaintiff                                      :
                                                       :
v.                                                     :   C.A. No. 04-11362-RWZ
                                                       :
NEW YORK LIFE INSURANCE AND ANNUITY                    :
CORPORATION,                                           :
                                                       :
        Defendant.                                     :

---

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**


NEW YORK LIFE INSURANCE AND ANNUITY
CORPORATION

By its attorneys,

John D. Donovan, Jr. (BBO # 130950)
john.donovan@ropesgray.com
Robert G. Jones (BBO #630767)
robert.jones@ropesgray.com
Levina Wong (BBO #654510)
levina.wong@ropesgray.com
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

Dated:  March 13, 2006

9958077

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .................................................................................................................... 2

I.      Plaintiff is Not Entitled to Partial Summary Judgment
        On His Breach Of Contract Claim. ........................................................................ 2

        A.      The Policy Means What It Says And Should Be Enforced
                According To Its Plain Terms. .................................................................... 4

        B.      The Cases On Which Plaintiff Relies Undermine His Case. ...................... 5

II.     Plaintiff is Barred from Asserting an Implied Contract
        Where an Express Contract Exists ....................................................................... 6

III.    Plaintiff is Not Entitled to Partial Summary Judgment Concerning
        His Claim for Breach of the Covenant of Good Faith and Fair Dealing ............... 9

IV.     Plaintiff is Not Entitled to Partial Summary Judgment
        On His Misrepresentation Claim. ....................................................................... 10

CONCLUSION ............................................................................................................... 15

9958077

## TABLE OF AUTHORITIES

<u>**Page**</u>

### FEDERAL CASES

*Accusoft Corp. v. Palo*, 237 F.3d 31 (1st Cir. 2001)....................................................................10

*Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23 (1st Cir. 2004) ........................8

*American Home Assurance Co. v. Merck & Co.*,
    No. 03Civ.3850, 2005 WL 1153723 1 (S.D.N.Y. Apr. 13, 2005)......................................9

*American National Bank & Trust Co. of Chicago v. Allmerica Financial*
    *Life Insurance & Annuity Co.*, 304 F. Supp. 2d 1009 (N.D. Ill. 2003)...............................6

*American National Bank & Trust Co. of Chicago v. AXA Client Solutions,*
    No. 00 C 6786, 2001 WL. 743399 (N.D. Ill., June 29, 2001) ...........................................6

*FDIC v. LeBlanc*, 85 F.3d 815 (1st Cir. 1996) ...............................................................................10

*Elias Brothers Restaurants, Inc. v. Acorn Enterprises, Inc.*
    831 F.Supp. 920 (D. Mass. 1993) ...................................................................................14

*ITT Corp. v. LTX Corp.*, 926 F.2d 1258 (1st Cir. 1991).................................................................5

*Milford Power Ltd. Partnership v. New England Power Co.*,
    918 F. Supp. 471 (D. Mass. 1996) ..................................................................................10

*In re New Era Packaging, Inc.*, 186 B.R. 329 (D. Mass. 1995) ......................................................5

*Platten v. HG Bermuda Exempted Ltd.*, -  F.3d -, No. 05-1832, 2006 WL 268785 .......................6

*Prusky v. Aetna Life Insurance & Annuity Co.*, 2004 U.S. Dist. LEXIS 21597 (2004) .............5, 6

*Rodowicz v. Massachusetts Mutual Life Insurance Co.*,
    279 F.3d 36 (1st Cir. 2002)..............................................................................................11

*Teragram Corp. v. Marketwatch.com, Inc.*, No. Civ. A. 02-111-38-DPW, 2004 WL
    3086883 *1 (D. Mass. 2004)...........................................................................................14

*Zuckerman v. McDonald's Corp.*,
    35 F.Supp.2d 135 (D. Mass. 1999) .................................................................................11

## STATE CASES

*Anthony's Pier Four, Inc. v. HBC Associates*,
411 Mass. 451, 583 N.E.2d 806 (1991) ...........................................................................9

*Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 606 N.E.2d 1336 (1993)........................................7

*LiDonni, Inc. v. Hart*, 355 Mass. 580, 246 N.E.2d 446 (1969) .......................................................8

*Maynard v. Fabyan*, 267 Mass. 312, 166 N.E. 629 (1929) .............................................................8

*Popponesset Beach Association v. Marchillo*,
39 Mass. App. Ct. 586, 658 N.E.2d 983 (1996) .................................................................8

*Somerset Sav. Bank v. Chicago Title Insurance Co.*,
420 Mass. 422, 649 N.E.2d 1123 (1995) .......................................................................4, 5

*Teragram Corp.  v. Marketwatch.com, Inc.*, No. Civ. A 02-111-38-DPW,
2004 WL 3086883 (D. Mass. 2004) .................................................................................14

*Therrien v. LeBlanc*, 282 Mass. 328, 185 N.E. 15 (1933) ..............................................................8

*Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*,
441 Mass. 376, 805 N.E.2d 957 (2004) ......................................................................9, 10

*Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 134 N.E.2d 141 (1956) ...........................6, 7

In 1999, Barry Linton purchased a variable life insurance policy (the "Policy") that allowed him to make an unlimited *number* of transfers among the various investment funds – or Investment Divisions – made available to him.  But the Policy also required Mr. Linton to initiate all such transfers in writing, by providing New York Life "a notice you sign that gives us the facts that we need. . . ."  While the Policy – the governing contract between the parties – required Mr. Linton to provide a "signed" notice to make a transfer, the *prospectus* (the "1999 Prospectus), which is not part of the contract, advised policyholders that they would also have the ability, not the right, to initiate transfers by telephone, subject to certain conditions.  At the same time that he purchased the Policy, Mr. Linton signed an authorization form in order to gain access to New York Life's automated telephone system, but even that form told Mr. Linton in clear terms that his "[t]elephone privileges may be discontinued at any time."  And *before* he purchased the Policy, Mr. Linton was advised that New York Life reserved the right to make changes to its administrative procedures, such as the ability to make transfers by telephonic instruction.

This case is straightforward, both legally and factually.  Mr. Linton claims a binding contractual right to make transfers by giving oral instructions over the telephone, but the Policy requires a written "notice you *sign*."  It does not confer on policyholders any right – let alone an unfettered and uninterruptible right – to make transfers by providing instructions orally.  Mr. Linton insists there was an implied contract allowing transfers by telephone, but, as a matter of law, there can be no implied contract where an express contract already governs the rights of the parties.  Mr. Linton claims he was misled into believing that New  York Life could never interfere with his telephone privileges, even though (i) those privileges arose from the prospectus, not the binding Policy, (ii) Mr. Linton's Telephone Authorization Form informed

9958077

him in the plainest terms that his privileges could be "discontinued at any time," and (iii) he was

advised in writing that New York Life could change those procedures.

At odds with both the undisputed genuine facts *and* settled principles of Massachusetts

law, Mr. Linton's claims have no merit, and his motion for partial summary judgment should be

denied.[1]

**ARGUMENT**

**I.    Plaintiff is Not Entitled to Partial Summary Judgment On His Breach
Of Contract Claim.**

While Mr. Linton contends that he had "a binding agreement with regards to immediate

execution of investment instructions communicated by telephone,"  Pl.'s Mem. Supp. Mot.

Partial Summ. J. ("Pl.'s Brief") at 13, his papers nowhere establish that any such agreement ever

existed.   That failure alone is sufficient to justify denial of his motion for partial summary

judgment for breach of contract.

In his papers, Plaintiff says it is "undisputed that Mr. Linton and New York Life entered

into a written contract in 1999," Pl.'s Brief at 10, – a fact that is, to be sure, undisputed.  But Mr.

Linton fails to explain how any specific provision contained in the Policy could give rise to a

contractual right – to provide transfer instructions over the telephone – on which his entire case

relies.  Instead, Plaintiff points to statements outside of the Policy, arguing that in April 1999,

two months before he signed the Policy, Mr. Linton "was assured he could make an unlimited

---

[1]      Mr. Linton and New York Life have cross-moved for summary judgment.  Following a period of
written and deposition discovery, there are no genuine or material disputes of fact between the parties.
Mr. Linton's theories in the case have shifted from time to time, but none of these shifts compels any
different result on these motions.   There is substantial overlap between the arguments set forth in
Defendant's own motion papers and the arguments that defeat Plaintiff's motion for partial summary
judgment.  For the convenience of the Court, rather than repeat all of those arguments (or provide its own
recitation of the facts) for a second time here, New York Life has confined itself to responding to the
specific points raised by Plaintiff in support of his own motion, and otherwise incorporates by reference
herein the arguments presented in the Memorandum of Law in Support of Defendant's Motion for
Summary Judgment.

number of transfers between Investment Divisions without restriction as [*sic*] the means of communication, including by telephone." Pl.'s Brief at 10. Finally, in support of his claim that there is a written contract granting him the right to make transfers between Investment Divisions by telephone, Plaintiff cites the fact that New York Life did permit him to make transfers by telephone for a period of time. *Id.*

The assorted pieces of Mr. Linton's argument in support of partial summary judgment on his breach of contract claim are incongruous:

- Plaintiff insists on his right to recover for breach of an express contract – the Policy – but fails to argue how any provision in that contract conferred on him the right he complains was taken from him;

- He cites parol evidence without having argued that any provision of the Policy is ambiguous, and without addressing the Policy's plainly-worded integration clause; and

- He cites the parties' course of performance, again without arguing that any provision of the Policy is ambiguous, and without offering any justification for the Court to consider such evidence.

Indeed, far from arguing that the Policy is ambiguous, Mr. Linton insists that his breach of contract claim "is based upon the specific language of the Policy." *Id.* at 12. Thus, not only does Mr. Linton fail to justify his claim with specific reference to language in the Policy itself, he also fails to offer – in fact, he concedes away – any justification for resort to evidence outside of the Policy.

### A.    The Policy Means What It Says And Should Be Enforced According To Its Plain Terms.

This Court should "construe and enforce unambiguous terms according to their plain meaning." *Somerset Sav. Bank v. Chicago Title Ins. Co.*, 420 Mass. 422, 427, 649 N.E.2d 1123, 1127 (1995).  Section 5.12 of the Policy – the only provision of the Policy addressed directly to the *manner in which* a policyholder could make transfers between Investment Divisions – authorized such transfers upon receipt by New York Life of a "notice you sign which gives us the facts that we need. . . ."  Exhibit A to Declaration of Levina Wong Transmitting Documents ("Wong Decl.") at ¶ 5.12.  That language is unambiguous, and requires policyholders to "sign" a notice – necessarily, a written notice – conveying transfer instructions.  Mr. Linton's papers lift nary a finger to explain how that language – taken on its face – could be read to bestow on policyholders an unconstrained right to make transfers by transmitting an *unsigned*, *oral* instruction.  Just as certainly as the Policy language calling for "a notice you sign" must require a written, *signed* notice, it also cannot be construed to mean the *opposite* – an *oral* notice that is not signed.  Having failed even to argue otherwise, Plaintiff has not established any entitlement to relief for breach of contract.

Of course, Plaintiff might have sought to avoid the Policy's plain language by trying to argue that Section 5.12 was ambiguous.  But, in his papers, Mr. Linton does the opposite: he insists that his "breach of contract claim is based upon the specific language of the Policy."  Pl.'s Brief at 12.    Nonetheless, though Plaintiff fails to argue that the relevant contract language is ambiguous, his papers still insist that the Court should refer to statements outside of the Policy, as well as to course of performance, in order to import some meaning into the Policy that its unambiguous wording – "a notice you *sign*" – does not admit.  Precisely because the language of Section 5.12 is unambiguous, the Court need not, and cannot, resort to extrinsic evidence to alter

its meaning, but instead should enforce the Policy's plain words. *Somerset Sav. Bank*, 420 Mass. at 427-28, 649 N.E.2nd at 1127. Moreover, the Policy's integration clause – which informs policyholders that the Policy (and its riders and application) comprise the "entire contract" – also bars any resort to extrinsic evidence to vary the Policy's plain terms. *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261 (1st Cir. 1991) (under Massachusetts law, extrinsic evidence "may not be admitted to contradict the clear terms of an agreement"); *In re New Era Packaging, Inc.*, 186 B.R. 329, 334 (D. Mass. 1995) (refusing to consider extrinsic evidence to modify the terms of a written contract where contract "[did] not suffer from any ambiguity which would justify disregarding its integration clause"). Finally, in the absence of any convincing showing that the Policy language is ambiguous, Plaintiff also may not resort to course of performance evidence. *Somerset Sav. Bank*, 420 Mass. at 427.

In short, the plain wording of Section 5.12 of the Policy flatly contradicts Mr. Linton's breach of contract claim, and his inability to articulate any sufficient basis for the Court to overlook that plain wording disposes of it.

**B.    The Cases On Which Plaintiff Relies Undermine His Case.**

Plaintiff's heavy reliance on the district court's opinion in *Prusky v. Aetna Life Ins. & Annuity Co.*, No. 03-6264, 2004 U.S. Dist. LEXIS 21597 (E.D. Pa. Oct. 25, 2004), seems little more than an effort to rewrite the Policy. After all, the variable life insurance policy at issue in *Prusky* bears little resemblance to Mr. Linton's Policy on the question of how transfers can be made among Investment Divisions. Mr. Linton's Policy states, in the plainest of terms, that he must provide "a notice [he signs] which gives us the facts that we need …" Exhibit A to Wong Decl. at ¶5.12. In stark contrast to these facts, the district court in *Prusky* found that "[t]here is … no limitation on the means by which transfer instructions to defendants may be communicated." *Prusky*, 2004 U.S. Dist. LEXIS 21597 at *2. On the most relevant issue, then, there is no

similarity between the two cases.  For that reason, perhaps, the defendant in *Prusky* did not even contend that it had complied with the contract, but instead argued that its performance should be excused. *Id.* at \*3.  There simply is no useful comparison between Mr. Linton's theory here, on the one hand, and the ruling in *Prusky*, on the other.

Plaintiff's reliance on the decision in *American National Bank & Trust Co. of Chicago v. Allmerica Financial Life Insurance & Annuity Co.*, 304 F.Supp.2d 1009 (N.D. Ill. 2003), falls even further from the mark.  The policy in that case specifically granted a right to "transfer amounts among accounts by Written or Telephone Request." *Id.* at 1011.  When the defendant refused to honor telephone request – which were expressly permitted by the policy – the court ruled that it had breached the contract. *Id.*  Unlike the *Allmerica* policy, the Policy at issue here makes no mention whatsoever of telephonic requests or telephonic instructions.[2]

## II.    Plaintiff is Barred from Asserting an Implied Contract Where an Express Contract Exists

"The law will not imply a contract where there is an existing express contract covering the same subject matter." *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85, 134 N.E.2d 141, 143 (1956).  *Accord Platten v. HG Bermuda Exempted Ltd.*, – F.3d –, No. 05-1832, 2006 WL 268785 \*1, \*7 (1st Cir. Feb. 6, 2006).   Since he alleges that an express contract – the Policy – governs precisely the legal rights he seeks to vindicate in this case, Mr. Linton cannot ask that this Court imply a contract governing those same rights.

Where an express contract governs the rights of the parties, "there is no room for an implied contract; nor is there any basis for recovery on principles of unjust enrichment." *Zarum*,

---

[2]    *American National Bank & Trust Co. of Chicago v. AXA Client Solutions, LLC*, No. 00 C 6786, 2001 WL 743399 (N.D. Ill, June 29, 2001), another of the decisions relied upon by Plaintiff, involved a motion to dismiss and addressed the sufficiency of the pleading in that case, not whether plaintiff was entitled to judgment. *Id.* at \*5.  There was no finding of a breach of contract in that case. *Id.* at \*5-9, \*10-11.

334 Mass. at 85, 134 N.E.2d at 143. *See also Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 250, 606 N.E.2d 1336, 1342 (1993) (holding that the existence of a valid express contract precluded recovery under quantum meruit theory). The *Zarum* court, for example, refused to allow plaintiff to recover on a theory of an implied contract where the contract at issue "specifically covered the subject matter of tax refunds and the parties have set out the only conditions under which the plaintiff would be entitled to recover." 334 Mass. at 85, 134. N.E.2d at 143. Like the contract in *Zarum*, the Policy here specifically covers the subject matter of how transfer instructions are to be communicated (i.e., "a notice you sign that gives us the information we need"). Indeed, Mr. Linton *alleges* that it does. Pl.'s Brief at 12. Massachusetts law simply does not allow Plaintiff to argue that an express contract controls the parties' respective rights concerning the means by which he could make transfers among Investment Divisions, on the one hand, but that the Court could also imply a contract governing those rights, on the other.

At no time prior to the receipt of Mr. Linton's summary judgment papers was New York Life aware he even purported to claim the existence of an implied, oral contract governing his purported right to make telephonic transfers. In his pleadings, as well as in his Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Mr. Linton consistently has asserted that a valid, express contract existed between the parties. *See, e.g.,* Compl. at ¶¶ 15, 27, 31, and page 8 at Prayer for Relief ¶ b; Pl.'s Mem. in Opp'n Def.'s Mot. to Dismiss at 7 ("Mr. Linton's Complaint alleges that there is a written contract between the parties."), 18 ("… Mr. Linton has adequately alleged that there was a contract with New York Life …").[3] He cannot change theories now.

---

[3] Plaintiff may not point to his "Unjust Enrichment and Restitution" claim, as set forth in his Complaint, as the basis of his implied contract claim. In its decision on Defendant's motion to dismiss the Complaint in this action, this Court observed that Plaintiff's Unjust Enrichment and Restitution count was a theory of recovery, and not a cause of action. *Linton*, slip op. at 4.

9958077
-7-

In denying Defendant's motion to dismiss Counts I and V of the Complaint, this Court expressly relied on Plaintiff's assertions that a valid contract existed to allow both his breach of contract and breach of implied covenant of good faith and fair dealing claims to proceed. *Linton v. New York Life Ins. & Annuity Corp.*, No. 01-11362-RWZ, slip op. (D. Mass. Mar. 1, 2005) 1, 2-3 (finding that plaintiff alleged "that the parties reached a valid and binding agreement with regard to [immediate execution of investment instructions communicated by telephone]"), 3 ("In his complaint, plaintiff alleged a contract that provided for telephone orders and characterized defendant's elimination of this ordering option  as the harmful deprivation of a contractual benefit.").   Judicial estoppel applies to prevent litigants – like Mr. Linton here – from creating "revisionist claims" after first asking a court to rely on assertions (and pleadings) which contradict new ones. *Alternative Sys. Concepts, Inc. v. Synopsis, Inc.*, 374 F.3d 23, 34 (1st Cir. 2004) (applying judicial estoppel to prevent plaintiff from belatedly claiming the existence of an oral contract after first arguing that a valid, written contract was in place).  Plaintiff is estopped from importing into the case a wholly new, and contradictory, theory at this late juncture.

Finally, and in any event, all of the cases on which Plaintiff relies for the proposition that the parties' course of performance can give rise to an implied contract involve circumstances where, unlike here, the parties did not have an express contract governing the subject matter at issue. *See, e.g, LiDonni, Inc. v. Hart*, 355 Mass. 580, 583, 246 N.E.2d 446, 449 (1969) (finding absence of an express agreement); *Therrien v. LeBlanc*, 282 Mass. 328, 185 N.E. 15 (1933); *Maynard v. Fabyan*, 267 Mass. 312, 315, 166 N.E. 629, 630 (1929); *Popponesset Beach Ass'n v. Marchillo*, 39 Mass. App. Ct. 586, 587, 658 N.E.2d 983, 984-85 (1996) (finding no express covenant).   Mr. Linton fails to cite even a single Massachusetts case in which course of performance evidence was considered by a Court to either create an implied contract or to give

meaning to a written contract in the face of unambiguous, express contract language covering the issue in question.[4]

Because Mr. Linton's own papers assert that an express contract – the Policy – controls the rights of the parties with regard to his asserted right to make transfers between Investment Divisions (*see, e.g.,* Pl.'s Brief at 13), he cannot now assert that an *implied* contract also governs those rights. And, for simple reasons of estoppel, it is too late for Mr. Linton to argue in the alternative, after having failed to plead the existence of an oral contract in the first instance and, in any event, having asked the Court to rely at the pleading stage on his assertion that a written contract governed. For all of the foregoing reasons, Plaintiff is not entitled to partial summary judgment on a theory of implied contract.[5]

### III.     Plaintiff is Not Entitled to Partial Summary Judgment Concerning His Claim for Breach of the Covenant of Good Faith and Fair Dealing

While Massachusetts law implies into every contract a covenant of good faith and fair dealing, requiring that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," *See Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471, 583 N.E.2d 806, 820 (1991) (citations omitted), the implied covenant may not be invoked "to create rights and duties not otherwise provided for in the existing contractual relationship." *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004) (citing *Cadle Co. v. Vargas*, 55 Mass. App. Ct. 361, 366, 771 N.E.2d 179 (2002)). Neither does the implied covenant extend to any alleged

---

[4]     Plaintiff's citation to *American Home Assurance Co. v. Merck & Co.*, No. 03Civ.3850, 2005 WL 1153723 *1 (S.D.N.Y. Apr. 13, 2005) on this point makes little sense. First, the case involves the use by the court of extrinsic evidence in interpreting an *ambiguous*, *express* contract, not the creation of an *implied* contract. *Id.* at *4-5. Second, Mr. Linton insists that the written Policy at issue here is clear on its face, and is not ambiguous. Finally, *American Home Assurance Co.* was decided under Pennsylvania – not Massachusetts – law. *Id.* at *4.

[5]     Even if such an implied contract were found to exist, there can be no breach when Mr. Linton signed a Telephone Authorization Form stating that those privileges may be discontinued at any time.

representations made prior to the contract's existence.  *See Accusoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001) ("[the covenant of good faith and fair dealing] applies only to conduct during performance of the contract, not to conduct occurring prior to the contract's existence, such as conduct affecting contract negotiations").  So, in this case, for example, New  York Life's duties under the implied covenant are limited by "the obligations – the contractual 'fruits' – actually contained in the [Policy]."  *AccuSoft Corp.,* 237 F.3d at 45.  Where the contract transfers no "right," there is no good faith obligation with regard to that conjured "right."  *See Uno Rests.*, 441 Mass. at 385, 805 N.E.2d at 964 (citing *FDIC v. LeBlanc*, 85 F.3d 815, 822 (1st Cir. 1996)); *Accusoft*, 237 F.3d at 45 (citing *LeBlanc*, 85 F.3d at 822).  *See also Milford Power Ltd. P'ship v. New England Power Co.*, 918 F. Supp. 471, 483 (D. Mass. 1996) (rejecting attempts by a seller of power to imply into a contract the condition that the purchase of power occur "at an economically viable cost," because the contract in question imposed no such condition on purchases).

Here, there simply can be no *implied* covenant attached to a contractual right to make transfers by telephone indefinitely, because there is no contractual right to make such transfers by telephone (or over the internet) in the first place.[6]  Accordingly, Mr. Linton's claim that New York Life acted in bad faith when it took away that purported right fails as a matter of law.

IV.     **Plaintiff is Not Entitled to Partial Summary Judgment On His Misrepresentation Claim.**

As he did throughout discovery,  Plaintiff in his summary judgment papers revises the alleged "misstatement" on which his misrepresentation claim is based.  Page 17 of his brief contends that Mr. Redfearn told Mr. Linton, not only that the 1999 Prospectus was the

---

[6]     Indeed, in his Complaint, Plaintiff did not even purport to base his good faith and faith dealing claim on the actual contract – the Policy – but rather pointed to the prospectus.  *See* Complaint ¶ 32 (alleging that New York Life breached the implied covenant "by unilaterally and arbitrarily changing the material terms of its *prospectus* . . . " (emphasis added)).

prospectus that applied to the Policy, but also that New York Life "*did not intend to modify the features* which authorized Mr. Linton to make an unlimited number of telephonic transfers." Pl.'s Brief at 17 (emphasis added). Nowhere in the record – and certainly not in those portions of the record cited by Plaintiffs on page 17 of his papers – is there support for the idea that Mr. Redfearn told Mr. Linton that New York Life "did not intend to modify" the telephonic transfer privileges. In response to a direct question, Mr. Linton did not state during his deposition that Mr. Redfearn made any representation whatever concerning New York Life's "intentions," nor does the Complaint allege that, nor, given the chance, did he identify such an alleged misstatement in *either* his interrogatory responses or even his Statement of Undisputed Facts.

This formulation of the purported misstatement is wholly new, then, and is not supported by any of the record cites that follow it. More importantly, however, there is not a single piece of evidence in the record to suggest that such a statement was false in 1999 (when Mr. Redfearn made statements to Mr. Linton and when Mr. Linton signed the Policy); there is no evidence in the record even suggesting that New York Life had any intention of modifying its handling of telephonic transfer privileges when Mr. Linton purchased the Policy. *Rodowicz v. Mass. Mut. Life Ins. Co.*, 279 F.3d 36, 45 (1st Cir. 2002) ("A simple change of mind by a defendant does not render an earlier statement false."); *Zuckerman v. McDonald's Corp.*, 35 F. Supp. 2d 135, 145-46 (D. Mass. 1999) (granting defendant summary judgment where plaintiff presented "no evidence--other than speculation" of defendant's intent as to future events). Certainly New York Life had the right to make such modifications and, indisputably, New York Life did suspend Mr. Linton's privileges four years later, in 2003; but the question of whether New York Life *intended at the time the Policy was executed* to modify those privileges is a different question. The undisputed evidence demonstrates that New York Life formed the intention to suspend Mr.

Linton's telephonic transfer privileges much later – in 2003, when the Company first drew up its excessive trading policy to limit the harm caused by market timers.  The mere fact that New York Life decided in 2003 to suspend Mr. Linton's telephonic transfer privileges in no way supports a contention that New York Life "intended to modify" telephonic transfer privileges as early as 1999.  Hence, even assuming *arguendo* that Mr. Redfearn had told Mr. Linton in 1999 that New York Life "did not intend to modify" telephonic transfer privileges, all of the evidence adduced in the course of discovery affirms the *truth* of that statement, and no evidence suggests that such a statement was false when it was made.  *See, e.g.*, Exhibit X to Wong Decl. at 50-52.

Mr. Linton offers no contrary evidence.  On page 17 of his Brief, citing deposition testimony, Plaintiff does state that "Mr. Redfearn, however, admitted during discovery that the statements he made to Mr. Linton regarding the 1999 Prospectus did not accurately reflect New York Life's intentions . . ."  But the Redfearn deposition transcript pages cited by Plaintiff simply do not say that Mr. Redfearn "admitted" any such thing.  Mr. Redfearn did not testify in any way about what New York Life intended – or did not intend – in 1999 with regards to modifying or not modifying telephonic transfer privileges.  There is no evidence that Mr. Redfearn knew – or even could have known – what those intentions were.  Quite literally, there is no support for the claim that Mr. Redfearn made any representation at all concerning New York Life's "intentions" to modify telephonic transfer privileges in 1999, nor is there any record evidence to suggest – even if he had made such a statement – that it was false.  The absence of any supporting evidence for Mr. Linton's theory compels the denial of his motion for partial summary judgment.[7]

---

[7]     Over time, Mr. Linton has articulated many other, different versions of the supposed misrepresentation in this case.  Mr. Linton fails to address these alternate versions in  his papers. Nevertheless, in its own Memorandum of Law in Support of Defendant's Motion for Summary Judgment at pages 23 through 31, New York Life addresses Plaintiff's misrepresentation claim in all of its guises –

Mr. Linton makes another implausible argument when he maintains that he "would not have purchased the Policy had he known that New York Life could limit the manner in which he communicated trades, without his consent." Pl.'s Brief at 17. But Mr. Linton *did* purchase the Policy even though he was advised that New York Life could limit his telephone privileges. This fact cannot be genuinely disputed: at the time that he purchased the Policy, Mr. Linton signed an authorization form in which he expressly agreed that New York Life could discontinue his telephone privileges "at any time." Exhibit C to Wong Decl. at 2. Mr. Linton's actions – and his acknowledged signature on that form – run squarely counter to his after-the-fact litigation claim (and his Affidavit). He cannot win partial summary judgment – or, for that matter, avoid summary judgment in favor of Defendant – by insisting now that he would never do the one thing he demonstrably *did do* in this case.

For purposes of this motion, the Court may assume that Mr. Redfearn mistakenly told Mr. Linton that the 1999 Prospectus governed the Policy, and the Court may even assume that Mr. Linton and his wife, Ms. Lepke – who herself was a holder of securities licenses and who, in prior employment, was registered to market variable life insurance products, just like Mr. Redfearn was – believed this was accurate. It makes no difference at all whether Mr. Linton *actually* believed that the 1999 Prospectus governed the Policy for all time. He could not *reasonably* have believed that the 1999 Prospectus conferred on him a binding right to make transfers by telephone that was not subject to suspension or interruption. The plain words of the Policy – the only binding contract between the parties – and the Policy's integration clause (together with the disclaimer contained in the Telephone Authorization Form, which Mr. Linton signed) told him in the clearest terms that there was no binding right to submit transfer

---

including whether Mr. Linton can carry his burden of showing that he reasonably relied on Mr. Redfearn's statements (he cannot) and whether, in view of his substantial investment gains, Mr. Linton has suffered a cognizable injury (he has not).

instructions by telephone and that this ability to submit such instructions was subject to discontinuance. *See, e.g., Elias Bros. Rests., Inc. v. Acorn Enter., Inc.*, 831 F.Supp. 920, 925-26 (D. Mass. 1993) (finding no actionable claim for misrepresentation where "any an all earlier oral promises or representations were expressly disclaimed" in integration clause and where disclosures to the contrary were "clear, unequivocal and unambiguous"). *See also Teragram Corp. v. Marketwatch.com, Inc.*, No. Civ. A. 02-111-38-DPW, 2004 WL 3086883 \*1, \*12 (D. Mass. 2004) (granting counterclaim-defendant's motion for summary judgment where integration clause was found to control and claimed misrepresentation was inconsistent with the contract provisions.)  The disclosures he received at the time he purchased the Policy, including the 1999 Prospectus itself, were sufficient to put him on reasonable notice that the use of New York Life's telephonic system was a "privilege", not a contractual right, that the privilege may be "discontinued at any time," and that New York Life reserved the right to revise the administrative provisions described in the 1999 Prospectus due to "changing business practices." Exhibits K and N to Wong Decl.  These undisputed facts, contained in documents Mr. Linton acknowledges signing at the time, compel the denial of his motion for partial summary judgment on his misrepresentation claim.

## CONCLUSION

For the foregoing reasons, New York Life respectfully requests that the Court deny Plaintiff's motion for partial summary judgment and enter summary judgment for Defendant, dismissing all remaining claims.

Respectfully submitted,

NEW YORK LIFE INSURANCE AND
  ANNUITY CORPORATION

By its attorneys,

 /s/ Robert G. Jones_____
John D. Donovan, Jr. (BBO # 130950)
john.donovan@ropesgray.com
Robert G. Jones (BBO #630767)
robert.jones@ropesgray.com
Levina Wong (BBO #654510)
levina.wong@ropesgray.com
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

Dated:  March 13, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2006, I served a copy of Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, by hand, upon Richard J. Grahn, Looney & Grossman, LLP, 101 Arch Street, Boston, MA 02110, attorney for Plaintiff Barry Linton.

/s/ Levina Wong_____
Levina Wong