UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

BARRY LINTON,                                :
                                             :
    Plaintiff                               :
                                             :
v.                                           :
                                             :
NEW YORK LIFE INSURANCE AND ANNUITY          :
CORPORATION,                                 :   C.A. No. 04-11362-RWZ
                                             :
    Defendant.                              :
                                             :
_____


**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**


                Richard J. Grahn (BBO#206620)
                P. Andy Henderson, Jr. (BBO#655891)
                Looney & Grossman, LLP
                101 Arch Street
                Boston, MA 02110
                (617) 951-2800

                *Attorneys for Plaintiff*

Date:  March 13, 2006

**I.      INTRODUCTION**

Despite the numerous pages devoted to the nuances of their respective positions, the material facts of this litigation are now clear and undisputed. Those facts reveal that the Plaintiff was solicited to purchase a policy of insurance from the defendant's authorized agent. The Plaintiff advised the agent in great detail of what policy provisions would be essential for him to consider any variable life insurance policy. Those requirements included the unrestricted and unlimited right to make as many expedited, end of the trading day transfers of funds between accounts as he wished. The agent examined numerous alternative insurance policies, and presented the New York Life policy ("Policy"), as one that satisfied the Plaintiff's requirements in every respect.

The Plaintiff reviewed the Policy language and solicitation materials, which he found to be entirely consistent with the agent's representations. Those provisions specifically stated that a policyholder possesses the unrestricted right to make an unlimited number of transfers. The Policy did not limit the manner by which trading instructions could be communicated to New York Life. Knowing what the term "unlimited" meant, the Plaintiff purchased the Policy and paid significant premiums to New York Life. For four years, the Plaintiff utilized the features of the Policy in a manner entirely consistent with what he had been told, and what he understood from his review of the Policy and solicitation materials. Thereafter, however, without the consent of the Plaintiff, New York Life modified the terms of the Policy to deny the Plaintiff the benefit of his bargain. In effect, New York Life advised the Plaintiff that the term "unlimited", as used in the Policy, didn't mean unlimited, but rather apparently meant "possibly limited", depending on the whims of New York Life's business interests.

Had New York Life not wanted to permit the Plaintiff to use its Policy to do that which he advised New York Life was essential, it should not have offered him the Policy. However, having had the benefit of its bargain and after receiving the premium it charged, New York Life cannot now preclude the Plaintiff from enjoying the benefit of his bargain.

Defendant's have moved for summary judgment on all remaining counts of Plaintiff's complaint. Despite Defendant's attempt to obscure the issue by including opinions about market timing[1], the issues in this case are quite simple. Plaintiff had a contract with the Defendant with regard to immediate execution of investment instructions that Defendant breached when it imposed new transfer limitations.

**II.    ARGUMENT**

**THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THE UNDISPUTED FACTS ESTABLISH THAT THE PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT OR BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST.**

**A. The Undisputed Facts Preclude Entry of Summary Judgment in the Defendant's Favor.**

The undisputed facts of this case indicate that under the Policy, Mr. Linton had the ability to make immediate, unlimited transfers within the Investment Divisions under the

---

[1] New York Life has argued that it changed its policies in an attempt to address "market timing" issues. Notwithstanding the defendant's numerous references to Mr. Linton's status as a "market timer," New York Life does not, and can not, contend that Mr. Linton's conduct was illegal, inappropriate, or in violation of the Policy or of any securities law or regulation. None of the recently publicized allegations of after-hour trading or trading privileges extended to preferred customers are present in this case. There is nothing pejorative in the use of the term as it applies to adjusting the mutual funds portfolio in anticipation of market activity, a right each policyholder possessed. *See Am. Nat'l Bank & Trust Co. v. Allmerica. Fin. Life Ins.& Annuity Co.*, 304 F. Supp. 2d 1009, 1017-1018 (N.D. Ill. 2003) (entering summary judgment upon a claim that the insurer wrongfully imposed additional post-purchase transfer restrictions and rejecting defendant's contention that market timing is violative of public policy). Moreover, subsequent changes, even it proffered to address legitimate concerns, may not abolish established contractual obligations. *See e.g. United States v. Winstar Corp.*, 518 U.S. 839 (1996)(government breached its contract with savings and loan association where it failed to indemnify for damages incurred as a result of legislation that was enacted subsequent to the parties' contract).

2

Policy. *See Henderson Aff*[2]. *Exhibit 5 at 5.12*. Section 5.12 of the Policy states **"If you want to make a transfer, you must tell us in a notice you sign which gives us the facts that we need."** *See Henderson Aff.,, Exhibit 7, Hess Dep. at p. 57*; *Henderson Aff., Exhibit 5, at ¶ 5.12*. Mr. Linton provided New York Life with the notice required by this section of the Policy and in April and June 1999, both before and after he purchased the Policy, he received written confirmation from New York Life that he had the ability to make such transfers by telephone. *See Henderson Aff., Exhibits 9 & 15*. Shortly thereafter, and for a period of four years, the parties operated in a manner consistent with the parties' intentions and understanding, and as described in the Policy. *See Henderson Aff, Exhibit 10, Response number 19; Exhibit A, Linton Aff., at ¶ 16, 17; Exhibit 5, at 5.12; Exhibit 6, 1999 Prospectus*[3]*, at p. 43*. New York Life accepted and approved all of Mr. Linton's immediate transfer requests without objection through July 2003. *Exhibit A, Linton Aff., at ¶ 18; Henderson Aff.,Exhibit 3, Plaintiff's First Set of Interrogatories at Response number 14*.

In July 2003, without Mr. Linton's consent and contrary to the language in the Policy, New York Life unilaterally and arbitrarily restricted his transfer instructions to U.S. Mail and placed a cap on the amount he could transfer. *See Henderson Aff., Exhibit 11 & 12; 2003 Prospectus at p. 36.*

---

[2] All citations to "*Henderson Aff., Exhibit ___*" refer to the respective exhibits to the Affidavit of P. Andy Henderson Jr. filed in support of Plaintiff's Motion for Partial Summary Judgment.

[3] The Defendant concedes that the variable life insurance product in this action is a security. *See Defendant's Memorandum of Law* at p. 7. As such, the Policy, the 1999 Prospectus, as well as all marketing materials associated therewith, are subject to Massachusetts and Federal securities laws. To the extent that the 1999 Prospectus and its marketing materials are inconsistent with the Policy or are misleading, then such inconsistencies or misleading statements in the sale of a security would be a violation of SEC Rule 10(b)(5) and M.G.L c. 110A *et seq*. See generally *Marram v. Kobrick Offshore Fund, Inc*., 442 Mass. 43 (Mass. 2004). The Plaintiff has argued that the solicitation materials, including the 1999 Prospectus are consistent with his understanding of the terms of the Policy, which authorized unlimited end of the day transfers on an expedited basis. In the event, however, that it is determined that the solicitation materials contradict the terms of the Policy, then the Defendant has violated M.G.L. c.110A, and the Plaintiff shall seek leave to amend in order to add such a claim.

Under the Policy, there are no restrictions as to how the trading instructions may be conveyed and New York Life does not have the right to restrict Mr. Linton's ability to transfer to the use of the mail or overnight courier. *See Henderson Aff., Exhibit 10, Response number 15; Henderson Aff., Exhibit 7, Hess Dep., P. 37-3; Henerson Aff. Exhibit 11.* More importantly, the undisputed facts of this case establish that Mr. Linton and Mr. Redfearn both understood that "unlimited number of transfers", as described in the Policy, meant no restrictions on the manner in which transfers could be made or the amount that Mr. Linton could transfer within the Investment Divisions that would hinder or defeat Mr. Linton's ability to make immediate, end of the day transfers in order to implement his investment strategy. *See Henderson Aff., Exhibit 2, Redfearn Dep., pgs. 50-52, 83, 86, 111-112, 116; Henderson Aff., Exhibit 1, Linton Dep., pgs. 52-53, 62-64; Henderson Aff., Exhibit 4, Leptke Dep. at p. 34; Exhibit A, Linton Aff., at ¶ 8, 11.*

Based on this evidence[4], and interpreting all reasonable inferences in favor of the non-moving party, a reasonable jury would be compelled to conclude that the parties had an agreement with regard to an unrestricted means to implement an unlimited number of transfers within Investment Divisions. New York Life's imposition of arbitrary restrictions on the manner in which transfers could be made or the amount that Mr. Linton could transfer, violate the terms of the Policy.

---

[4] Contrary to New York Life's contention, Mr. Linton is not claiming that the 1999 Prospectus is part of the Policy, but rather that the 1999 Prospectus is relevant were the Court to determine that the language of the Policy concerning what the parties meant by the term "unlimited number of transfers" was ambiguous. ("When the written agreement, as applied to the subject matter, is in any respects uncertain or equivocal in meaning, all circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms). See *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1264 (1st Cir. 1991); *Keating v. Stadium Management Corp.*, 24 Mass. App. Ct. 246, 249-50, 508 N.E.2d 121, 123 (1987), *rev. denied*, 400 Mass. 1104, 511 N.E.2d 620 (1987) (quoting *Robert Industries, Inc. v. Spence*, 362 Mass. 751, 753-54, 291 N.E.2d 407 (1973)).

The facts of this case are analogous to *Prusky*[5] *v. Aetna Life Ins. & Annuity Co.*, 2004 U.S. Dist. LEXIS 21597 (2004)[6]. In *Prusky*, the court found that the plaintiffs were entitled to summary judgment as to the insurance companies' liability for breach of contract. *Id. at *17.*

Like *Prusky*, Mr. Linton purchased the Policy from the Defendant insurance company. *Henderson Aff., Exhibit 2*, *Redfearn Dep. p. 57-58.* Under the Policy, Mr. Linton was able to invest in certain Investment Divisions and was charged substantial fees. *Exhibit A, Linton Aff at 12, 19; Henderson Aff., Exhibit 10, Plaintiff's First Request for Admissions, Response number 14.* Under the Policy, there is no limitation on the number of transfers a policyholder can make and **no limitation** as to the means by which transfer instructions could be communicated.

---

[5] Both parties have cited favorably to a number of cases that involve the investment practices of Dr. Prusky or his related entities, as they relate to mutual funds. In each case, however, the Court's decision or reasoning either favors Mr. Linton's position in the present action. For example, in *Prusky v. Aetna Life Ins. & Annuity Co.,* 2004 U.S. Dist. LEXIS 21597 (2004), on almost identical facts, the court held that the plaintiffs were entitled to summary judgment as to the insurance companies' liability for breach of contract. *Id. at *17.* In reaching its decision, the court observed that under the policy there was no limit on the number of transfers a policyholder could make and no limitation on the means by which transfer requests could be communicated. *Id. at *6.*

Likewise, in *Prusky v. Prudential Ins. Co. of Am.,* 2001 U.S. Dist. LEXIS 24189 (D. Pa. 2001), the court's reasoning is consistent with the Plaintiff's arguments herein. The policy language clearly gave Prudential the ability to restrict transfers. *Id. at *2.* In addition, the parties' course of conduct over the years was contradictory to the language of the Policy. See also *Windsor Secur., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655 (3d Cir. 1993).

In *Prusky v. Phoenix Life Ins. Co.*, 2005 U.S. Dist. LEXIS 32856 (D. Pa. 2005) the court found in favor of Phoenix Life for reasons that are not present in this current action. Specifically, the court found that the policy reserved to Phoenix the right to limit the number of transfers in his subbaccounts. *Id.* at p.*8. In addition, the prospectus under which the policy was sold reserved to Phoenix the right to temporarily or permanently restrict trading among subbaccounts. *Id.* at p.*15.

In the present case, neither the Policy, nor the 1999 Prospectus, give New York Life the ability to restrict transfers within Investment Divisions, nor do they reserve to New York Life the ability to do so in the future. Moreover, Mr. Redfearn's representations, the 1999 Prospectus and the parties' four-year course of conduct are all consistent with the language of the Policy and the intent of the parties.

[6] In Defendant's Memorandum of Law, New York Life attempts to compare the facts of *First Lincoln Holdings, Inc. v. Equitable Life Assur. Soc'y of the U.S.*, 164 F. Supp. 2d 83 (S.D.N.Y. 2001) to the facts of the present matter. However, *First Lincoln* is clearly distinguishable on its face. In *First Lincoln*, the court dismissed plaintiff's complaint based on the expressed and unambiguous terms of the parties' contract. *First Lincoln*, 164 F. Supp. 2d at 393. Under the contract, and as confirmed by the correspondence between the parties, and the terms of the prospectus in effect at the time the parties entered into the contract, any conduct related to "market-timing" was specifically prohibited. *Id.* at 387. In the present action, neither the Policy, nor the Prospectus, refer to "market timing", nor do they give discretion to New York Life to eliminate telephone transfers or limit the number of transfers among Investment Divisions. See *Henderson Aff., Exhibit 5; Henderson Aff., Exhibit 6.* By defendant's own admission the Policy is silent on this issue. *See Defendant's Memorandum of Law at p.15.* Compare to *Prusky v. Aetna Life Ins. & Annuity Co., 2004 U.S. Dist. LEXIS 21597 (2004).*

5

*Henderson Aff., Exhibit 5, at 5.14.* New York Life accepted and acted upon telephone and internet instructions for approximately four and one-half years without any objection. *Exhibit A, Linton Aff. at 18; Henderson Aff., Exhibit 3 at Response 4.* After four years, the New York Life refused to honor Mr. Linton's transfer requests for sub-account transfers by telephone. *Exhibit A, Linton Aff at 21; Henderson Aff., Exhibit 14.* For the same reasons articulated in *Prusky*, Defendant's Motion for Summary Judgment should be denied. *See also Am. Nat'l Bank & Trust Co. v. Allmerica Fin. Life Ins. & Annuity Co.*, 304 F. Supp. 2d 1009, 1017 (D. Ill. 2003)(In granting part plaintiff's motion for summary judgment on its breach of contract claim against an insurer, the court held that the transfer rules do more than modify timing and procedure requirements; they impose strict limitations on the number of permitted transfers). Based on these facts, a reasonable jury could conclude that an agreement existed with regard to the immediate execution of investment instructions. Thus, New York Life breached the agreement when it imposed limitations on transfers between Investment Divisions.

Furthermore, under the Policy, there is no provision that provides New York Life with the ability to change a material term of the contract without Mr. Linton's consent. *See Henderson Aff., Exhibit 10, Plaintiff's First Request for Admissions, Response number 15; Henderson Aff., Exhibit 7, Hess Dep., p. 37-38.* Specifically, section 9.1 of the Policy states that "no change to this contract will be made without your consent" *Henderson Aff., Exhibit 5, at 9.1; Exhibit 6, at p. 39.* New York Life knew that Mr. Linton purchased the Policy solely because it allowed him to implement his end of the day investment strategy. *See Henderson Aff., Exhibit 1, Linton Dep., p. 69, 70; Henderson Aff., Exhibit 2, Redfearn Dep., at pg. 48, 51, 83, 111-112; Exhibit A, Linton Aff., at ¶ 13*

New York Life knew that Mr. Linton could not use his strategy by making transfers by mail or overnight courier and that Mr. Linton needed to make transfers quickly at the end of the day, by any available means, including telephone delivery. *Henderson Aff., Exhibit 2, Redfearn Dep., pps. 48, 52, 111-112*. Mr. Linton made all of his transfer request by telephone, and later the internet, from 1999 through July 2003, when his ability to do so was terminated. *See Henderson Aff., Exhibit 10, Response number 19; Exhibit A, Linton Aff., at ¶ 16, 17; Henderson Aff., Exhibit 5, at 5.12; Henderson Aff., Exhibit 6, 1999 Prospectus, at p. 43*. New York Life never requested nor received Mr. Linton's consent prior to implementing its transfer limitations in 2003. *See Henderson Aff., Exhibit 10, Response number 16.* New York Life precluded Mr. Linton from using any other form of direct delivery of trading instructions for that day as opposed to mail or overnight courier, which would be effective on the following day. Based on these facts, and interpreting all reasonable inferences in favor of the non-moving party, a reasonable jury could conclude that the parties had an agreement with regard to immediate execution of investment instructions and that New York Life breached this agreement when it unilaterally restricted his ability to make such transfers.

    **B. In the Event the Court Concludes that the Policy Does Not Restrict the Manner in Which Trading Instructions May Be Communicated, Then a Genuine Issue of Material Fact Exists Sufficient to Preclude Entry of Summary Judgment.**

Assuming, for the purpose of this Opposition only, that the Policy restricts the manner by which expedited delivery of trading instructions may be made, then there is an obvious and genuine issue of material fact in dispute concerning what the parties meant by use of the term "unlimited transfers within Investment Divisions," that must preclude entry of summary judgment. Summary judgment is never appropriate if there is a genuine issue of a material fact. *Fed. R.Civ.P. 56(c)*. As previously stated, both Mr. Linton and Mr. Redfearn understood that

7

unlimited number of transfers meant that no restrictions on the manner in which transfers could be made or the amount that could be transferred within the Investment Divisions would be imposed.  *See Henderson Aff., Exhibit 2, Redfearn Dep., pgs. 50-52, 83, 86, 111-112, 116; Exhibit 1, Linton Dep., pgs. 52-53, 62-64; Henderson Aff., Exhibit 4, Leptke Dep. at p. 34; Exhibit A, Linton Aff., at ¶ 8, 11.*  By imposing limitations on transfers, as the 2003 Prospectus purports to do, the language stands in direct contradiction of the term "unlimited" as understood by Mr. Linton.  This genuine dispute as to a material fact precludes entry of Summary Judgment in favor of the Defendant.

### C. New York Life is Not Entitled to Summary Judgment on Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim.

Under Massachusetts law, "every contract implies good faith and fair dealing between the parties to it."  *McAdams v. Mass. Mut. Life Ins. Co.*, 2000 U.S. Dist. LEXIS 22068 (D. Mass., 2000) citing *Anthony's Pier Four v. HBC Assoc.*, 411 Mass. 451, 583 N.E. 2d 806 (1991); *See Restatement (Second) of Contracts § 205* ("every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement"); *Am. Nat'l Bank & Trust Co. v. Allmerica Fin. Life Ins. & Annuity Co.*, 304 F. Supp. at 1016 (the duty of good faith and fair dealing requires a party vested with contractual discretion to exercise it reasonably, not "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.")  Pursuant to the covenant, "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Anthony's Pier Four, Inc.,* 411 Mass. at 471, quoting *Druker v. Roland Wm. Jutras* Associates, Inc. 370 Mass. 383, 348 N.E. 2d 763 (1976); *Tufankjian v. Rockland Trust Co.*, 57 Mass. App. Ct. 173, 782 N.E. 2d 1 (2003).

8

In this case, the facts show that there was an agreement between the parties' to make immediate execution of investment instructions communicated by telephone. *See Henderson Aff., Exhibit 7, Hess Dep., at pgs. 36-37, 41, 49, 56-57; Henderson Aff., Exhibit 10, Response number 11; Exhibit A, Linton Aff., at ¶ 16, 17.* Despite the parties understanding, New York Life, without the consent of Mr. Linton or the authority under the Policy, altered a material term of the agreement when it arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectation of the parties, discontinued Mr. Linton's ability to make immediate transfers within the Investment Divisions. *See Exhibit A, Linton Aff., at 16-18, 20-24; Henderson Aff., Exhibit 10, response number 15, Henderson Aff., Exhibit 7, Hess Dep. at pgs. 37-38.* Based on this evidence, a reasonable jury could conclude that New York Life breached the covenant of good faith and fair dealing when it arbitrarily imposed transfer limits. *See Am. Nat'l Bank & Trust Co. v. Allmerica Fin. Life Ins. & Annuity Co.*, 304 F. Supp. at 1016. To the extent that New York Life argues that there is no breach because there was no contractual right to make transfers telephonically, despite the language in the Policy with which Mr. Linton complied, and the parties' four-year course of performance, this by and of itself creates a genuine issue of material fact that would preclude summary judgment on this claim. See *Golub v. Milpo*, 402 Mass. 399 (1988). Therefore, Defendant's Motion for Summary Judgment should be denied.

> **D. New York Life is Not Entitled to Summary Judgment on Plaintiff's Misrepresentation Claim.**

> **1. Mr. Linton Reasonably Relied on Mr. Redfearn's False Statements.**

In order to state a claim for misrepresentation, Mr. Linton must allege 'a false statement of material fact made to induce the plaintiff to act, together with reliance on the false statement

9

by the plaintiff to the plaintiff's detriment. *Rodowicz v. Mass. Mut. Life Ins. Co.*, 279 F.3d 36, 42 (1st Cir. 2002). In the present action, Mr. Redfearn, an independent agent of New York Life, prior to selling Mr. Linton the Policy, knew that Mr. Linton's investment strategy required quick trades at the end of the business day and that Mr. Linton was not interested in purchasing a policy that could limit the number of trades that he made. *See Henderson Aff., Exhibit 10, Plaintiff's First Set of Interrogatories to Defendant, Response number 4; Henderson Aff., Exhibit 2, Redfearn Dep., pgs. 52, 111-112*. Mr. Redfearn also knew that Mr. Linton did not need additional insurance. *See Henderson Aff., Exhibit 1, Linton Dep., pp. 58-59; Exhibit A, Linton Aff., at ¶ 7*. In addition, Mr. Redfearn repeatedly informed Mr. Linton that the 1999 Prospectus was the prospectus that applied to his Policy, and that New York Life did not intend to modify the features, which authorized Mr. Linton to make an unlimited number of expedited transfers. See *Henderson Aff., Exhibit 2, Redfearn Dep. at p. 131-132; Henderson Aff., Exhibit 1, Linton Dep., p.69, 70, 107; Henderson Aff., Exhibit 4, Lepke Dep., p.44-45; Henderson Aff., Exhibit 16*.

New York Life concedes this point, as it must, in Defendant's Memorandum of Law. *See Defendant's Memorandum of Law* at p. 9-10. Based on these representations, Mr. Linton purchased the Policy and paid all subsequent premiums, expenses and fees[7]. *Exhibit A, Linton Aff., at ¶ 13-15*. Moreover, when a 2000 prospectus appeared in the Linton mail, subsequent to Mr. Linton's acceptance of the Policy, Mr. Redfearn instructed him to throw it away as it did not apply to his Policy. *Henderson Aff., Exhibit 4*, *Lepke Dep., p.45-46*. This second statement reinforced Mr. Redfearn's earlier statement that the 1999 Prospectus was the one that would

---

[7] A reasonable jury could concluded that a special relationship existed between Mr. Redfearn and Mr. Linton that gave rise to a duty on the part of the agent that adequate insurance was obtained. See *Martinonis v. Utica Nat'l Ins. Group,* 65 Mass. App. Ct. 418 (Mass. App. Ct. 2006).

govern the Policy. Based on this record, and interpreting all reasonable inferences in favor of Mr. Linton, a reasonable jury could conclude that Mr. Redfearn made "a false statement of material fact made to induce the plaintiff to act, together with reliance on the false statement to the plaintiff's detriment. *Rodowicz v. Mass. Mut. Life Ins. Co.*, 279 F.3d 36, 42 (1st Cir. 2002); *See Bates v. Southgate,* 308 Mass 170 (1941).

Conceding that the false statement was made, New York Life has argued that Mr. Linton could not have reasonably relied on the statements of Mr. Redfearn that the 1999 Prospectus governed the Policy throughout its term. *See Defendant's Memorandum of Law, at p. 24.* This argument is based on the premise that the representations concerning the entitlement to unrestricted telephonic trading authority are in direct conflict with the terms of the Policy. Under the present undisputed facts, this is not the case. As noted above, based upon review of the Policy, confirmed by the representations of the agent, review of the 1999 Prospectus, by providing New York Life with a signed notice giving it the information that it needed, and through four plus years of experience with New York Life, it was reasonable for Mr. Linton to conclude that the Policy authorized unrestricted expedited trades within his account and would not be changed. All the solicitation material used to promote the universal variable life product, including the Policy, indicated that this was the case. To believe otherwise simply does not make sense from Mr. Linton's or Mr. Redfearn's perspective. See *Starr v. Fordham,* 420 Mass. 178, 188 (1995) (plaintiff could reasonably rely on pre-contractual representations where it was not clearly at variance with parties written agreement). For the reasons stated in the above, it is clear that the Policy language does not conflict with the representations made by Mr. Redfearn, or the 1999 Prospectus, or any representations made by New York Life. As such, a reasonable jury could conclude that Mr. Linton reasonably relied on the representation to his detriment,

11

thereby precluding entry of summary judgment[8]. See *Golber v. BayBank Valley Trust Co.,* 46 Mass. App. Ct. 256, 257, 704 N.E.2d 1191 (1999)(Reliance is normally a question for a jury).

New York Life's other arguments that Mr. Linton could not have reasonably relied on the representation of Mr. Redfearn are equally unavailing. The Defendant argues that the limitation it unilaterally imposed on Mr. Linton's trading activities were authorized as "administrative changes" not prohibited under the Policy, *See Defendant's Memorandum of Law at p.4*. By so doing, New York Life does a disservice to the considerable efforts of its agent, Paul Redfearn, to investigate the myriad of possible policies and fix upon the New York Life Policy as one that satisfied all of Mr. Linton's requirements – to allow him to make an unlimited number of transfers, at the end of the trading day, on an expedited basis. Mr. Linton and Mr. Redfearn concur that in the absence of such provisions, Mr. Linton would have rejected the New York Life Policy, just as he had rejected others, which restricted such activity.

By mischaracterizing the process by which trades were to be effected in the context of this particular relationship between the parties, as "administrative", and subject to unilateral change, New York Life negates the entire basis for the agreement between the parties. *See*

---

[8] New York Life also argues that Mr. Linton could not have reasonably relied on Mr. Redfearn's false statement because Mr. Linton signed a telephone authorization form that stated that his privileges could be terminated at any time. At his deposition, Mr. Linton testified that the telephone authorization form related only to his ability to use a PIN to access the automated service and that he could always call and talk to a New York Life representative should he choose. *See Linton Dep Tr. at p. 87-88* attached to the Declaration of Levina Wong filed in Support of Defendant's Motion for Summary Judgment. Curiously, while attempting to avail itself of the Policy's integration clause in order to avoid the unfavorable language of the 1999 Prospectus, and the telephone authorization correspondence, the Defendant embraces other contemporaneously prepared documents, including the PIN authorization documents without concern for the parol evidence rule. The referenced PIN authorization does not preclude the right of policyholders to utilize any other mechanism, including talking to a New York Life employee, sending facsimile instructions or hand delivering instructions in order to obtain an expedited implementation of his trading instructions. The Defendant cannot arbitrarily use the parol evidence rule as a sword or shield depending on its perceived strategic value. If the Defendant wishes to avoid application of the parol evidence rule, it must do so uniformly. Uniformity, however, will result in entry of summary judgment in favor of the Plaintiff.

*Defendant's Memorandum of Law* at p. 25-26.  However, the facts of the present case clearly demonstrate that the continuing ability to make immediate, same day transfers was a material term understood by both Mr. Redfearn and Mr. Linton and as an absolute requirement for considering the purchase the New York Life Policy. *See Exhibit A, Linton Aff. at 8, 9; Henderson Aff., Exhibit 2, Redfearn Dep., pp. 50-51, 83, 86, 111-112; Henderson Aff., Exhibit 1, Linton Dep., pp. 53, 62-6; Henderson Aff., Exhibit 4, Leptke Dep. at p. 34; See also Am. Nat'l Bank & Trust Co. v. Allmerica Fin. Life Ins. & Annuity Co.*, 304 F. Supp. 2d 1009, 1017 (D. Ill. 2003).  Drawing all reasonable inferences in favor of Mr. Linton, a reasonable jury could conclude that Mr. Linton reasonably relied on the misrepresentation of Mr. Redfearn, and therefore, Defendant's Motion for Summary Judgment should be denied.

Alternatively, the facts of the present case show that application of the doctrines of promissory estoppel or equitable estoppel preclude entry of Summer Judgment in favor of the Defendant.  Promissory estoppel permits recovery due to reliance on a promise of future intent, while in contrast, equitable estoppel permits recovery due to reliance on a past or present misrepresentation. *See Boylston Dev. Group, Inc. v. 22 Boylston Street Corp.* 412 Mass. 531, 543, 591 N.E. 2d 157, 165 (1992). *See also Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757,761, 384 N.E.2d 176 (1978)* ("when a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract,' and it is enforceable pursuant to 'traditional contract theory'").   In order to recover on a claim for estoppel Mr. Linton must show the following elements exist: (1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; (3) and detriment to

13

such person as a consequence of the act or omission.  *Boylston Dev. Group, Inc. 412 Mass at 542.*

In the present case, Mr. Linton was contacted by Mr. Redfearn, a New York Life agent, when researching possible investment opportunities and expressed to the agent that his investment strategy required timely execution of trades. *See Henderson Aff., Exhibit 2, Redfearn Dep., pgs. 50-51, 83, 86, 111-112; Henderson Aff., Exhibit 1, Linton Dep., pgs. 53,55, 62-64; Henderson Aff., Exhibit 4, Leptke Dep. at p. 34; Exhibit A, Linton Aff., at ¶ 8.*  Relying on the Mr. Redfearn's representations that throughout the length of the Policy Mr. Linton could employ his investment strategy under the terms of Policy, as well as statements contained in the Policy and the 1999 Prospectus, Mr. Linton entered into a contract with New York Life for which he was charged significant fees. *See Henderson Aff., Exhibit 2, Redfearn Dep., at pg. 131-132; Henderson Aff., Exhibit 1, Linton Dep. p. 69, 70, 107; Henderson Aff., Exhibit 4, Lepke Dep. at pg. 44-46; Exhibit A, Linton Aff., at ¶ 13.*  Under these facts, a reasonable jury could conclude that under the theories of equitable estoppel, due to his reliance on New York Life's past or present misrepresentations, and promissory estoppel, due to his reliance on New York Life's promise of future intent, entitle Mr. Linton to enforce compliance with the Policy's terms precluding entry of Summary Judgment. *Boylston Dev. Group, Inc., supra, 412 Mass at 542.*

### 2.  Mr. Linton Has Shown That He Has Suffered Damages.

New York Life next argues that Mr. Linton's misrepresentation claim fails because there are no damages that he can show that flow from Mr. Redfearn's misrepresentation.  See *Defendant's Memorandum of Law at p. 29.*  This argument fails to acknowledge the readily apparent damages accruing from the purchase of a Policy, payment of premiums and fees, and losses sustained by his inability to achieve the investment performance that implementation of

his strategy would realize. Mr. Linton's investment strategy is based on computerized models of historical economic performance are analyzed, and "buy" or "sell" signals are generated based on the confluence of specific market indicators. *See Exhibit A, Linton Aff.,* at 3. Based on these computer models, Mr. Linton has provided the Defendant in discovery with the models and analysis that identify the specific damages sustained by his failing to act upon his model's signals. *See Exhibit A, Linton Aff.,* at 22, 23. In addition, Mr. Linton has established what he has paid in fees, costs and taxes as a direct result of New York Life's misrepresentation. These damages would not have occurred but for Mr. Redfearn's representations to Mr. Linton. More importantly, because the actual amount of damages Mr. Linton has suffered is a genuine issue of material fact that is in dispute, Defendant's Motion for Summary Judgment should be denied.

### E. New York Life Is Not Entitled to Summary Judgment on Plaintiff's Unjust Enrichment Claim.

In the alternative, should the court determine that the agreement to make immediate execution of investment instructions is one implied in fact and not expressed, then New York Life has been unjustly enriched. Unjust enrichment is an equitable doctrine**,** which allows recovery when it would be unconscionable for a defendant to retain a benefit wrongfully obtained. *Boyd v. Jamaica Plain Co-Operative Bank, 7 Mass. App. Ct. 153 (Mass. App. Ct. 1979).* A plaintiff is entitled to restitution if he establishes that a defendant was unjustly enriched**,** either through a wrongful act or by passively accepting a benefit that would be unconscionable to retain. *Id*. A defendant may be unjustly enriched**,** even if the plaintiff has not suffered a corresponding loss. *Restatement of Restitution § 1*, comment e (1937).

In the present matter, New York Life secured the premium for a long-term life insurance Policy from Mr. Linton through representations made by its agent. *See Henderson Aff., Exhibit*

15

2, *Redfearn Dep., pg. 57-58; See Henderson Aff., Exhibit 9*; *Exhibit A, Linton Aff., at ¶ 13-15, 19.* More importantly, New York Life would never have received any of the fees associated with the Policy, but for the representations from Mr. Redfearn concerning Mr. Linton's ability to make unlimited transfers for the life of the Policy. *See Henderson Aff., Exhibit 1, Linton Dep., p. 69, 70; Henderson Aff., Exhibit 2, Redfearn Dep., at pg. 48, 51, 83, 111-112; Exhibit A, Linton Aff., at ¶ 13.* New York Life is still benefiting under the Policy even though it has eliminated Mr. Linton's only reason for purchasing the Policy. *See Henderson Aff., Exhibit 1, Linton Dep., pp. 58-59; Exhibit A, Linton Aff., at ¶ 7.* As such, a reasonable jury could conclude that the premiums and fees charged by New York Life were unjustly retained.

### III. CONCLUSION

For the foregoing reasons, Defendant, New York Life's Motion for Summary Judgment should be denied.

BARRY LINTON,

By his attorneys,

/s/ P. Andy Henderson, Jr.
Richard J. Grahn (BBO #206620)
P. Andy Henderson, Jr. (BBO#655891)
Looney & Grossman, LLP
101 Arch Street
Boston, MA  02110
March 13, 2006                        (617) 951-2800

**Certificate of Service**

       I, P. Andy Henderson, Jr., an attorney with the law firm of Looney & Grossman LLP, hereby certify that on March 13, 2006, I served a copy of the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment** was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants.

    /s/ P. Andy Henderson, Jr._____
    P. Andy Henderson, Jr., Esq.