UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BARRY LINTON,

    Plaintiff

v.

NEW YORK LIFE INSURANCE
AND ANNUITY CORPORATION,

    Defendant.

C.A. No. 04-11362-RWZ

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION TO ALTER AND AMEND JUDGMENT

In its September 18, 2006 Memorandum of Decision and Order (the "Order"), this Court properly denied plaintiff's motion for partial summary judgment, and granted summary judgment in favor of New York Life on all remaining counts of the Complaint, after noting that the parties "agree on the basic facts in this case." *Linton v. New York Life Ins. & Annuity Corp.*, No. 04-11362-RWZ, Mem. of Decision and Order at 2 (D. Mass. Sept. 18, 2006). Arguing anew the points already rejected in the Order, plaintiff's Motion to Alter and Amend Judgment ("Motion to Amend") asks the Court to "amend" its ruling by reversing it entirely. But a motion to reconsider may not be used to re-litigate "theories previously advanced and rejected." *Palmer v. Champion Mortgage*, -- F.3d --, No. 06-1246, 2006 WL 2789231 *1, *5 (1st Cir. Sept. 29, 2006) (affirming denial of a motion where plaintiff "did no more than reiterate the arguments she earlier had advanced" and where "the court had not overlooked that allegation but, rather, had found it wanting"). Nor should such a motion "allow a party to advance arguments that could and should have been presented to the district court prior to judgment." *See Iverson v. City of Boston*, 452 F.3d 94, 103 (1st Cir. 2006) (affirming denial of plaintiffs' motion for

10223884_3

reconsideration where plaintiffs failed to develop their legal argument in opposition to defendant's motion for summary judgment) (quoting *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997) (internal quotations omitted)).

On this Motion, plaintiff presents *only* reargument and "theories previously advanced and rejected" – nothing more. *All* of the arguments raised the Motion to Amend – ambiguity of the Policy's material terms, reference to parol evidence and course of performance to contradict the Policy's otherwise plain terms – were carefully considered and squarely rejected in the Order. The Motion to Amend is recycled almost word-for-word from Mr. Linton's papers addressing the competing motions for partial summary judgment. The Court's rulings were entirely in accord with applicable Massachusetts law governing contract interpretation, and the Motion to Amend offers no new or genuine argument to the contrary. For these reasons, addressed briefly below, the Motion should be denied.

## ARGUMENT

Reconsideration is "'an extraordinary remedy which should be used sparingly.'" *Palmer*, 2006 WL 2789231 at *5 (quoting 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810.01 (2d ed.1995)). A district court should not grant such a motion, except upon a showing that: (1) newly discovered evidence that was not previously available has come to light; (2) the court committed a manifest error of law; (3) there is an intervening change in controlling law; or (4) "other highly unusual circumstances" exist. *Palmer*, 2006 WL 2789231 at *4; *Flebotte v. Dow Jones & Co.*, No. 97-30117-FHF, 2000 U.S. Dist. LEXIS 19871 *1, *3 (D. Mass. Nov. 21, 2000) (denying motion where plaintiff "neither [presents] newly discovered evidence nor convinces the Court that it committed clear error"). Here, the sole ground plaintiff relies upon is that the Court committed manifest error of the law in ruling that the Policy is unambiguous. This argument is entirely without merit.

**I.      In Ruling That The Relevant Portions of the Policy Are Unambiguous, the Court's Ruling Was Entirely Correct.**

Applying familiar principles of Massachusetts contract law, the Court took care in evaluating whether the Policy provisions concerning the manner of making exchanges among Investment Divisions – including the language requiring a "notice you sign" – were ambiguous. Order at 6-8. The Court properly found that they were not. *Id.* at 7 ("The plain meaning of requiring transfer requests to be 'signed' is that the Policy requires each transfer request to be in writing.") and 11 ("Because the plain language of the contract unambiguously requires a signed transfer request, plaintiff was not expressly or impliedly entitled to 'immediate execution of his instructions for securities transactions telephonically.").

Plaintiff nevertheless insists that the Court committed "clear error" in finding that the Policy language was unambiguous. Motion to Amend at 1. Plaintiff goes further, arguing that the Order itself "demonstrates" that "the Policy language addressing the manner in which a policyholder can make a transfer within investment decisions is in fact ambiguous." Motion to Amend at 2. Plaintiff does not – and cannot – support this bizarre assertion.

As a direct consequence of the Court's ruling on the unambiguous nature of Policy language, the Order also correctly found that the 1999 Prospectus, as well as the agent's representations, "do not form any part of the contract between the parties" and, thus, could not be admitted to contradict the otherwise clear terms of the Policy regarding written notification of transfers, Order at 9, and rejected Mr. Linton's reliance on course of performance to interpret or alter the meaning of the Policy, since the Policy's relevant terms were unambiguous. *Id.* at 10. Plaintiff cannot argue that it was "clear error" for this Court to hold under Massachusetts law that "'parol evidence may not be admitted to contradict the clear terms of an agreement or to create ambiguity where none exists.'" Order at 9 (*citing ITT Corp. v. LTX Corp.*, 926 F.2d 1258 (1st

Cir. 1991)).  Finally, under Massachusetts law, it cannot be disputed that "[r]ecourse to performance and usage of trade to interpret contract terms are only necessary where the contract terms are ambiguous." Order at 10 (*citing Sommerset Sav. Bank v. Chicago Title Ins. Co.*, 420 Mass. 422, 427-28, 649 N.E.2d 1123, 1127 (1995).  The Motion to Amend makes no claim that the Court's reliance on these long-settled principles of Massachusetts law was anything but entirely correct – much less that it amounted to "clear error" sufficient to justify alteration or amendment of the Order.[1]

Instead, the Motion to Amend repeatedly expresses Mr. Linton's disagreement – not with the Court's reading of the applicable law – but with the Court's construction of the Policy's terms.  Even on this point, however, the Motion to Amend lacks the courage to squarely confront the Policy language itself.  Thus, while the Order directly confronts at least four separate, relevant sections of the Policy and explains in the plainest terms its ruling that the language is unambiguous on the question of written transfer notification, Order at 6-10, the Motion to Amend makes no effort to construe and reconcile the specific language contained any one of those Policy sections or explain why the Court's own careful reading of the Policy language is flawed.  Instead, the Motion to Amend moves past the question of ambiguity in the Policy

---

[1] It may well be that plaintiff hoped his citation to a pair of recently decided cases (one decided by this Court) might shake the Court's confidence in its initial ruling and prompt reversal. *See* Motion to Amend at 2.  But the rulings in those cases are entirely consistent with the Court's ruling here. In*, Babcock Borsig Power GmbH v. Babcock Power, Inc.*, No. 04-10825-RWZ, 2006 WL 158174 (D. Mass. Mar. 23, 2006), this Court found an ambiguity in a Stock Purchase Agreement precisely because the contract language at issue in that case contradicted itself: the Agreement recognized certain "set off" rights only against a $5 million note, while a second $1.9 million note suggested that "set off" rights also could be exercised under that note.  2006 WL 158174 at *3.  In *Nat'l Fire Prot. Ass'n v. Int'l Code Council, Inc.*, No. 03-10848-DPW, 2006 WL 839501 (D. Mass. Mar. 29, 2006), Judge Woodlock found no ambiguity in the use of term "confusingly similar" in a settlement agreement relating to various Lanham Act and other claims, finding that the parties had intended the phrase to have the meaning suggested by the Lanham Act itself.  2006 WL 839501 *1, *22.  In any event, in the Motion to Amend, plaintiff offers literally no explanation whatever of the relevance he believes either decision has to his Motion.

language itself and, looking past the four corners of the contract entirely, proceeds directly to arguments based on course of performance and parol evidence.

It is the plaintiff, not the Court, that misconstrues the proper application of Massachusetts contract law to the undisputed facts of this case. Mr. Linton should not be allowed at this late date, *after* the entry of judgment against him, to recast and reargue points he previously made to the Court and which the Court rejected. The Court did not commit a "manifest error of law" when it found that the relevant Policy language was unambiguous. Indeed, plaintiff makes no substantial argument that the Order's interpretation of the Policy departs in any way from Massachusetts law, let alone that it departs so completely that a "clear error" could be shown. Plaintiffs seeks only to have the Court abandon Massachusetts law by looking beyond an otherwise unambiguous contract. That effort should be denied, and the Order, granting summary judgment in favor of New York Life on plaintiff's breach of contract claim, should stand.

**II.     The Court's Ruling On Plaintiff's Misrepresentation Claim Also Was Correct.**

Since the Court's ruling concerning the plain meaning of the Policy was correct, Mr. Linton's misrepresentation claim cannot stand, since he could never show that he reasonably relied on contrary language outside of the Policy. Nonetheless, the Motion to Amend addresses itself to the sufficiency of his claim for damages in connection with any such claim. In the Order, the Court held, first, that Mr. Linton would be limited to seeking the out-of-pocket measure of damages on any misrepresentation claim, since that claim sounded in negligence, not in fraud, Order at 13, and second, that Mr. Linton had not established that he had suffered an out-of-pocket loss that would enable him to show damages in connection with his misrepresentation claim. Order at 15. The Motion to Amend does not argue that the first part of the Court's determination – limiting Mr. Linton to an out-of-pocket measure of damages – was incorrect.

Rather, the Motion to Amend argues for a second time that Mr. Linton did, in fact, establish that he had suffered out-of-pocket losses in connection with the Policy. Motion to Amend at 5.

Citing to Exhibit U to Defendant's Motion for Summary Judgment, plaintiff now argues that he suffered "out-of-pocket costs" of $122,297.40 (Motion to Amend at 5) and that this "fact" justifies reversal of the Court's ruling in favor of New York Life on his misrepresentation claim. Exhibit U does not support Mr. Linton's claim that his "out of pocket costs" approached that amount, but, in any event, it makes no difference how the Court resolved that question when it ruled on the motions for summary judgment. As the Order itself notes, and "plaintiff admits that he "realized an investment return of at least $276,760 in his Policy account" (Order at 14) – an acknowledged gain which still exceeds the now-inflated amount of "out of pocket costs" Mr. Linton claims he sustained. Under Massachusetts law, as the Court correctly noted in the Order, that fact compels judgment in favor of defendants. *PDC-El Paso Meridien, LLC v. Alstom Power, Inc.*, No. 996016BLS, 2004 WL 1588201 at *15 (Mass. Super. June 14, 2004) (noting that a misrepresentation claim could not succeed where the plaintiff "sustained no out of pocket losses . . . and, instead, made a handsome net profit after reimbursing itself for its costs").[2]

---

[2] Mr. Linton now claims to have "suffered" a loss in the amount of $450,000 in taxes paid when he chose to liquidate his investments under the Policy. There is absolutely no support in the record for this assertion and Mr. Linton made no mention of taxes as a component of damages when he responded to discovery. In any event, this unsupported claim only serves to underscore the profits Mr. Linton experienced under the Policy – gains which far outweigh any costs to him associated with the Policy itself and eliminate any claim that he sustained out-of-pocket losses.

## CONCLUSION

For the foregoing reasons, New York Life respectfully requests that the Court deny Plaintiff's Motion to Alter and Amend Judgment.

NEW YORK LIFE INSURANCE
AND ANNUITY CORPORATION

By its attorneys,

 /s/ Levina Wong
John D. Donovan, Jr. (BBO #130950)
john.donovan@ropesgray.com
Robert G. Jones (BBO #630767)
robert.jones@ropesgray.com
Levina Wong (BBO #654510)
levina.wong@ropesgray.com

ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

Dated: October 13, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2006, I served a copy of Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Alter and Amend Judgment, by hand, upon Richard J. Grahn, Looney & Grossman, LLP, 101 Arch Street, Boston, MA 02110, attorney for Plaintiff Barry Linton.

/s/ Levina Wong
Levina Wong